UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | | |
|---|---|---|
| In re: | : | Case No. 08-03423-EE |
| | : | Chapter 11 |
| WAREHOUSE 86, LLC, | : | |
| Debtor. | : | |
| | : | |
| SCK, INC. and RADIOSHACK CORPORATION, | : | Adv. Pro. No. 09-00139-EE |
| Plaintiffs | : | |
| v. | : | |
| WAREHOUSE 86, LLC, | : | |
| Defendant. | : | |

**ANSWER AND DEFENSES TO COUNTERCLAIM (Dkt. #205; Adv. Dkt. #6)**

Plaintiffs SCK, Inc. f/k/a SC Kiosks, Inc. and RadioShack Corporation (collectively, "SCK") hereby answer Defendant Warehouse 86, LLC's ("Warehouse 86") Counterclaim in its Answer and Defenses (Dkt. #205; Adv. Dkt #6) as follows:

**ANSWER**

**Counterclaim**

1. SCK denies the allegations in Paragraph 1 of the Counterclaim.

2. SCK denies the allegations in Paragraph 2 of the Counterclaim.

3. SCK denies that Warehouse 86 is entitled to any of the relief sought in its prayer for relief. Warehouse 86 is not entitled to the Insurance Proceeds[1], accrued interest on the deposited funds, judgment against SCK for breach of the Sublease, or any other type of recovery from SCK. Warehouse 86's prayer should be denied in its entirety and with prejudice, and Warehouse 86 should get none of the Insurance Proceeds.

## DEFENSES

As and for its affirmative defenses, SCK respectfully represents:

### First Defense

1. Warehouse 86 fails to state a claim upon which relief can be granted.

### Second Defense

2. Pursuant to the Sublease, Warehouse 86 agreed to provide at its sole cost and expense during the term of the Sublease, *inter alia*, fire and casualty insurance, or "all risk" property insurance, covering all Improvements, as defined in the Sublease, and the Subleased Equipment, as defined in the Sublease, in an amount not less than 100% of their full replacement value.

3. Separately, Warehouse 86 agreed to bear the entire risk of any and all loss, damage to, or destruction of any unit of the Subleased Equipment from any cause whatsoever.

### Third Defense

4. Pursuant to the Sublease, Warehouse 86 obtained a property insurance policy and named SCK a loss payee therein. By designating SCK as a loss payee, Warehouse 86 expressly agreed that, in the event of any payment under the policy, such payment would be made to SCK

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Complaint (Dkt. #197, Adv. Dkt. #1).

rather than to Warehouse 86, up to 100 % of the full replacement value of the Improvements and the Subleased Equipment.

### Fourth Defense

5.      Granting the relief sought by Warehouse 86 would not accord with equitable principles.  To the contrary, it would result in a windfall to Warehouse 86.

### Fifth Defense

6.      In Paragraph 37 of its Answer and Defenses, Warehouse 86 asserts that it is entitled to the Insurance Proceeds because "some or all of the property at issue would have become property of Warehouse 86" had SCK performed.  In fact, "said property" -- the Conveyor/Racking and Miscellaneous Owned Equipment (the "Equipment"), as defined in the Sublease -- would have become property of Warehouse 86 had Warehouse 86 performed and purchased the Equipment in accordance with the Sublease.[2]

7.      After the casualties, Warehouse 86 was required under the Sublease to pay to SCK, or the lessor of the Equipment, General Electric Capital Corporation ("GE"), (i) the Stipulated Loss Value, as determined by the Sublease, and (ii) all rent due for the Equipment as of the next rent payment date after the casualties.    But Warehouse 86 failed to do so, despite written requests by SCK, and thus breached the Sublease.

8.      As a result, SCK paid to GE (i) the Stipulated Loss Value and (ii) all rent due for the Equipment as of the next rent payment date after the casualties in the total amount of $1,064,361.78.

---

[2] As Warehouse 86 notes in Paragraph 37 of its Answer and Defenses, it purchased certain of the Subleased Equipment -- the Material Handling Equipment, as defined in the Sublease -- prior to the casualties by check dated September 7, 2007, in the amount of $84,659.86, which included a purchase price of $69,000, sales taxes of $4,305 and property taxes of $11,354.86.  The Sublease respecting the Material Handling Equipment terminated upon Warehouse 86's purchase thereof.

- 3 -

**Sixth Defense**

9. Pursuant to the Sublease, Warehouse 86 is entirely responsible for all costs incurred in the restoration of the Improvements, including but not limited to any deductible payable under its insurance policy.

10. Furthermore, Warehouse 86 is responsible for paying its proportionate share of any deductible payable under SCK's and/or the landlord's, Industrial Developments International, Inc., insurance policy for repairs to the Improvements. There is a $250,000 deductible per casualty occurrence under SCK's insurance policy, which deductibles SCK has already paid.

**Seventh Defense**

11. Warehouse 86 underinsured the Subleased Equipment and the Improvements, in default of its obligations under the Sublease.

12. Preliminary estimates indicate replacement of the Improvements will cost at least $1,417,756.48. It is estimated that replacing the security systems will cost approximately $163,000. Notwithstanding Warehouse 86's obligations under the Sublease, SCK paid $1,064,361.78 to GE for the Equipment and $119,906 to remove the Equipment from the premises. SCK has also paid the requisite deductibles under its insurance policy in the total amount of $500,000.

**Eighth Defense**

13. Warehouse 86 has suffered no harm or damage as a consequence of any action or inaction of SCK.

### Ninth Defense

14. SCK did not breach the Sublease or the Prime Lease. SCK wholly performed all its duties and obligations under both the Sublease and the Prime Lease.

### Tenth Defense

15. All of SCK's actions respecting the Sublease and the Prime Lease were conducted in good faith and in accordance with the terms and conditions thereof.

### Eleventh Defense

16. Warehouse 86 agreed under the Sublease to surrender the Subleased Premises, as defined in the Sublease, and the Subleased Equipment at the expiration of the Sublease in the same condition as when Warehouse 86 took possession.

### Twelfth Defense

17. Warehouse 86 agreed under the Sublease to assume and perform all of the duties, covenants, agreements and obligations of SCK under the Prime Lease. And, unless otherwise indicated, all terms of the Prime Lease were incorporated by reference into the Sublease, and all references to "Landlord" in the Prime Lease were deemed to refer to SCK, and all references to "Tenant" were deemed to refer to Warehouse 86.

### Thirteenth Defense

18. SCK did not wrongfully terminate the Sublease or the Prime Lease.

### Fourteenth Defense

19. Warehouse 86 agreed under the Sublease to indemnify SCK for any damages, costs or expenses of any kind or nature, including but not limited to court costs and reasonable attorneys' fees, resulting from any applicable failure by Warehouse 86 to obey the terms of the Sublease and the requirements of the Prime Lease.

**Fifteenth Defense**

20. SCK reserves any and all statutory and/or indemnity rights it may have against others.

WHEREFORE, SCK, Inc. f/k/a SC Kiosks, Inc. and RadioShack Corporation respectfully request that the Court (i) deny the relief sought by the Counterclaim and (ii) grant the relief requested in the Complaint and such other and further relief this Court deems proper and just.

Dated: December 22, 2009

Respectfully submitted,

SCK, INC. and RADIOSHACK CORPORATION

/s/ Marcus M. Wilson
Marcus M. Wilson (MS Bar #7308)
Andrew R. Wilson (MS Bar #102862)
BENNETT LOTTERHOS SULSER
& WILSON, P.A.
One Jackson Place
188 East Capitol Street
Suite 1400
Jackson, Mississippi 39201
Telephone: (601) 944-0466
Facsimile: (601) 944-0467
mwilson@blswlaw.com
awilson@blswlaw.com

ATTORNEYS FOR SCK, INC. AND RADIOSHACK CORPORATION

- 7 -

## CERTIFICATE OF SERVICE

I, Marcus M. Wilson, certify that I have this date served, via electronic filing transmission a true and correct copy of the above and foregoing Answer and Defenses to Counterclaim (Dkt. #205; Adv. Dkt. #6) to the following:

    Ronald McAlpin, Esq.
    Ronald.McAlpin@USDOJ.gov

    Stephen W. Rosenblatt
    Steve.Rosenblatt@butlersnow.com


    Dated:  December 22, 2009.

                                    /s/ Marcus M. Wilson