IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

In re:

    WAREHOUSE 86, LLC                                   CASE NO.    08-03423-EE
                                                             Chapter 11

             Debtor

_____

SCK, INC. and
RADIOSHACK CORPORATION

             Plaintiffs

v.                                                                              Adv. Pro. No. 09-00139-EE

WAREHOUSE 86, LLC,

             Defendant.

## MOTION FOR PARTIAL SUMMARY JUDGMENT
[Dkt. #197; Adv. Dkt. #1]

Warehouse 86, LLC, the Debtor-in-Possession herein ("Warehouse 86"), pursuant to Bankruptcy Rule 7056, which makes F. R. Civ. P. 56 applicable in adversary proceedings, moves this Court to enter judgment, as a matter of law, in favor of Warehouse 86 as to portions of the Complaint for Declaratory Judgment (Dkt. #197; Adv. Dkt. #1) (the "Complaint") filed by SCK, Inc. ("SCK") and RadioShack Corporation ("RadioShack"). In support of this Motion for Partial Summary Judgment (the "Motion"), Warehouse 86 respectfully shows the following:

### INTRODUCTION AND SUMMARY

Warehouse 86 was subleasing a warehouse located in Southaven, Mississippi from SCK when a tornado struck the warehouse on February 5, 2008, damaging both the warehouse and its

contents.  A few days later, on February 11, 2008, during clean up operations being conducted by third parties, a fire destroyed additional parts of the warehouse and its contents, including property of Warehouse 86.  Fortunately, Warehouse 86 had an insurance policy (No. 3A2-22-78-08) (the "Insurance Policy") with Employers Mutual Casualty Company (the "Insurance Company") that covered, among other things, personal property of Warehouse 86's business, loss of business income, extra expenses incurred by Warehouse 86 and personal effects and property of others.

The Insurance Company, through its independent, outside adjuster, investigated, adjusted, and subsequently paid the losses caused by the tornado (the "Tornado Loss") and the fire (the "Fire Loss") (collectively, the "Losses").  Warehouse 86 filed its *Motion to Compromise and Settle Disputed Claims with Employers Mutual Casualty Insurance Company* (Dkt. # 2060), and this Court approved the settlement of those claims in its *Agreed Order Granting Debtor's Motion to Compromise and Settle Disputed Claims with Employers Mutual Casualty Insurance Company* (Dkt. # 224).  The Insurance Proceeds totaled $2,099,882.35, of which $2,089,882.35 have been deposited in the registry of the Court (*See* Dkt ## 184 and Receipt Nos. 131068-71).  The Insurance Company also paid $10,000 to Warehouse 86 for "property of others" in a check made payable only to Warehouse 86, and that money has not been paid into the registry of the Court.

Thereafter, RadioShack and SCK brought this adversary proceeding, claiming that they were entitled to **all** of the Insurance Proceeds.  RadioShack and SCK are mistaken, however, for four principal reasons.

First, RadioShack, as opposed to SCK, has no interest whatsoever in the Insurance Policy or the Insurance Proceeds.  RadioShack was not a Loss Payee under the Insurance Policy, and therefore has no rights to any Insurance Proceeds.  Additionally, Warehouse 86 subleased the warehouse and certain equipment located therein that was destroyed by the tornado and fire from

SCK, not RadioShack. Warehouse 86 has no obligations, contractual or otherwise, to RadioShack. Therefore, Warehouse 86 is entitled to summary judgment against RadioShack as to the allegations of the Complaint filed herein by SCK and RadioShack.

Second, SCK has failed to read the Insurance Policy with sufficient care. While it is true that SCK is a "Loss Payee" under the Insurance Policy[1], the Insurance Policy does not provide that a "Loss Payee" shares in <u>all</u> payments made by the Insurance Company, but only in payments made for "Covered Property" in which both the insured and a Loss Payee had an interest. Only $1,940,682.60 of the $2,099,882.35 that was paid by the Insurance Company in the case at bar was for "Covered Property" in which SCK could conceivably have any claim or interest. The balance, $149,199.75, was for other things – loss of business income, debris removal, and extra expenses. Additionally, SCK has no claim or interest in personal effects and property of others for which Warehouse 86 alone was paid $10,000. As a matter of law, then, SCK has no possible right to any part of the $149,199.75 or to the $10,000 paid for "personal effects and property of others."

Third, under the terms of the Insurance Policy, even as to the $1,940,682.60 paid for "Covered Property" the Loss Payee shares in those payments only if both the Loss Payee and the Named Insured have an interest, and only "as [their] interests may appear." SCK has no rights to or interest in any of the inventory of Warehouse 86, nor in any of the Business Personal Property (Worktables, Expandos Expanders, Stools, Workstation Tables, Computer Shipping Printer) or Business Supplies (totaling $681,685.36) shown on the Statement of Loss for the Fire Loss. Also, Warehouse 86 had its own "conveyors and racking systems" and "betterments and improvements", as well as the subleased conveyors and racking systems. The value of Warehouse 86's conveyors

---

[1] At one time, SCK was but one of four "Loss Payees" under the Insurance Policy. In addition to SCK, other Loss Payees at various times under the Insurance Policy were Stuart M. Irby (a secured creditor), General Electric Capital Corp. (owned certain equipment leased to SCK and subleased to Warehouse 86), Trustmark National Bank (a lienholder on another building) and Wells Fargo Financial Leasing, Inc. (leased certain office equipment to Warehouse 86).

and racking systems and betterments and improvements was included in the amount of the Insurance Proceeds paid for "Conveyor and Racking Systems" and "Betterments and Improvements." Therefore, if the Insurance Proceeds are insufficient to pay all interests in full, then the Loss Payee and the Named Insured share pro rata.

SCK is mistaken, fourth and last, because it confuses its rights under the Insurance Policy with other rights it has, if any, against Warehouse 86. SCK may assert that Warehouse 86 is subject to liability to SCK on some other grounds or basis, such as for breach of the sublease, but even if SCK were to do so (which Warehouse 86 denies), this would only make SCK one of Warehouse 86's general, unsecured creditors. It would not expand in any way or to any degree SCK's rights under the Insurance Policy to the Insurance Proceeds.

This Court should do four things. First, it should hold, as a matter of law, that RadioShack has no claim whatsoever to the Insurance Proceeds. Second, it should hold that SCK has no right to any Insurance Proceeds for things other than "Covered Property," and it should direct that such payments in the amount of $149,199.75 be released to Warehouse 86 immediately and that SCK has no interest in the $10,000 paid to Warehouse 86 for personal effects and property of others, so Warehouse 86 can move forward with its Disclosure Statement and Plan for the benefit of its creditors. Third, it should hold that although the Inventory, Business Personal Property and Business Supplies are "Covered Property," SCK has no interest therein, and therefore no interest in the Insurance Proceeds related to any of them, and it should direct that such payments in the amount of $702,626.00 be released to Warehouse 86 immediately. Fourth, as to the remaining Insurance Proceeds, SCK has no right except to the extent that it can prove that either SCK alone or both it and Warehouse 86 had an interest therein; only "as [its or their] interests may appear"; and even then only pro rata if the proceeds are insufficient to pay all interests of SCK and Warehouse 86 in full.

- 5 -

Together these four rulings will do justice by and for all, including Warehouse 86's creditors, and will set the stage for the "just, speedy, and inexpensive determination" of the only real issue in the case, to wit, the extent of Warehouse 86's interest, and the extent of SCK's interest, in the "Covered Property" for which the Insurance Company has paid the Insurance Proceeds.

## UNDISPUTED FACTS

Warehouse 86 believes that the following facts are undisputed:

1. SCK leased a warehouse, and then subleased same to Warehouse 86. SCK's Complaint refers to it as the "Southaven Warehouse," and this motion will do the same.

2. SCK leased certain equipment, and then subleased same to Warehouse 86. SCK's Complaint refers to it as the "Subleased Equipment," and this motion will do the same.

3. On February 5, 2008 a tornado struck the Southaven Warehouse causing damage to the building and its contents. Separately, on February 11, 2008, while repairing the tornado damaged building, a welding subcontractor caused a fire to erupt in the Southaven Warehouse resulting in further damage to the building and its contents.

4. At the time of the tornado and fire the Debtor had in place an Insurance Policy from Employers Mutual Casualty. SCK's copy of the Insurance Policy is attached as Exhibit C to docket no. 197.

5. Employers Mutual ended up issuing four checks, three of which were payable jointly to Warehouse 86 and SCK and one of which was payable only to Warehouse 86, as follows:

| Date | Payees | Check Number | Amount |
|---|---|---|---|
| 07/23/2009 | Warehouse 86, LLC and SC Kiosks, Inc. | H03305822 | $1,060,000.00 |
| 08/12/2009 | Warehouse 86, LLC and SC Kiosks, Inc. | H03306059 | $979,882.35 |
| 08/12/2009 | Warehouse 86, LLC and SC Kiosks, Inc. | H03306060 | $50,000.00 |
| 07/22/2009 | Warehouse 86, LLC | H03305808 | $10,000.00 |
| **Total** | | | **$2,099,882.35** |

6. By agreement of the parties, the Insurance Proceeds represented by the three joint checks from the Insurance Company are now on deposit with the registry of the Court.

7. The Insurance Company checks were backed up by two Statements of Loss, one for the Tornado and one for the Fire, which showed exactly what each check was in payment for.

    A.    The $1,060,000 check broke down as follows: $1,000,000 for loss to "Inventory," "Conveyor and Racking System," and "Betterments and Improvements"; $10,000 for "Debris Removal," and $50,000 for "Business Income."

    B.    The $979,882.35 check broke down as follows: $950,682.60 for loss to "Inventory," "Clean up," "Repairs," "Conveyor and Racking System," "Business Personal Property," and "Business Supplies"; $4,199.75 for "Debris Removal"; and $25,000 for Extra Expenses.

    C.    The $50,000 check was for "Business Income."

    D.    The $10,000 check was for "Personal Effects and Property of Others."

## ARGUMENTS AND AUTHORITIES

RadioShack and SCK filed this adversary proceeding (Dkt. # 197), asserting that they are entitled to the entire $2,099,882.35. RadioShack and SCK are incorrect, as we shall now see.

**I. RadioShack has no rights at all, either to the insurance proceeds or against Warehouse 86.**

For some reason not apparent from the Complaint for Declaratory Judgment, SCK has joined, as a plaintiff, its parent company, Radio Shack. The Complaint fails to state a claim on

which Radio Shack can recover, and, in any event, the Insurance Policy and other attachments to the Complaint show that Radio Shack has no rights, either in the Insurance Policy or against SCK. Radio Shack, therefore, should be dismissed.

**II. SCK has no right to any part of the $149,199.75 paid for things other than "Covered Property." As a matter of law Warehouse 86 is entitled to immediate release of these funds.**

SCK is, as noted above, a "Loss Payee" under the Insurance Policy. As such it is entitled to share in payments made "[f]or Covered Property" in which both Warehouse 86 and SCK had an interest:

> **B. LOSS PAYABLE**
> For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:
> 1. Adjust losses with you; and
> 2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

Of the $2,099,882.35 paid by the Insurance Company, $149,199.75 was paid for things other than "Covered Property." *See* Statement of Loss sheets generated by the Insurance Company adjuster (copies attached hereto as Exhibit "A" for the Tornado Loss and Exhibit "B" for the fire loss) (showing two payments of $50,000 each for loss of business income; payments of $10,000, $10,000, and $4,199.75 for debris removal; a payment of $25,000 extra expenses, and $10,000 for personal effects and property of others. We know that these items do not constitute "Covered Property" in which SCK had any interest whatsoever by examining the Sublease of SCK to Warehouse 86 and also by examining the language of the Insurance Policy, which defines "Covered Property" as "Your Business Personal Property," and in turn defines "Your Business Personal Property" as follows:

- 7 -

    **b. Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property – Separation of Coverage form:

      (1) Furniture and fixtures;

      (2) Machinery and equipment;

      (3) "Stock";

      (4) All other personal property owned by you and used in your business;

      (5) Labor, materials or services furnished or arranged by you on personal property of others;

      (6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

        (a) Made a part of the building or structure you occupy but do not own; and

        (b) You acquired or made at your expense but cannot legally remove;

      (7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

    **c. Personal Property Of Others** that is:

      (1) In your care, custody or control; and

      (2) Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

    However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

As a matter of law, SCK has no right to any part of the $149,199.75. *See First Nat. Bank, Abilene Texas v. American States Ins. Co.*, 1998 WL 30246 *2 10th Cir. 1998) (unpublished) ("A loss payee is paid only for 'Covered Property,' defined as 'buildings' and 'business personal property'"; "FNB [the Loss Payee] concedes, as it must, that buildings and business personal

- 8 -

property do not include business income. No other language in the Insurance Policy addresses joint payment to either mortgage holders or loss payees. Thus, the plain, unambiguous language of the Insurance Policy does not broadly promise coverage for lost business income to mortgage holders or loss payees. On the contrary, the plain language limits mortgage holders' and loss payees' participation in proceeds to those for loss to buildings, structures, and business personal property"; *held:* as a matter of law, Loss Payee had no right to share in the amounts paid for lost business income). *Accord Continental Mortg. and Equity Trust v. Meridian Mut. Ins. Co.,* 969 F.Supp. 460, 464 (E.D. Mich. 1997) ("The plain, unambiguous terms of the Mortgagee Clause entitles Continental to payment ***only*** for ***building or structural*** loss. Lost rents is not "building or structural loss") (emphasis original; citation omitted). *Florists' Mut. Ins. Co. v. Agstar of New Mexico, Inc.,* 2005 WL 3664325 *6 (D.N.M.) ("the Court finds that the Standard Mortgage Clause here is clear and unambiguous, and limits the mortgagee's recovery, independent of defenses against Agstar, to damage incurred to buildings or structures. Because the Standard Mortgage Clause is limited to damages incurred to buildings or structures . . . the Court will amend the Judgment to strike the award to Farm Credit in respect of $300,000.00 for perishable goods and $2,250,000.00 for business loss and extra expenses") (citing *Abilene*).

The *Abilene, Florists' Mutual,* and *Continental* courts were absolutely correct: under the Insurance Policy's plan language, the Loss Payees can share only if the payment is made for loss of "Covered Property." As a matter of law, then, SCK has no right to any portion of the $149,199.75 paid for loss of business income, debris removal, and extra expenses or the $10,000 for the personal effects and property of others.

**III. As to the remaining $1,940,682.60, SCK has no right except to the extent that it can prove that both it and Warehouse 86 had an interest therein; and then only "as [their] interests may appear," and even then only pro rata, if the proceeds are insufficient to pay all interests in full.**

**A. SCK has no interest whatsoever in the Inventory, Business Personal Property or Business Supplies of Warehouse 86.**

SCK has no rights to or interest in any of the inventory of Warehouse 86 ($391,929.05 for Net Loss for Inventory (Tornado Loss) and $69,163.95 for Inventory (Fire Loss) for a total of $461,093.00, nor for any Clean up and Repairs ($20,940.64 for Tornado Loss), nor for any of the Business Personal Property (Worktables, Expandos Expanders, Stools, Workstation Tables, Computer Shipping Printer – $66,477.47 for Tornado Loss); and $154,114.89 for Business Supplies (Tornado Loss) of Warehouse 86. The Statements of Loss for the Tornado Loss and the Fire Loss reflects that the value of these items in which SCK cannot claim any right or interest totals $702,626.00.

**B. SCK has no right to the remaining Insurance Proceeds except to the extent that it can prove that it had an interest therein, and then only to the extent as its and Warehouse 86's interests may appear, and even then only pro rata, if the proceeds are insufficient to pay all interests in full.**

Although both SCK and Warehouse 86 agree that the "Conveyor and Racking System" and "Betterments and Improvements" were "Covered Property," SCK must then demonstrate the extent to which it had an interest in those properties. Only to the extent that SCK can do this will it be entitled to share in those proceeds "as interests may appear." Furthermore, if the proceeds are insufficient to pay all interests in full, the interests of SCK and Warehouse 86 will be paid pro rata. *See generally Firemen's Fund Am. Ins. Co. v. Ken-Lori Knits, Inc.*, 399 F.Supp. 286, 292 (D.C.N.Y. 1975) ("The remainder of the proceeds, i.e., $21,904.20, is attributable to the loss of the yarn and is claimed by Ambassador, the United States and Courtaulds. However, the relative priorities of these parties cannot be determined on a motion for summary judgment because the

ownership of the destroyed yarn has not been established and the rights of the parties depend on this factual determination."). In no event, however, would SCK be entitled to more than its pro rata share in these payments.[2]

### IV. SCK's claims against Warehouse 86 are, for present purposes of determining the rights of the parties to the Insurance Proceeds, irrelevant.

SCK's Complaint for Declaratory Judgment seems to suggest that SCK has or asserts claims against Warehouse 86 under the sublease. Whatever the merits of these allegations, these claims are irrelevant when it comes to allocating the Insurance Proceeds. SCK is entitled to only so much of the Insurance Proceeds, if any, as it can prove in accordance with the legal principles outlined above; Warehouse 86 is entitled to the rest. To the extent, if any, that SCK can also establish that Warehouse 86 is subject to liability for breach of the sublease, or for anything else, then to that extent SCK will be a general, unsecured creditor of Warehouse 86 which will share with other creditors of equal standing in whatever assets – including Warehouse 86's share of the insurance proceeds – that may be available to that class of creditors. SCK's Complaint reflects its inability to distinguish between its rights under the Insurance Policy and its claims against Warehouse 86. The latter, while perhaps making SCK a general, unsecured creditor, gives SCK no rights in the Insurance Policy proceeds themselves.

WHEREFORE, premises considered, Warehouse 86 prays that this Court will grant judgment, as a matter of law, in favor of Warehouse 86, and against SCK, as outlined above, to wit:

1.      That the claim of Radio Shack should be dismissed with prejudice;

---

[2] The damage done to the inventory, conveyor and racking systems and other personal property by the fire was less than the Insurance Policy's $1.0 million limit of liability, so pro rata is not an issue as to the $950,682.60. There was $950,682.60 worth of damage, and $950,682.60 was paid for the Fire Loss. As to the tornado, however, there was almost $1.5 million dollars worth of property damage, but only $1.0 million was paid for property damage, due to the limits of liability.

2. That, contrary to SCK's "Complaint for Declaratory Judgment," SCK is not entitled to all of the insurance proceeds;

3. That SCK has no interest in and is not entitled to any of the amounts paid for lost business income, debris removal, or extra expense or personal effects ($149,199.75) and personal effects and property of others ($10,000);

4. That SCK has no interest in, and is not entitled to any of the Insurance Proceeds paid for losses for:

   A. Any of the inventory of Warehouse 86 ($391,929.05 for Net Loss for Inventory (Tornado Loss) and $69,163.95 for Inventory (Fire Loss) for a total of $461,093.00;

   B. Any Clean up and Repairs ($20,940.64 for Tornado Loss);

   C. Any of the Business Personal Property (Worktables, Expandos Expanders, Stools, Workstation Tables, Computer Shipping Printer – $66,477.47 for Tornado Loss); and

   D. Any Business Supplies ($154,114.89 for Tornado Loss);

5. That the Clerk be directed to pay to Warehouse 86, immediately, out of the funds on deposit (pursuant to Dkt. # 184), the $149,199.75 paid for the items and categories set forth in paragraph 3 above;

6. That the Clerk be directed to pay to Warehouse 86, immediately, out of the funds on deposit (pursuant to Dkt. # 184), the $702,626.00 paid for the items and categories set forth in paragraph 4 above;

7. That, following a trial on the merits hereof, the Clerk be directed to pay to Warehouse 86 the balance of the funds on deposit, except to the extent, if any, that SCK can prove

that they were for "Covered Property," and that SCK had an "interest" in same -- and then only "as interests may appear," on a pro rata basis with Warehouse 86; and

8. Granting Warehouse 86 such other or further relief, in law or equity, as to which it may be justly entitled.

Dated: March 15, 2010.

        Respectfully submitted,

        WAREHOUSE 86, LLC


        By: *s/ Stephen W. Rosenblatt*
        ROBERT M. FREY (MB No. 5531)
        STEPHEN W. ROSENBLATT (MB No. 5676)

        Its Attorneys

OF COUNSEL:

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
1020 Highland Colony Parkway, Suite 1400
Ridgeland, Mississippi 39158-6010
601-948-5711
601-985-4500 (fax)

## CERTIFICATE OF SERVICE

I, Stephen W. Rosenblatt, one of the attorneys for Warehouse 86, LLC, certify that I have this day caused a true and correct copy of the foregoing instrument to be mailed, postage prepaid, to the following persons:

>Marcus M. Wilson, Esq.
>BENNETT LOTTERHOS SULSER & WILSON, P.A.
>One Jackson Place
>188 East Capitol Street, Suite 1400
>Jackson, Mississippi   39201
>
>ATTORNEYS FOR SCK, INC. and RADIOSHACK CORPORATION
>
>Ronald McAlpin, Esq.
>OFFICE OF THE UNITED STATES TRUSTEE
>Suite 706, A. H. McCoy Federal Building
>100 West Capitol Street
>Jackson, Mississippi   39269
>Ronald.McAlpin@USDOJ.gov

March 15, 2010.

>*s/ Stephen W. Rosenblatt*
>STEPHEN W. ROSENBLATT

Jackson 4952036v2