**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**In re:**

    **WAREHOUSE 86, LLC**                                        **CASE NO.**    **08-03423-EE**
                                                                                   **Chapter 11**
             **Debtor**

_____

**SCK, INC. and
RADIOSHACK CORPORATION**

            **Plaintiffs**

**v.**                                                                                      **Adv. Pro. No. 09-00139-EE**

**WAREHOUSE 86, LLC,**

            **Defendant.**

**AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT
[Dkt. #197; Adv. Dkt. #1]**

      Warehouse 86, LLC, the Debtor-in-Possession herein ("Warehouse 86"), pursuant to Bankruptcy Rule 7056, which makes F. R. Civ. P. 56 applicable in adversary proceedings, and Local Rule 7056-1, moves this Court to enter judgment, as a matter of law, in favor of Warehouse 86 as to portions of the Complaint for Declaratory Judgment (Dkt. #197; Adv. Dkt. #1) (the "Complaint") filed by SCK, Inc. ("SCK") and RadioShack Corporation ("RadioShack"). In support of this Motion for Partial Summary Judgment (the "Motion"), Warehouse 86 respectfully shows the following:

## **INTRODUCTION AND SUMMARY**

Warehouse 86 was subleasing a warehouse located in Southaven, Mississippi from SCK when a tornado struck the warehouse on February 5, 2008, damaging both the warehouse and its contents. A few days later, on February 11, 2008, during clean up operations being conducted by third parties, a fire destroyed additional parts of the warehouse and its contents, including property of Warehouse 86. Fortunately, Warehouse 86 had an insurance policy (No. 3A2-22-78-08) (the "Insurance Policy") with Employers Mutual Casualty Company (the "Insurance Company") that covered, among other things, personal property of Warehouse 86's business, loss of business income, extra expenses incurred by Warehouse 86 and personal effects and property of others.

The Insurance Company, through its independent, outside adjuster, investigated, adjusted, and subsequently paid the losses caused by the tornado (the "Tornado Loss") and the fire (the "Fire Loss") (collectively, the "Losses"). Warehouse 86 filed its *Motion to Compromise and Settle Disputed Claims with Employers Mutual Casualty Insurance Company* (Dkt. # 2060), and this Court approved the settlement of those claims in its *Agreed Order Granting Debtor's Motion to Compromise and Settle Disputed Claims with Employers Mutual Casualty Insurance Company* (Dkt. # 224). The Insurance Proceeds totaled $2,099,882.35, of which $2,089,882.35 have been deposited in the registry of the Court (*See* Dkt ## 184 and Receipt Nos. 131068-71). The Insurance Company also paid $10,000 to Warehouse 86 for "property of others" in a check made payable only to Warehouse 86, and that money has not been paid into the registry of the Court.

Thereafter, RadioShack and SCK brought this adversary proceeding, claiming that they were entitled to **all** of the Insurance Proceeds. RadioShack and SCK are mistaken, however, for four principal reasons.

- 2 -

First, RadioShack, as opposed to SCK, has no interest whatsoever in the Insurance Policy or the Insurance Proceeds. RadioShack was not a Loss Payee under the Insurance Policy, and therefore has no rights to any Insurance Proceeds. Additionally, Warehouse 86 subleased the warehouse and certain equipment located therein that was destroyed by the tornado and fire from SCK, not RadioShack. Warehouse 86 has no obligations, contractual or otherwise, to RadioShack. Therefore, Warehouse 86 is entitled to summary judgment against RadioShack as to the allegations of the Complaint filed herein by SCK and RadioShack.

Second, SCK has failed to read the Insurance Policy with sufficient care. While it is true that SCK is a "Loss Payee" under the Insurance Policy[1], the Insurance Policy does not provide that a "Loss Payee" shares in all payments made by the Insurance Company, but only in payments made for "Covered Property" in which both the insured and a Loss Payee had an interest. Only $1,940,682.60 of the $2,099,882.35 that was paid by the Insurance Company in the case at bar was for "Covered Property" in which SCK could conceivably have any claim or interest. The balance, $149,199.75, was for other things – loss of business income, debris removal, and extra expenses. Additionally, SCK has no claim or interest in personal effects and property of others for which Warehouse 86 alone was paid $10,000. As a matter of law, then, SCK has no possible right to any part of the $149,199.75 or to the $10,000 paid for "personal effects and property of others."

Third, under the terms of the Insurance Policy, even as to the $1,940,682.60 paid for "Covered Property," the Loss Payee shares in those payments only if both the Loss Payee and the Named Insured have an interest, and then only "as [their] interests may appear." SCK has no rights to or interest in any of the inventory of Warehouse 86, nor in any of the Business Personal

---

[1] At one time, SCK was but one of four "Loss Payees" under the Insurance Policy. In addition to SCK, other Loss Payees at various times under the Insurance Policy were Stuart M. Irby (a secured creditor), General Electric Capital Corp. (owned certain equipment leased to SCK and subleased to Warehouse 86), Trustmark National Bank (a lienholder on another building) and Wells Fargo Financial Leasing, Inc. (leased certain office equipment to Warehouse 86).

Property (Worktables, Expandos Expanders, Stools, Workstation Tables, Computer Shipping Printer) or Business Supplies (totaling $681,685.36) shown on the Statement of Loss for the Fire Loss.   Also, Warehouse 86 had its own "conveyors and racking systems" and "betterments and improvements", as well as the subleased conveyors and racking systems.   The value of Warehouse 86's conveyors and racking systems and betterments and improvements was included in the amount of the Insurance Proceeds paid for "Conveyor and Racking Systems" and "Betterments and Improvements."   Therefore, if the Insurance Proceeds are insufficient to pay all interests in full, then the Loss Payee and the Named Insured share pro rata.

This Court should do four things.   First, it should hold, as a matter of law, that RadioShack has no claim whatsoever to the Insurance Proceeds.   Second, it should hold that SCK has no possible right to any Insurance Proceeds for things other than "Covered Property," thus (a) directing that Warehouse 86 immediately receive the $149,199.75 paid jointly to Warehouse 86 and SCK; and (b) declaring that SCK has no interest in the $10,000 paid to Warehouse 86 for personal effects and property of others, so Warehouse 86 can move forward with its Disclosure Statement and Plan for the benefit of its creditors.   Third, it should hold that although the Inventory, Business Personal Property and Business Supplies are "Covered Property," SCK has no interest therein, and therefore no interest in the Insurance Proceeds related to any of them, and it should direct that such payments in the amount of $702,626.00 be released to Warehouse 86 immediately.   Fourth, as to the remaining Insurance Proceeds, the Court should declare that SCK has no right except to the extent that it can prove that either SCK alone or both it and Warehouse 86 had an interest therein; only "as [its or their] interests may appear"; and even then only pro rata if the proceeds are insufficient to pay all interests of SCK and Warehouse 86 in full.

Together these four rulings will do justice by and for all, including Warehouse 86's creditors, and will set the stage for the "just, speedy, and inexpensive determination" of the only real issue in the case, to wit, the extent of Warehouse 86's interest, and the extent of SCK's interest, in the "Covered Property" for which the Insurance Company has paid the Insurance Proceeds.

**UNDISPUTED FACTS**

Warehouse 86 believes that the following facts are undisputed:

1. SCK leased a warehouse, and then subleased same to Warehouse 86. SCK's Complaint refers to it as the "Southaven Warehouse," and this motion will do the same. *See* Proof of Claim of SCK, Addendum, Exhibits "A," "B" and "C" [Claim # 16]; Complaint for Declaratory Judgment, ¶ 9 [Dkt. # 197; Adv. Dkt. #1].

2. SCK leased certain equipment, and then subleased same to Warehouse 86. SCK's Complaint refers to it as the "Subleased Equipment," and this motion will do the same. *See* Proof of Claim of SCK, Addendum, Exhibits "A," "B" and "C" [Claim # 16]; Complaint for Declaratory Judgment, ¶ 9 [Dkt. # 197; Adv. Dkt. #1]; Limited Response of SCK, Inc. and RadioShack Corporation to Debtor's Motion to Compromise and Settle Disputed Claim with Employer's Mutual Casualty Insurance Company, ¶ 1 [Dkt. # 213].

3. On February 5, 2008 a tornado struck the Southaven Warehouse causing damage to the building and its contents. Separately, on February 11, 2008, while repairing the tornado-damaged building, a welding subcontractor caused a fire to erupt in the Southaven Warehouse resulting in further damage to the building and its contents. *See* Complaint for Declaratory Judgment, ¶ ¶ 10, 11 [Dkt. # 197; Adv. Dkt. #1].

4. At the time of the tornado and fire the Debtor had in place an Insurance Policy from Employers Mutual Casualty. SCK's copy of the Insurance Policy is attached as Exhibit C to its

Complaint.   [Dkt. # 197; Adv. # 1]. *See* Complaint for Declaratory Judgment, ¶ 13 [Dkt. # 197; Adv. Dkt. #1].

    5.    Employers Mutual ended up issuing four checks, three of which were payable jointly to Warehouse 86 and SCK and one of which was payable only to Warehouse 86, as follows:

| Date | Payees | Check Number | Amount |
| --- | --- | --- | --- |
| 07/23/2009 | Warehouse 86, LLC and SC Kiosks, Inc. | H03305822 | $1,060,000.00 |
| 08/12/2009 | Warehouse 86, LLC and SC Kiosks, Inc. | H03306059 | $979,882.35 |
| 08/12/2009 | Warehouse 86, LLC and SC Kiosks, Inc. | H03306060 | $50,000.00 |
| 07/22/2009 | Warehouse 86, LLC | H03305808 | $10,000.00 |
| Total | | | $2,099,882.35 |

*See* Agreed Order Granting Debtor's Motion to Compromise and Settle Disputed Claims with Employers Mutual Casualty Insurance Company, ¶ 6 [Dkt. # 224].

    6. By agreement of the parties, the Insurance Proceeds represented by the three joint checks from the Insurance Company are now on deposit with the registry of the Court.   *See* Order Approving Joint Motion of Warehouse 86, LLC and SCK, Inc. f/k/a S.C. Kiosks, Inc. for Authority to Deposit Insurance Proceeds into the Registry of the Court in Contemplation of the Filing of a Complaint for Declaratory Judgment, ¶ 6 [Dkt. 184];   Receipt Nos. 131068 – 131071 [No Docket Number Shown].

    7.   The Insurance Company checks were backed up by two Statements of Loss, one for the Tornado and one for the Fire, which showed exactly what each check was in payment for.

        A.    The $1,060,000 check broke down as follows:   $1,000,000 for loss to "Inventory," "Conveyor and Racking System," and "Betterments and Improvements"; $10,000 for "Debris Removal," and $50,000 for "Business Income."

        B.    The $979,882.35 check broke down as follows: $950,682.60 for loss to "Inventory," "Clean up," "Repairs," "Conveyor and Racking System," "Business Personal

- 6 -

Property," and "Business Supplies"; $4,199.75 for "Debris Removal"; and $25,000 for Extra Expenses.

          C.      The $50,000 check was for "Business Income."

          D.      The $10,000 check was for "Personal Effects and Property of Others."

*See* Debtor's Motion to Compromise and Settle Disputed Claims with Employers Mutual Casualty Insurance Company, ¶ 12 and Exhibit "B" (copies of four checks) [Dkt. # 206]; Limited Response of SCK, Inc. and RadioShack Corporation to Debtor's Motion to Compromise and Settle Disputed Claims with Employers Mutual Casualty Insurance Company, [Dkt. # 213]; Agreed Order Granting Debtor's Motion to Compromise and Settle Disputed Claims with Employers Mutual Casualty Insurance Company, ¶ 6 [Dkt. # 224]; Statement of Loss sheets generated by the Insurance Company adjuster (copies attached to Affidavit of Richard W. Booker attached hereto).

WHEREFORE, premises considered, Warehouse 86 prays that this Court will grant judgment, as a matter of law, in favor of Warehouse 86, and against SCK, as outlined above, to wit:

1. That the claim of Radio Shack should be dismissed with prejudice;

2. That, contrary to SCK's "Complaint for Declaratory Judgment," SCK is not entitled to all of the insurance proceeds;

3. That SCK has no interest in and is not entitled to any of the amounts paid for lost business income, debris removal, or extra expense or personal effects ($149,199.75) and personal effects and property of others ($10,000);

4. That SCK has no interest in, and is not entitled to any of the Insurance Proceeds paid for losses for:

- 8 -

        A.      Any of the inventory of Warehouse 86 ($391,929.05 for Net Loss for Inventory (Tornado Loss) and $69,163.95 for Inventory (Fire Loss) for a total of $461,093.00;

        B.      Any Clean up and Repairs ($20,940.64 for Tornado Loss);

        C.      Any of the Business Personal Property (Worktables, Expandos Expanders, Stools, Workstation Tables, Computer Shipping Printer – $66,477.47 for Tornado Loss); and

        D.      Any Business Supplies ($154,114.89 for Tornado Loss);

5.      That the Clerk be directed to pay to Warehouse 86, immediately, out of the funds on deposit (pursuant to Dkt. # 184), the $149,199.75 paid for the items and categories set forth in paragraph 3 above;

6.      That the Clerk be directed to pay to Warehouse 86, immediately, out of the funds on deposit (pursuant to Dkt. # 184), the $702,626.00 paid for the items and categories set forth in paragraph 4 above;

7.      That, following a trial on the merits hereof, the Clerk be directed to pay to Warehouse 86 the balance of the funds on deposit, except to the extent, if any, that SCK can prove that they were for "Covered Property," and that SCK had an "interest" in same -- and then only "as interests may appear," on a pro rata basis with Warehouse 86; and

8.      Granting Warehouse 86 such other or further relief, in law or equity, as to which it may be justly entitled.

Dated: April 1, 2010.

> Respectfully submitted,
>
> WAREHOUSE 86, LLC
>
> By: *s/ Robert M. Frey*
> ROBERT M. FREY (MB No. 5531)
> STEPHEN W. ROSENBLATT (MB No. 5676)
>
> Its Attorneys

OF COUNSEL:

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
1020 Highland Colony Parkway, Suite 1400
Post Office Box 6010
Ridgeland, Mississippi 39158-6010
601-948-5711
601-985-4500 (fax)

## **CERTIFICATE OF SERVICE**

I, Robert M. Frey, one of the attorneys for Warehouse 86, LLC, certify that I have this day caused a true and correct copy of the foregoing pleading send by electronic mail to the following persons:

> Marcus M. Wilson, Esq.
> BENNETT LOTTERHOS SULSER & WILSON, P.A.
> One Jackson Place
> 188 East Capitol Street, Suite 1400
> Jackson, Mississippi 39201
> mwilson@blswlaw.com
>
> ATTORNEYS FOR SCK, INC. and RADIOSHACK CORPORATION

>Ronald McAlpin, Esq.
>OFFICE OF THE UNITED STATES TRUSTEE
>Suite 706, A. H. McCoy Federal Building
>100 West Capitol Street
>Jackson, Mississippi   39269
>Ronald.McAlpin@USDOJ.gov

April 1, 2010.

*s/ Robert M. Frey*_____
ROBERT M. FREY

Jackson 4978924v1

- 10 -