IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**In re:**

    **WAREHOUSE 86, LLC**　　　　　　　　　　　　　CASE NO.　08-03423-EE
　　　　　　　　　　　　　　　　　　　　　　　　　　　　Chapter 11
              **Debtor**
_____

**SCK, INC. and**
**RADIOSHACK CORPORATION**

            **Plaintiffs**

**v.**　　　　　　　　　　　　　　　　　　　　　　Adv. Pro. No. 09-00139-EE

**WAREHOUSE 86, LLC,**

            **Defendant.**

**MEMORANDUM IN SUPPORT OF**
**AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT**
**[Dkt. #197; Adv. Dkt. #1]**

Warehouse 86, LLC, the Debtor-in-Possession herein ("<u>Warehouse 86</u>"), pursuant to Bankruptcy Rule 7056, which makes F. R. Civ. P. 56 applicable in adversary proceedings, and Local Rule 7056-1, submits the following memorandum in support of its Amended Motion For Partial Summary Judgment (docket no. 28), and would respectfully show the following:

**ARGUMENTS AND AUTHORITIES**

RadioShack and SCK filed this adversary proceeding (Dkt. # 197), asserting that they are entitled to the entire $2,099,882.35. RadioShack and SCK are incorrect, as we shall now see.

**I.     RadioShack has no rights at all, either to the insurance proceeds or against Warehouse 86.**

For some reason not apparent from the Complaint for Declaratory Judgment, SCK has joined, as a plaintiff, its parent company, Radio Shack.   The Complaint fails to state a claim on which Radio Shack can recover, and, in any event, the Insurance Policy and other attachments to the Complaint show that Radio Shack has no rights, either in the Insurance Policy or against SCK. Radio Shack, therefore, should be dismissed.

**II.    SCK has no right to any part of the $149,199.75 paid for things other than "Covered Property."   As a matter of law Warehouse 86 is entitled to immediate release of these funds.**

SCK is, as noted above, a "Loss Payee" under the Insurance Policy.   As such it is entitled to share in payments made "[f]or Covered Property" in which both Warehouse 86 and SCK had an interest:

> **B. LOSS PAYABLE**
> For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:
> 1. Adjust losses with you; and
> 2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

Of the $2,099,882.35 paid by the Insurance Company, $149,199.75 was paid for things other than "Covered Property."   *See* Statement of Loss sheets generated by the Insurance Company adjuster (copies attached to Affidavit of Richard W. Booker, Exhibit "A" of the Amended Motion) (showing two payments of $50,000 each for loss of business income; payments of $10,000, $10,000, and $4,199.75 for debris removal; a payment of $25,000 extra expenses, and $10,000 for personal effects and property of others.   We know that these items do not constitute "Covered Property" in which SCK had any interest whatsoever by examining the Sublease of SCK to Warehouse 86 and also by examining the language of the Insurance Policy, which defines

- 2 -

"Covered Property" as "Your Business Personal Property," and in turn defines "Your Business Personal Property" as follows:

> **b. Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property – Separation of Coverage form:
> (1) Furniture and fixtures;
> (2) Machinery and equipment;
> (3) "Stock";
> (4) All other personal property owned by you and used in your business;
> (5) Labor, materials or services furnished or arranged by you on personal property of others;
> (6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:
>   (a) Made a part of the building or structure you occupy but do not own; and
>   (b) You acquired or made at your expense but cannot legally remove;
> (7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.
>
> **c. Personal Property Of Others** that is:
> (1) In your care, custody or control; and
> (2) Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.
>
> However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

As a matter of law, SCK has no right to any part of the $149,199.75.  *See First Nat. Bank, Abilene Texas v. American States Ins. Co.*, 1998 WL 30246 *2 10th Cir. 1998) (unpublished) ("A

- 3 -

loss payee is paid only for 'Covered Property,' defined as 'buildings' and 'business personal property'";   "FNB [the Loss Payee] concedes, as it must, that buildings and business personal property do not include business income.   No other language in the Insurance Policy addresses joint payment to either mortgage holders or loss payees.   Thus, the plain, unambiguous language of the Insurance Policy does not broadly promise coverage for lost business income to mortgage holders or loss payees.   On the contrary, the plain language limits mortgage holders' and loss payees' participation in proceeds to those for loss to buildings, structures, and business personal property"; *held:* as a matter of law, Loss Payee had no right to share in the amounts paid for lost business income).   *Accord Continental Mortg. and Equity Trust v. Meridian Mut. Ins. Co.,* 969 F.Supp. 460, 464 (E.D. Mich. 1997) ("The plain, unambiguous terms of the Mortgagee Clause entitles Continental to payment ***only*** for ***building or structural*** loss.   Lost rents is not "building or structural loss") (emphasis original; citation omitted).   *Florists' Mut. Ins. Co. v. Agstar of New Mexico, Inc.*,   2005 WL 3664325 *6 (D.N.M.) ("the Court finds that the Standard Mortgage Clause here is clear and unambiguous, and limits the mortgagee's recovery, independent of defenses against Agstar, to damage incurred to buildings or structures.   Because the Standard Mortgage Clause is limited to damages incurred to buildings or structures . . . the Court will amend the Judgment to strike the award to Farm Credit in respect of $300,000.00 for perishable goods and $2,250,000.00 for business loss and extra expenses") (citing *Abilene*).

The *Abilene, Florists' Mutual,* and *Continental* courts were absolutely correct: under the Insurance Policy's plan language, the Loss Payees can share only if the payment is made for loss of "Covered Property."   As a matter of law, then, SCK has no right to any portion of the $149,199.75 paid for loss of business income, debris removal, and extra expenses or the $10,000 for the personal effects and property of others.

- 4 -

**III.     As to the remaining $1,940,682.60, SCK has no right except to the extent that it can prove that both it and Warehouse 86 had an interest therein; and then only "as [their] interests may appear," and even then only pro rata, if the proceeds are insufficient to pay all interests in full.**

**A.   SCK has no interest whatsoever in the Inventory, Business Personal Property or Business Supplies of Warehouse 86.**

SCK has no rights to or interest in any of the inventory of Warehouse 86 ($391,929.05 for Net Loss for Inventory (Tornado Loss) and $69,163.95 for Inventory (Fire Loss) for a total of $461,093.00, nor for any Clean up and Repairs ($20,940.64 for Tornado Loss), nor for any of the Business Personal Property (Worktables, Expandos Expanders, Stools, Workstation Tables, Computer Shipping Printer – $66,477.47 for Tornado Loss); and $154,114.89 for Business Supplies (Tornado Loss) of Warehouse 86.   The Statements of Loss for the Tornado Loss and the Fire Loss reflects that the value of these items in which SCK cannot claim any right or interest totals $702,626.00.

**B.   SCK has no right to the remaining Insurance Proceeds except to the extent that it can prove that it had an interest therein, and then only to the extent as its and Warehouse 86's interests may appear, and even then only pro rata, if the proceeds are insufficient to pay all interests in full.**

Although both SCK and Warehouse 86 agree that the "Conveyor and Racking System" and "Betterments and Improvements" were "Covered Property," SCK must then demonstrate the extent to which it had an interest in those properties.   Only to the extent that SCK can do this will it be entitled to share in those proceeds "as interests may appear."   Furthermore, if the proceeds are insufficient to pay all interests in full, the interests of SCK and Warehouse 86 will be paid pro rata. *See generally Firemen's Fund Am. Ins. Co. v. Ken-Lori Knits, Inc.,* 399 F.Supp. 286, 292 (D.C.N.Y. 1975) ("The remainder of the proceeds, i.e., $21,904.20, is attributable to the loss of the yarn and is claimed by Ambassador, the United States and Courtaulds.   However, the relative priorities of these parties cannot be determined on a motion for summary judgment because the

ownership of the destroyed yarn has not been established and the rights of the parties depend on this factual determination."). In no event, however, would SCK be entitled to more than its pro rata share in these payments.[1]

### IV.   SCK's claims against Warehouse 86 are, for present purposes of determining the rights of the parties to the Insurance Proceeds, irrelevant.

SCK's Complaint for Declaratory Judgment seems to suggest that SCK has or asserts claims against Warehouse 86 under the sublease. Whatever the merits of these allegations, these claims are irrelevant when it comes to allocating the Insurance Proceeds. SCK is entitled to only so much of the Insurance Proceeds, if any, as it can prove in accordance with the legal principles outlined above; Warehouse 86 is entitled to the rest. To the extent, if any, that SCK can also establish that Warehouse 86 is subject to liability for breach of the sublease, or for anything else, then to that extent SCK will be a general, unsecured creditor of Warehouse 86 which will share with other creditors of equal standing in whatever assets – including Warehouse 86's share of the insurance proceeds – that may be available to that class of creditors. SCK's Complaint reflects its inability to distinguish between its rights under the Insurance Policy and its claims against Warehouse 86. The latter, while perhaps making SCK a general, unsecured creditor, gives SCK no rights in the Insurance Policy proceeds themselves.

---

[1] The damage done to the inventory, conveyor and racking systems and other personal property by the fire was less than the Insurance Policy's $1.0 million limit of liability, so pro rata is not an issue as to the $950,682.60. There was $950,682.60 worth of damage, and $950,682.60 was paid for the Fire Loss. As to the tornado, however, there was almost $1.5 million dollars worth of property damage, but only $1.0 million was paid for property damage, due to the limits of liability.

Dated:   April 1, 2010.

                      Respectfully submitted,

                      WAREHOUSE 86, LLC

                      By:   *s/ Robert M. Frey*
                           ROBERT M. FREY (MB No. 5531)
                           STEPHEN W. ROSENBLATT (MB No. 5676)

                      Its Attorneys

OF COUNSEL:

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
1020 Highland Colony Parkway, Suite 1400
Post Office Box 6010
Ridgeland, Mississippi   39158-6010
601-948-5711
601-985-4500 (fax)

## CERTIFICATE OF SERVICE

I, Robert M. Frey, one of the attorneys for Warehouse 86, LLC, certify that I have this day caused a true and correct copy of the foregoing pleading send by electronic mail to the following persons:

        Marcus M. Wilson, Esq.
        BENNETT LOTTERHOS SULSER & WILSON, P.A.
        One Jackson Place
        188 East Capitol Street, Suite 1400
        Jackson, Mississippi   39201
        mwilson@blswlaw.com

        ATTORNEYS FOR SCK, INC. and RADIOSHACK CORPORATION

- 8 -

      Ronald McAlpin, Esq.
      OFFICE OF THE UNITED STATES TRUSTEE
      Suite 706, A. H. McCoy Federal Building
      100 West Capitol Street
      Jackson, Mississippi   39269
      Ronald.McAlpin@USDOJ.gov

April 1, 2010.

                              *s/ Robert M. Frey*_____
                              ROBERT M. FREY

Jackson 4978924v1