**EXHIBIT B**
(Subleased Equipment description)

**"MISCELLANEOUS OWNED EQUIPMENT "**

| Qty | Location | Item Name | Item Description | Model/Serial # |
|---|---|---|---|---|
| 1 | Server Room | Techlogics | Wireless Router | 9500 |
| 1 | Server Room | Power Supply | APC | 5000 |
| 1 | Server Room | Power Supply | APC | 3000XL |
| 1 | Server Room | KVM Switch | Belkin | n/a |
| 1 | Server Room | Switch | Catalyst | 3550 |
| 1 | Server Room | Switch | Catalyst | 3550 |
| 1 | Server Room | Switch | Catalyst | 6500 |
| 4 | Warehouse | Tapers | Tapers/Laminators | 3M 700E |
| 1 | Warehouse | Pallet Scale | Digital Read Out | UK |
| 8 | Warehouse | Workstation Desks | | UK |
| 275 | Warehouse | Grey Totes | | UK |
| 8 | Warehouse | Rolling Flat Carts | | UK |
| 8 | Warehouse | Laundry Baskets | | UK |
| 3 | Warehouse | Pallet Jacks | | UK |
| 15 | Warehouse | Trashcans | | UK |
| Multiple | Warehouse | Conveyor parts | Misc. spare parts | Siemens/UK |
| Multiple | Warehouse | Racking parts | Misc. spare parts | |
| 2 | Warehouse | Black Switch Boxes | | UK |

**"MATERIAL HANDLING EQUIPMENT LEASED FROM GE CAPITAL #4145183-002"**

| Qty | Location | Item Name | Item Description | Model/Serial # |
|---|---|---|---|---|
| 1 | Warehouse | Electric Stockpicker | Forklift truck w/2 batteries & 1 charger | SP3220-30 / 1A265785 |
| 1 | Warehouse | Electric Stockpicker | Forklift truck w/2 batteries & 1 charger | SP3220-30 / 1A265786 |
| 1 | Warehouse | Electric Stockpicker | Forklift truck w/2 batteries & 1 charger | SP3220-30 / 1A265787 |
| 1 | Warehouse | Electric Reach | Forklift truck w/2 batteries & 1 charger | SP3220-30 / 1A265984 |
| 1 | Warehouse | Electric Reach | Forklift truck w/2 batteries & 1 charger | SP3220-30 / 1A265985 |
| 1 | Warehouse | Electric Forklift | With 2 batteries, 1 charger | RC3020-030 / 1A265502 |
| 1 | Warehouse | Electric Palletjack Forklift Truck | With 2 batteries, 1 charger | PE4000-60 / 6A206583 |
| 1 | Warehouse | Electric Palletjack Forklift Truck | With 2 batteries, 1 charger | PE4000-60 / 6A206584 |
| 1 | Warehouse | Electric Palletjack Forklift Truck | | WP2030-45 / 5A316671 |
| 5 | Warehouse | Battery Stands | w/pans, roller station, hertralization & deionizing | |

| | | | | |
|---|---|---|---|---|
| | | | system | |

"CONVEYOR / RACKING EQUIPMENT LEASED FROM GE CAPITAL #4145183-001"

| Unit | | Model | Description | Conv. Width | Lgth. Feet | HP | Speed (fpm) | Support Type | Comment |
|---|---|---|---|---|---|---|---|---|---|
| RT+ | 0100 | 1102 | Belt Driven Live Roller | 30.25" | 163'-0" | 1.50 | 70 | FS | Tri-Wide Support, Gap Plates\ |
| RG+ | 0100 A | 0200 | Gravity Roller | 21.25" | 163'-0" | | | FS | Tri-Wide Support, Gap Plates |
| RG+ | 0100 B | 0200 | Gravity Roller | 21.25" | 163'-0" | | | FS | Tri-Wide Support, Gap Plates |
| WG+ | 0101 | 0300 | Gravity Miscellaneous | 30.25" | 4'-0" | | | FS | Gravity Gate |
| RT+ | 0102 | 1256 | Lineshaft Conveyor | 30.25" | 10'-9" | .750 | 90 | FS | (1) 90° Curve |
| RA+ | 0103 | 1265 | Flat Belt APC | 30.25" | 36'-0" | 1.00 | 160 | FS | DZB, Photo Eye Accum |
| BT+ | 0104 | 0410 | Belt on Roller | 30.25" | 30'-0" | 1.00 | 80/160 | FS | Powertail, Vector Drive |
| RT+ | 0105 | 1102 | Belt Driven Live Roller | 30.25" | 166'-3" | 1.50 | 70 | FS | Tri-Wide Support, Gap Plates |
| RG+ | 0105 A | 0200 | Gravity Roller | 24.25" | 166'-6" | | | FS | Tri-Wide Support, Gap Plates |
| RG+ | 0105 B | 0200 | Gravity Roller | 24.25" | 166'-6" | | | FS | Tri-Wide Support, Gap Plates |
| WG+ | 0106 | 0300 | Gravity Miscellaneous | 30.25" | 4'-0" | | | FS | Gravity Gate |
| RT+ | 0107 | 1256 | Lineshaft Conveyor | 30.25" | 14'-9" | .750 | 90 | FS | (1) 90° Curve |
| RA+ | 0108 | 1265 | Flat Belt APC | 30.25" | 96'-0" | 1.50 | 160 | FS | DZB, Photo Eye Accum |
| BT+ | 0109 | 0410 | Belt on Roller | 30.25" | 32'-3" | 1.00 | 80/160 | FS | Powertail, Vector Drive |
| BT+ | 0110 | 0220 | Wide Belt Merge | 74" | 16'-0" | 3.00 | 250 | FS | With Powered Verti-belt |
| VB+ | 0110 A | 0220 | Fixed Verti-belt | 4" | 16'-0" | 1.00 | 300 | FS | Mounted to Unit BT+0110 |
| RT+ | 0111 | 0410 | Belt on Roller | 30.25" | 15'-11" | 2.00 | 250 | FS | |
| SS+ | 0112 | 2455 | PS 140 Positive Sorter | 39.25" | 113'-4" | 20.00 | 325 | FS | (7) Diverts w/20° Spurs, (1) 70° Curve, (5) Future Diverts |

| Unit | | Model | Description | Conv. Width | Lgth. Feet | HP | Speed (fpm) | Support Type | Comment |
|---|---|---|---|---|---|---|---|---|---|
| RG+ | 0113 | 0100 | Gravity Wheel | 30.25" | 10'-0" | | | FS | |
| RT+ | 0114 | 1256 | Lineshaft Conveyor | 30.25" | 29'-5" | 1.50 | 150 | FS | (1) 90° Curve |
| RA+ | 0115 | 0200 | Flat Belt Apc | 30.25" | 45'-0" | 1.00 | 160 | FS | Fixed End Stop |
| BT+ | 0116 | 0410 | Belt on Roller | 30.25" | 24'-5" | 2.00 | 140 | FS | Powertail, Brake Motor |
| RT+ | 0116 S | 0996 | Round Belt Live Roller | 30.25" | 9'-6" | | 140 | FS | (1) 70° Curve, Slave Driven From Unit BT+0116 |
| BT+ | 0117 | 0410 | Belt on Roller | 30.25" | 32'-0" | 2.00 | 170 | FS | Powertail, Brake Motor |
| RA+ | 0118 | 1265 | Flat Belt APC | 30.25" | 108'-0" | 2.00 | 200 | FS | DZB, Photo Eye Accum |
| BM+ | 0119 | 2305 | Meter Belt | 31.375" | 10'-0" | 1.00 | 100/210 | FS | Powertail, Brake Motor |
| RT+ | 0120 | 0996 | Round Belt Live Roller | 30.25" | 6'-9" | 1.00 | 220 | FS | (1) 45° Curve |
| WG+ | 0200 | 0100 | Gravity Wheel | 24.25" | 15'-0" | | | FS | |
| RA+ | 0201 | 1265 | Flat Belt APC | 24.25" | 57'-0" | 1.50 | 160 | FS | DZB |
| RT+ | 0202 | 0200 | Gravity Roller | 24.25" | 15'-0" | | | FS | |
| RA+ | 0203 | 1265 | Flat Belt APC | 24.25" | 60'-0" | 1.50 | 160 | FS | Photo Eye Accum |
| RT+ | 0204 | 1102 | Belt Driven Live Roller | 24.25" | 54'-0" | 1.50 | 60 | FS | Gap Plates |
| RT+ | 0204 S | 0996 | Round Belt Live Roller Lineshaft Conveyor | 24.25" | 15'-1" | SD | 60 | FS | (2) 90° Curves, Slave Driven |
| RT+ | 0205 | 1102 | Belt Driven Live Roller | 24.25" | 65'-0" | 1.00 | 60 | FS | Gap Plates |
| RG+ | 0206 | 0200 | Gravity Wheel | 24.25" | 10'-0" | | | FS | |
| RT+ | 0207 | 0996 | Round Belt Live Roller | 24.25" | 9'-0" | 1.00 | 120 | FS | (1) 90° Curve |
| RA+ | 0208 | 1265 | Flat Belt APC | 24.25" | 48'-0" | 1.00 | 130 | FS | DZB,Photo Eye Accum |

| Unit | | Model | Description | Conv. Width. | Lgth. Feet | HP | Speed (fpm) | Support Type | Comment |
|---|---|---|---|---|---|---|---|---|---|
| BT+ | 0209 | 0410 | Belt on Roller | 24.25" | 17'-8" | 1.00 | 50/100 | FS | Powertail, Brake Motor |
| WG+ | 0210 | 0100 | Gravity Wheel | 24.25" | 15'-0" | | | FS | |
| RA+ | 0211 | 1265 | Flat Belt APC | 24.25" | 60'-0" | 1.50 | 160 | FS | Photo Eye Accum |
| RT+ | 0212 | 0200 | Gravity Roller | 24.25" | 15'-0" | | | FS | |
| RT+ | 0213 | 1265 | Flat Belt APC | 24.25" | 60'-0" | 1.50 | 160 | FS | Photo Eye Accum |
| RT+ | 0214 | 1102 | Belt Driven Live Roller | 24.25" | 54'-0" | 1.50 | 60 | FS | Gap Plates |
| RT+ | 0214 S | 0996 | Round Belt Live Roller Lineshaft Conveyor | 24.25" | 15'-1" | SD | 60 | FS | (2) 90° Curves, Slave Driven |
| RT+ | 0215 | 1102 | Belt Driven Live Roller | 24.25" | 61'-0" | 1.00 | 60 | FS | Gap Plates |
| WG+ | 0216 | 0200 | Gravity Wheel | 24.25" | 10'-0" | | | FS | |
| RT+ | 0217 | 0996 | Round Belt Live Roller | 24.25" | 9'-0" | 1.00 | 120 | FS | (1) 90° Curve |
| RA+ | 0218 | 1265 | Flat Belt APC | 24.25" | 48'-0" | | 130 | FS | DZB, Photo Eye Accum |
| BT+ | 0219 | 0410 | Belt on Roller | 24.25" | 17'-8" | 1.00 | 50/100 | FS | Powertail, Brake Motor |
| WG+ | 0220 | 0100 | Gravity Wheel | 24.25" | 15'-0" | | | FS | |
| RA+ | 0221 | 1265 | Flat Belt APC | 24.25" | 60'-0" | 1.50 | 160 | FS | Photo Eye Accum |
| RG+ | 0222 | 0200 | Gravity Roller | 24.25" | 15'-0" | | | FS | |
| RA+ | 0223 | 1265 | Flat Belt APC | 24.25" | 60'-0" | 1.50 | 160 | FS | Photo Eye |
| RT+ | 0224 | 1102 | Belt Driven Live Roller | 24.25" | 54'-0" | 1.50 | 60 | FS | Gap Plates |
| RT+ | 0224 S | 0996 | Round Belt Live Roller Lineshaft Conveyor | 24.25" | 15'-1" | SD | 60 | FS | (2) 90° Curves, Slave Driven |
| RT+ | 0225 | 1102 | Belt Driven Live Roller | 24.25" | 61'-0" | 1.00 | 60 | FS | Gap Plates |

| Unit | | Model | Description | Conv. Width | Lgth. Feet | HP | Speed (fpm) | Support Type | Comment |
|---|---|---|---|---|---|---|---|---|---|
| RT+ | 0226 | 1256 | Lineshaft Conveyor | 24.25" | 36'-7" | 1.00 | 120 | FS | Three (3) 90° Curves |
| RA+ | 0227 | 1265 | Flat Belt APC | 24.25" | 43'-0" | 1.00 | 130 | FS | DZB, Photo Eye Accum |
| BT+ | 0228 | 0410 | Belt on Roller | 24.25" | 17'-8" | 1.00 | 50/100 | FS | Powertail, Brake Motor |
| RT+ | 0229 | 1102 | Belt Driven Live Roller | 30.25 | 16'-0" | 2.00 | 140 | FS | Sawtooth Merge w/ (3) tooth infeed |
| RT+ | 0229 S | 0996 | Round Belt Live Roller | 30.25 | 7'-0" | SD | 140 | FS | One (1) 45° Curve, Slave Driven |
| RA+ | 0230 | 1265 | Flat Belt APC | 30.25 | 66'-0" | 1.50 | 160 | FS | Photo Eye Accum, Stop |
| RT+ | 0231 | 1256 | Lineshaft Conveyor | 30.25 | 101'-0" | 2.00 | 90 | FS | Two (2) 90° Curves, One (1) 60° Curve, One (1) 30° Merge |
| BT+ | 0232 | 0410 | Belt on Roller | 30.25 | 48'-0" | 2.00 | 120 | FS | Powertail, Brake Motor |
| RT+ | 0233 | 0996 | Live Belt Live Roller | 30.25 | 25'-0" | 1.00 | 130 | FS | Two (2) 90° Curves |
| RA+ | 0234 | 1265 | Flat Belt APC | 30.25 | 153'-0" | 3.00 | 200 | FS | DZB, Photoeye accum. |
| BM+ | 0235 | 2305 | Meter Belt | 31.375 | 10'-0" | 1.00 | 100/210 | FS | Powertail, Brake Motor |
| RT+ | 0236 | 0996 | Round Belt Live Roller | 30.25 | 6'-9" | 1.00 | 220 | FS | (1) 45° Curve |
| RG+ | 0237 | 0200 | Gravity Roller | 24.25 | 5'-0" | | | | |
| RG+ | 0239 | 0200 | Gravity Roller | 24.25 | 5'-0" | | | FS | With 3' Gate |
| RG= | 0240 | 0200 | Gravity Roller | 24.25 | 5'-0" | | | | |
| RG+ | 0242 | 0200 | Gravity Roller | 24.25 | 5'-0" | | | FS | With 3' Gate |
| RT+ | 0300 | 1131 | Live Roller | 36.25 | 28'-4" | 2.00 | 250 | FS/PLT | Sawtooth Merge, With(4) Teeth Infeeds |
| RA+ | 0301 | 1265 | Flat Belt APC | 30.25" | 48'-0" | 2.00 | 220 | FS/PLT | DZB, Photo Eye Accum |
| BI+ | 0302 | 2305 | Meter Belt | 31.375" | 12'-0" | 2.00 | 110/220 | FS/PLT | Powertail, Vector Drive |
| BT+ | 0303 | 0977 | Flat Belt Turn | 30" | 90° | 3.00 | 280 | FS/PLT | |
| BT+ | 0304 | 0977 | Flat Belt | 30" | 90° | 3.00 | 280 | FS/PL | |

| Unit | | Model | Description | Conv. Width | Lgth. Feet | HP | Speed (fpm) | Support Type | Comment |
|---|---|---|---|---|---|---|---|---|---|
| | | | Turn | | | | | T | |
| BT+ | 0305 | 2310 | Slider Bed | 30" | 4'-0" | 1.00 | 280 | FS/PL T | |
| SC+ | 0306 | | In-Motion Scale | 30" | 5'-0" | 1.00 | 280 | FS/PL T | |
| BT+ | 0306 A | 2310 | Slider Bed | 30" | 4'-0" | 1.00 | 280 | FS/PL T | |
| SS+ | 0307 | 2455 | PS 140 Positive Sorter | 39.25" | 166'-8" | 25.0 0 | 325 | FS/PL T | (6) Diverts w/ 20° Spurs & 70° Gravity Curves (4) Future Diverts |
| RT+ | 0308 | 2490 | Round Belt Live Roller | 30.25" | 22'-10" | 1.00 | 300 | FS/PL T | (2) 90° Curve |
| RA+ | 0309 | 1265 | Flat Belt APC | 30.25" | 87'-0" | 1.00 | 250 | FS/PL T | DZB, PE |
| BM+ | 0310 | 2305 | Meter Belt | 30.625" | 10'-0" | 1.00 | 125/25 0 | FS/PL T | Powertail, Brake Motor |
| CH+ | 0311 | | Gravity Chute | 30.25" | 25'-0" | | | FS | Typical of (4) |
| BF+ | 0312 | | Powered Extendable | 30.25" | 26'-0"/60'-0" | | 0-120 | FS | Typical of (4) Units w/Transistion,Guid e Tracks, & PowerTrax |
| BT+ | 0315 | 0410 | Belt on Roller | 30.25" | 14'-0" | 1.00 | 120 | FS/PL T | Brake Motor |
| WG+ | 0316 | 0100 | Gravity Wheel | 30.25 | 8'-5" | | | FS/PL T | (1) 70° Curve |
| RA+ | 0317 | 1265 | Flat Belt APC | 30.25 | 30'-0" | 1.00 | 140 | FS/PL T | DZB, Photo Eye Accum |
| RG+ | 0317 A | 0200 | Gravity Roller | 24.25 | 30'-0" | | | FS/PL T | Fixed End Stop |
| RG+ | 0317 B | 0200 | Gravity Roller | 24.25 | 30'-0" | | | | Fixed End Stop |
| RT+ | 0318 A | 0996 | Round Belt Live Roller | 30.25 | 15'-0" | 1.00 | 150 | FS/PL T | Two (2) 45° Curves |
| RA+ | 0318 | 1265 | Flat Belt APC | 30.25" | 30'-0" | 1.00 | 200 | FS/PL T | DZB, Photo Eye Accum |
| BT+ | 0319 | 2305 | Meter Belt | 30.625" | 10'-0" | 1.00 | 50/100 | FS/PL T | Powertail,Brake Motor |
| RT+ | 0320 | 1131 | Flat Belt Live Roller | 72.25" | 12'-0" | 1.00 | 120 | FS/PL T | 2:1 Fixed Divert Rail Merge |
| RT+ | 0321 | 1256 | Lineshaft | 30.25" | 18'-0" | .750 | 120 | FS/PL | (2) 90° Curve |

| Unit | | Model | Description | Conv. Width | Lgth. Feet | HP | Speed (fpm) | Support Type | Comment |
|---|---|---|---|---|---|---|---|---|---|
| | | | Conveyor | | | | | T | |
| RA+ | 0322 | 1265 | Flat Belt APC | 30.25" | 48'-0" | 1.00 | 120 | FS/PL T | DZB, Photo Eye Accum |
| RG+ | 0322 A | 0200 | Gravity Roller | 24.25" | 60'-0" | | | FS/PL T | Fixed End Stops |
| RT+ | 0323 | 1256 | Lineshaft Conveyor | 30.25" | 18'-9" | .750 | 120 | FS/PL T | (2) 90° Curve |
| RA+ | 0324 | 1265 | Flat Belt APC | 30.25" | 30'-0" | 1.00 | 120 | FS/PL T | DZB, Photo Eye Accum |
| BM+ | 0325 | 2305 | Meter Belt | 30.625" | 10'-0" | 1.00 | 50/100 | FS/PL T | Brake Motor |
| RA+ | 0326 | 1265 | Flat Belt APC | 30.25" | 67'-0" | 1.00 | 90 | FS/PL T | DZB |
| RG+ | 0326 E | 0200 | Gravity Roller | 24.25" | 3'-0" | | | | |
| RG+ | 0326 F | 0200 | Gravity Roller | 24.25" | 3'-0" | | | | |
| RG+ | 0326 G | 0200 | Gravity Roller | 24.25" | 3'-0" | | | | |
| RG+ | 0326 H | 0200 | Gravity Roller | 24.25" | 3'-0" | | | | |
| RT+ | 0327 | 0996 | Round Belt Live Roller | 30.25" | 12'-0" | .750 | 100 | FS/PL T | 1) 90° Curve |

11-08-2007

SCHEDULE A

PRIME LEASE

108

Lease dated August 1, 2003,
relating to certain space known as Suite 110
in the Airways Distribution Center
located at 481 Airport Industrial Drive,
Southaven, Mississippi

IMAGING SERVICES

IMAGING SERVICES

11/08/2007 10:59

SCHEDULE A

PRIME LEASE

Lease dated August 1, 2003,
relating to certain space known as Suite 110
in the Airways Distribution Center
located at 481 Airport Industrial Drive,
Southaven, Mississippi

IMAGING SERVICES

IMAGING SERVICES

INDUSTRIAL LEASE AGREEMENT

BETWEEN

INDUSTRIAL DEVELOPMENTS INTERNATIONAL, INC.

AS LANDLORD

AND

WIRELESS RETAIL, INC.

AS TENANT

IMAGING SERVICES

IMAGING SERVICES

# Exhibit "A"

# Part 2 of 3

LEASE INDEX


| Section | Subject |
|---|---|
| 1 | Basic Lease Provisions |
| 2 | Demised Premises |
| 3 | Term |
| 4 | Base Rent |
| 5 | Security Deposit |
| 6 | Operating Expenses and Additional Rent |
| 7 | Use of Demised Premises |
| 8 | Insurance |
| 9 | Utilities |
| 10 | Maintenance and Repairs |
| 11 | Tenant's Personal Property; Indemnity |
| 12 | Tenant's Fixtures |
| 13 | Signs |
| 14 | Landlord's Lien |
| 15 | Governmental Regulations |
| 16 | Environmental Matters |
| 17 | Construction of Demised Premises |
| 18 | Tenant Alterations and Additions |
| 19 | Services by Landlord |
| 20 | Fire and Other Casualty |
| 21 | Condemnation |
| 22 | Tenant's Default |
| 23 | Landlord's Right of Entry |
| 24 | Lender's Rights |
| 25 | Estoppel Certificate and Financial Statement |
| 26 | Landlord's Liability |
| 27 | Notices |
| 28 | Brokers |
| 29 | Assignment and Subleasing |
| 30 | Termination or Expiration |
| 31 | Intentionally Omitted |
| 32 | Late Payments |
| 33 | Rules and Regulations |
| 34 | Quiet Enjoyment |
| 35 | Miscellaneous |
| 36 | Special Stipulations |
| 37 | Lease Date |
| 38 | Authority |
| 39 | No Offer Until Executed |

Exhibit "A" Demised Premises
Exhibit "B" Preliminary Plans and Specifications/Work
Exhibit "C" Special Stipulations
Exhibit "D" Rules and Regulations
Exhibit "E" Certificate of Authority
Exhibit "F" SNDA
Exhibit "G" Memorandum of Lease
Exhibit "H" Plans and Specifications for Conveyor Belt System


ATL01/11405516v9

## INDUSTRIAL LEASE AGREEMENT

THIS LEASE AGREEMENT (the "Lease") is made as of the "Lease Date" (as defined in Section 37 herein) by and between INDUSTRIAL DEVELOPMENTS INTERNATIONAL, INC., a Delaware corporation ("Landlord"), and WIRELESS RETAIL, INC., a Texas corporation ("Tenant") (the words "Landlord" and "Tenant" to include their respective legal representatives, successors and permitted assigns where the context requires or permits).

WITNESSETH:

1. Basic Lease Provisions. The following constitute the basic provisions of this Lease:

(a) Demised Premises Address: 481 Airport Industrial Drive, Suite 110, Southaven, Mississippi 38671

(b) Demised Premises Square Footage: approximately 177,039 sq. ft.

(c) Building Square Footage: approximately 246,078 sq. ft.

(d) Annual Base Rent (based on 177,039 sq. ft. at $3.272 per square foot; see Section 17 hereof):

| | | |
|---|---|---|
| Lease Year 1 | $579,252.00 | (plus the prorated amount for any Fractional Month per Section 3 hereof, if applicable) |
| Lease Year 2 | $579,252.00 | |
| Lease Year 3 | $579,252.00 | |
| Lease Year 4 | $579,252.00 | |
| Lease Year 5 | $579,252.00 | |

(e) Monthly Base Rent Installments (based on 177,039 sq. ft. at $3.272 per square foot; see Section 17 hereof):

| | |
|---|---|
| Lease Year 1 | Months 1-2: $0.00 |
| | Months 3-15: $48,271.00 (plus the prorated amount for any Fractional Month per Section 3 hereof, if applicable) |
| Lease Year 2 | $48,271.00 |
| Lease Year 3 | $48,271.00 |
| Lease Year 4 | $48,271.00 |
| Lease Year 5 | $48,271.00 |

(f) Lease Commencement Date: August 1, 2003

(g) Base Rent Commencement Date: October 1, 2003

(h) Expiration Date: The last day of the Sixtieth (60th) full calendar month following the Base Rent Commencement Date

(i) Primary Term: Sixty-Two (62) months plus, in the event the Base Rent Commencement Date does not occur on the first (1st) day of a calendar month, the period from and including the Base Rent Commencement Date to and including the last day of the calendar month in which the Base Rent Commencement Date occurs (if applicable, the "Fractional Month")

(j) Tenant's Operating Expense Percentage: 71.94%

(k) Security Deposit: $48,271.00

(l) Permitted Use: Distribution, warehousing and assembly of wireless telephones and related products and administrative uses reasonably incidental thereto

(m) Address for notice:

Landlord: INDUSTRIAL DEVELOPMENTS INTERNATIONAL, INC.
c/o IDI, Inc.
3424 Peachtree Road, N.E., Suite 1500
Atlanta, Georgia 30326
Attn: Manager - Lease Administration

Tenant: WIRELESS RETAIL, INC.
8800 E. Chaparral Road, Suite 300
Scottsdale, Arizona 85250
Attn: Real Estate Department
Telephone: (480) 346-4400
Facsimile: (480) 346-4557

(n) Address for rental payments:

INDUSTRIAL DEVELOPMENTS INTERNATIONAL, INC.
c/o IDI Services Group, LLC
P. O. Box 281464
Atlanta, Georgia 30384-1464

(o) Broker(s): CB Richard Ellis

(p) Guarantor: Wireless America, Inc.

2. Demised Premises. For and in consideration of the rent hereinafter reserved and the mutual covenants hereinafter contained, Landlord does hereby lease and demise unto Tenant, and Tenant does hereby hire, lease and accept, from Landlord all upon the terms and conditions hereinafter set forth the following premises, referred to as the "Demised Premises", as outlined on Exhibit A attached hereto and incorporated herein: an agreed upon approximately 177,039 square feet of space, approximately 11,310 square feet of which is to be office space, located within Building C, shown on Exhibit A (the "Building"), which Building is to be constructed by Landlord, is to contain a total of approximately 246,078 square feet and is to be located within Airways Distribution Center (the "Project") in DeSoto County, Mississippi.

3. Term. To have and to hold the Demised Premises for a preliminary term (the "Preliminary Term") commencing on the Lease Date and ending on the day immediately preceding the Lease Commencement Date as set forth in Section 1(f), and a primary term (the "Primary Term") commencing on the Lease Commencement Date and terminating on the Expiration Date as set forth in Section 1(b), as the Lease Commencement Date and the Expiration Date may be revised pursuant to Section 17, and subject to Tenant's extension option contained in Special Stipulation 4 on Exhibit C attached hereto (the Preliminary Term, the Primary Term, and any and all extensions thereof, herein referred to as the "Term"). The term "Lease Year", as used in this Lease, shall mean the 12-month period commencing on the Base Rent Commencement Date, and each 12-month period thereafter during the Term; *provided, however*, that (i) if the Base Rent Commencement Date occurs after the Lease Commencement Date, the first Lease Year will include the period between the Lease Commencement Date and the Base Rent Commencement Date, and (ii) if the Base Rent Commencement Date is a day other than the first day of a calendar month, the first Lease Year shall include the resulting Fractional Month and shall extend through the end of the twelfth (12th) full calendar month following the Base Rent Commencement Date.

4. Base Rent. Tenant shall pay to Landlord at the address set forth in Section 1(n), as base rent for the Demised Premises, commencing on the Base Rent Commencement Date and continuing throughout the Term in lawful money of the United States, the annual amount set forth in Section 1(d) payable in equal monthly installments as set forth in Section 1(e) (the "Base Rent"), payable in advance, without demand and without abatement, reduction, set-off or deduction, on the first day of each calendar month during the Term. If the Base Rent Commencement Date shall fall on a day other than the first day of a calendar month, the Base Rent shall be apportioned pro rata on a per diem basis for the resulting Fractional Month (which pro rata payment shall be due and payable on the Base Rent Commencement Date). No payment by Tenant or receipt by Landlord of rent hereunder shall be deemed to be other than on account of the amount due, and no endorsement or statement on any check or any letter accompanying any check or payment of rent shall be deemed an accord and satisfaction, and Landlord may accept such check as payment without prejudice to Landlord's right to recover the balance of such installment or payment of rent or pursue any other remedies available to Landlord.

5. Security Deposit.

(a) Upon Tenant's execution of this Lease, Tenant will pay to Landlord the sum set forth in Section 1(k) (the "Security Deposit") as security for the full and faithful performance by Tenant of each and every term, covenant and condition of this Lease. The acceptance by Landlord of the Security Deposit paid by Tenant shall not render this Lease effective unless and until Landlord shall have executed and delivered to Tenant a fully executed copy of this Lease. The Security Deposit may be commingled with Landlord's other funds or held by Landlord in a separate interest bearing account, with interest paid to Landlord, as Landlord may elect. In the event that Tenant is in default under this Lease, Landlord may retain the Security Deposit for the payment of any sum due Landlord or which Landlord may expend or be required to expend by reason of Tenant's default or failure to perform; provided, however, that any such retention by Landlord shall not be or be deemed to be an election of remedies by Landlord or viewed as liquidated damages, it being expressly understood and agreed that Landlord shall have the right to pursue any and all other remedies available to it under the terms of this Lease or otherwise. In the event all or any portion of the Security Deposit is so retained by Landlord, Tenant shall, within five (5) days of demand therefor from Landlord, replenish the Security Deposit to the full amount set forth in Section 1(k). In the event that Tenant shall comply with all of the terms, covenants and conditions of this Lease, the Security Deposit shall be returned to Tenant within thirty (30) days after the later of (a) the Expiration Date or (b) the date that Tenant delivers possession of the Demised Premises to Landlord. In the event of a sale of the Building, Landlord shall have the right to transfer the Security Deposit to the purchaser, and upon acceptance by such purchaser, Landlord shall be released from all liability for the return of the Security Deposit. Tenant shall not assign or encumber the money deposited as security, and neither Landlord nor its successors or assigns shall be bound by any such assignment or encumbrance.

(b) Tenant shall have the right on the date which is the first day of the thirty-first (31st) month following the Base Rent Commencement Date (the "Return Date"), to request a return of the Security Deposit. If, on the Return Date (a) no Event of Default has occurred and is continuing, (b) Tenant then has a tangible net worth which is (as of the fiscal quarter of Tenant then most recently ended) not less than the its tangible net worth as of the Lease Date and (c) the business of Tenant has generated positive net operating income for the six (6) fiscal quarters of Tenant most recently preceding the Return Date, as verified by Qualified Financial Statements (as hereinafter defined), the Tenant shall be entitled to have the Security Deposit returned. If Tenant becomes entitled to the return of the Security Deposit in accordance with the foregoing, and the Security Deposit is then being held by Landlord in cash, Landlord will, within fifteen (15) business days after receipt by Landlord from Tenant of a written notice confirming the occurrence of the requirements above and providing any related, supporting Qualified Financial Statements, return the Security Deposit to Tenant. If Landlord is then holding a letter of credit for the Security Deposit, Landlord will, not later than fifteen (15) business days after receipt by Landlord from Tenant of a written notice confirming the occurrence of the requirements above and providing any related, supporting Qualified Financial Statements, return the letter of credit to Tenant. Notwithstanding the foregoing, in the event the Security Deposit has been returned to Tenant in accordance with the terms of this subsection (b), on the date which is six (6) months prior to the expiration of the Initial Term (the "First Re-Deposit Date"), Tenant shall re-deposit the Security Deposit with Landlord as security for the full and faithful performance by Tenant of each and every term, covenant and condition of this Lease (the "Security Deposit Re-Deposit"); provided however that Tenant shall not be required to make the Security Deposit Re-Deposit on the First Re-Deposit Date if Tenant has, as of the First Re-Deposit Date, exercised its option to extend the Term as provided in Special Stipulation 4 of Exhibit C attached hereto. In the event Tenant does so exercise its first extension option on or prior to the First Re-Deposit Date (such that Tenant does not, at that time make the Security Deposit Re-Deposit), Tenant shall, on the date which is six (6) months prior to the expiration of the first extended term (the "Second Re-Deposit Date"), make the Security Deposit Re-Deposit, provided however that Tenant shall not be required to make the Security Deposit Re-Deposit on the Second Re-Deposit Date if Tenant has, as of the Second Re-Deposit Date, exercised its second extension option as provided in Special Stipulation 4 of Exhibit C attached hereto. In the event Tenant does so exercise its second extension option, Tenant shall, on the date which is six (6) months prior to the expiration of the second extended term (the "Third Re-Deposit Date") make the Security Deposit Re-Deposit, it being the intention of the parties that in any event the Landlord shall hold the Security Deposit on the date which is six (6) months prior to the expiration of the Term (as such Term may be extended pursuant to said Special Stipulation 4). In order for a financial statement to constitute a "Qualified Financial Statement"," as that term is used herein, such financial statement must (a) cover the relevant fiscal period for the determination being made, (b) be either one or more quarterly statements or an annual statement, (c) be prepared in accordance with generally accepted accounting principles consistently applied, (d) be prepared by one of the "Big Four" accounting firms, (e) be reviewed by such accountants (with respect to quarterly statements) or audited by such accountants (with respect to annual statements), and (f) be certified in writing by the chief financial officer of Tenant to be true, correct and complete.

6. Operating Expenses and Additional Rent.

(a) Tenant agrees to pay as Additional Rent (as defined in Section 6(b) below) its proportionate share of Operating Expenses (as hereinafter defined). "Operating Expenses" shall be defined as all reasonable expenses for operation, repair, replacement and maintenance as necessary to keep the Building and the common areas, driveways, and parking areas associated therewith (collectively, the "Building Common Area") fully operational and in good order, condition and repair, including but not limited to, utilities for the Building Common Area, expenses associated with the driveways and parking areas (including sealing and restriping, and trash, snow and ice removal), security systems, fire detection and prevention systems, lighting facilities, landscaped areas, walkways, painting and caulking, directional

signage, curbs, drainage strips, sewer lines, all charges assessed against or attributed to the Building pursuant to any applicable easements, covenants, restrictions, agreements, declaration of protective covenants or development standards, property management fees, all real property taxes and special assessments imposed upon the Building (but excluding special assessments assessed and due and payable for periods prior to the current calendar year), the Building Common Area and the land on which the Building and the Building Common Area are constructed, all costs of insurance paid by Landlord with respect to the Building and the Building Common Area (including, without limitation, commercially reasonable deductibles), and costs of improvements to the Building and the Building Common Area required by any law, ordinance or regulation applicable to the Building and the Building Common Area generally (and not because of the particular use of the Building or the Building Common Area by a particular tenant), which cost shall be amortized on a straight line basis over the useful life of such improvement, as reasonably determined by Landlord. Operating Expenses shall not include expenses for the costs of any maintenance and repair required to be performed by Landlord at its own expense under Section (10)(b). Further, Operating Expenses shall not include (i) the costs for capital improvements unless such costs are incurred for the purpose of causing a material decrease in the Operating Expenses of the Building or the Building Common Area or are incurred with respect to improvements made to comply with laws, ordinances or regulations as described above or (ii) any of the costs expressly excluded from Operating Expenses pursuant to Special Stipulation 8 on Exhibit "C" attached hereto. The proportionate share of Operating Expenses to be paid by Tenant shall be a percentage of the Operating Expenses based upon the proportion that the square footage of the Demised Premises bears to the total square footage of the Building (such figure referred to as "Tenant's Operating Expense Percentage" and set forth in Section 1(j)); provided that, as to management fees, Tenant shall pay Landlord the management fees directly attributable to the Rent (as hereinafter defined) payable hereunder with respect to the Demised Premises, and not Tenant's Operating Expense Percentage of the management fees payable on the entire Building. Notwithstanding the foregoing, Landlord shall, in Landlord's reasonable discretion, have the right to adjust Tenant's proportionate share of individual components of Operating Expenses if Tenant's Operating Expense Percentage thereof would not equitably allocate to Tenant its share of such component of Operating Expenses in light of Tenant's particular use, manner of use and/or level of tenant improvements in the Demised Premises. Prior to or promptly after the beginning of each calendar year during the Term, Landlord shall estimate the total amount of Operating Expenses to be paid by Tenant during each such calendar year and Tenant shall pay to Landlord one-twelfth (1/12) of such sum on the first day of each calendar month during each such calendar year, or part thereof, during the Term. Within a reasonable time after the end of each calendar year, Landlord shall submit to Tenant a statement of the actual amount of Operating Expenses for such calendar year, and the actual amount owed by Tenant, and within thirty (30) days after receipt of such statement, Tenant shall pay any deficiency between the actual amount owed and the estimates paid during such calendar year, or in the event of overpayment, Landlord shall credit the amount of such overpayment toward the next installment of Operating Expenses owed by Tenant or remit such overpayment to Tenant if the Term has expired or has been terminated and no Event of Default exists hereunder. The obligations in the immediately preceding sentence shall survive the expiration or any earlier termination of this Lease. If the Lease Commencement Date shall fall on other than the first day of the calendar year, and/or if the Expiration Date shall fall on other than the last day of the calendar year, Tenant's proportionate share of the Operating Expenses for such calendar year shall be apportioned prorata. Landlord shall be responsible for keeping the Building Common Areas fully operational and in good order, provided that the related costs shall be paid in accordance with this Section 6(a).

(b) Any amounts required to be paid by Tenant hereunder (in addition to Base Rent) and any charges or expenses incurred by Landlord on behalf of Tenant under the terms of this Lease shall be considered "Additional Rent" payable in the same manner and upon the same terms and conditions as the Base Rent reserved hereunder except as set forth herein to the contrary (all such Base Rent and Additional Rent sometimes being referred to collectively herein as "Rent"). Any failure on the part of Tenant to pay such Additional Rent when and as the same shall become due shall entitle Landlord to the remedies available to it for non-payment of Base Rent. Tenant's obligations for payment of Additional Rent shall begin to accrue on the Lease Commencement Date regardless of the Base Rent Commencement Date.

(c) If applicable in the jurisdiction where the Demised Premises are located, Tenant shall pay and be liable for all rental, sales, use and inventory taxes or other similar taxes, if any, on the amounts payable by Tenant hereunder levied or imposed by any city, state, county or other governmental body having authority, such payments to be in addition to all other payments required to be paid Landlord by Tenant under the terms of this Lease. Such payment shall be made by Tenant directly to such governmental body if billed to Tenant, or if billed to Landlord, such payment shall be paid concurrently with the payment of the Base Rent, Additional Rent, or such other charge upon which the tax is based, all as set forth herein.

7. Use of Demised Premises.

(a) The Demised Premises shall be used for the Permitted Use set forth in Section 1(l) and for no other purpose.

(b) Tenant will permit no liens to attach or exist against the Demised Premises, and shall not commit any waste.



ATL01/11405520v9

(c) The Demised Premises shall not be used for any illegal purposes, and Tenant shall not allow, suffer, or permit any vibration, noise, odor, light or other effect to occur within or around the Demised Premises that could constitute a nuisance or trespass for Landlord or any occupant of the Building or an adjoining building, its customers, agents, or invitees. Upon notice by Landlord to Tenant that any of the aforesaid prohibited uses are occurring, Tenant agrees to promptly remove or control the same.

(d) Tenant shall not in any way violate any law, ordinance or restrictive covenant affecting the Demised Premises ("Laws"), and shall not in any manner use the Demised Premises so as to cause cancellation of, prevent the use of, or increase the rate of, the fire and extended coverage insurance policy required hereunder. Tenant shall have the right, after written notice to Landlord, to contest by appropriate legal proceedings, diligently conducted in good faith, at its sole cost and expense, the validity or application of any Law with which Tenant is not in compliance, and to delay compliance therewith pending the prosecution of such proceedings, provided no civil or criminal penalty would be suffered or incurred by Landlord or the Building and no lien would be imposed upon or satisfied out of the Demised Premises or the Building by reason of such delay, and provided, further, that Landlord shall in no event be obligated to join in any such proceedings. Landlord makes no (and does hereby expressly disclaim any) covenant, representation or warranty as to the Permitted Use being allowed by or being in compliance with any applicable laws, rules, ordinances or restrictive covenants now or hereafter affecting the Demised Premises, and any zoning letters, copies of zoning ordinances or other information from any governmental agency or other third party provided to Tenant by Landlord or any of Landlord's agents or employees shall be for informational purposes only, Tenant hereby expressly acknowledging and agreeing that Tenant shall conduct and rely solely on its own due diligence and investigation with respect to the compliance of the Permitted Use with all such applicable laws, rules, ordinances and restrictive covenants and not on any such information provided by Landlord or any of its agents or employees.

(e) In the event insurance premiums pertaining to the Demised Premises, the Building, or the Building Common Area, whether paid by Landlord or Tenant, are increased over the least hazardous rate available due to the nature of the use of the Demised Premises by Tenant, Tenant shall pay such additional amount as Additional Rent.

(f) Tenant, its permitted subtenants and their employees, licensees and guests, shall have access to the Demised Premises at all times, twenty-four (24) hours per day, every day of the year, subject to such after-normal business hour security procedures as Landlord may require.

8. Insurance.

(a) Tenant covenants and agrees that from and after the Lease Commencement Date or any earlier date upon which Tenant enters or occupies the Demised Premises or any portion thereof, Tenant will carry and maintain, at its sole cost and expense, the following types of insurance, in the amounts specified and in the form hereinafter provided for:

(i) Liability Insurance in the Commercial General Liability form (including Broad Form Property Damage and Contractual Liabilities or reasonable equivalent thereto) covering the Demised Premises and Tenant's use thereof against claims for bodily injury or death, property damage and product liability occurring upon, in or about the Demised Premises, such insurance to be written on an occurrence basis (not a claims made basis), to be in combined single limits amounts not less than $3,000,000.00 and to have general aggregate limits of not less than $10,000,000.00 for each policy year, with such commercially reasonable deductible as may be approved by Landlord, which approval shall not be unreasonably withheld. The insurance coverage required under this Section 8(a)(i) shall, in addition, extend to any liability of Tenant arising out of the indemnities provided for in Section 11 and, if necessary, the policy shall contain a contractual endorsement to that effect.

(ii) Insurance covering (A) all of the items included in the leasehold improvements constructed in the Demised Premises by or at the expense of Landlord (collectively, the "Improvements"), including but not limited to demising walls and ductwork and portions of the heating, ventilating and air conditioning system located within the Demised Premises and (B) Tenant's trade fixtures, merchandise and personal property from time to time in, on or upon the Demised Premises, in an amount not less than one hundred percent (100%) of their full replacement value from time to time during the Term, providing protection against perils included within the standard form of "Special Form" fire and casualty insurance policy, together with insurance against sprinkler damage, vandalism and malicious mischief. Any policy proceeds from such insurance relating to the Improvements shall be used solely for the repair, construction and restoration or replacement of the Improvements damaged or destroyed unless this Lease shall cease and terminate under the provisions of Section 20.

(b) All policies of the insurance provided for in Section 8(a) shall be issued in form reasonably acceptable to Landlord by insurance companies with a rating of not less than "A," and financial size of not less than Class XII, in the most current available "Best's Insurance Reports", and licensed to do business in the state in which the Building is located. Each and every such policy:

(i) shall name Landlord, Lender (as defined in Section 24), and any other party reasonably designated by Landlord, as an additional insured. In addition, the coverage described in Section 8(a)(ii)(A) relating to the Improvements shall also name Landlord as "loss payee";