Lender or to any person to whom Tenant herein agrees to attorn to such other instruments as either shall request in order to effect said provisions.

9. The agreements herein contained shall be binding upon and shall inure to the benefit of the parties hereto, their respective successors and assigns, and, without limiting such, the agreements of Lender shall specifically be binding upon any Purchaser of the Property at foreclosure or otherwise.

10. This Agreement may not be modified other than by an agreement in writing signed by the parties hereto or their respective successors.

11. This Agreement may be signed in counterparts.

12. If any term or provision of this Agreement shall to any extent be held invalid or unenforceable, the remaining terms and provisions hereof shall not be affected thereby, but each term and provision hereof shall be valid and enforceable to the fullest extent permitted by law.

13. All notices, statements and other communications to be given under the terms of this Agreement shall be in writing and delivered by hand against written receipt or sent by certified or registered mail, return receipt requested, postage prepaid and addressed as provided in the first paragraph of this Agreement, or at such other address as from time to time designated by the party receiving the notice.

IN WITNESS WHEREOF, Tenant and Lender have caused this instrument to be executed as of the day and year first above written.

TENANT:

By:_____
Name:_____
Title:_____

LENDER:

U.S. BANK NATIONAL ASSOCIATION

By:_____
Name:_____
Title:_____

AGREED:

LANDLORD:

INDUSTRIAL DEVELOPMENTS INTERNATIONAL, INC.

By:_____
Name:_____
Title:_____

IMAGING SERVICES

IMAGING SERVICES

STATE OF _____
COUNTY OF _____, ss:

The foregoing instrument was acknowledged before me this _____ day of _____, 2003, by _____, _____ of _____, a _____, on behalf of the _____.

_____
Notary Public

STATE OF _____
COUNTY OF _____, ss:

The foregoing instrument was acknowledged before me this _____ day of _____, 2003, by _____, _____ of U.S. Bank National Association, a national banking association, on behalf of the national banking association.

_____
Notary Public

# IMAGING SERVICES

# IMAGING SERVICES

d-5

ATL01/11405526v7

EXHIBIT G

FORM OF MEMORANDUM OF LEASE

WHEN RECORDED RETURN TO:

Helen D. Shapiro, Esq
Greenberg Traurig, LLP
2375 E. Camelback Road, Suite 700
Phoenix, Arizona 85016

MEMORANDUM OF LEASE

THIS MEMORANDUM OF LEASE shall evidence that there is in existence a Lease as hereinafter described. It is executed by the parties hereto for recording purposes only as to the Lease hereinafter described, and it is not intended and shall not modify, amend, supersede or otherwise effect the terms and provisions of said Lease.

| | | |
|---|---|---|
| 1. | Name of Document: | INDUSTRIAL LEASE AGREEMENT |
| 2. | | Name of Landlord: INDUSTRIAL DEVELOPMENTS INTERNATIONAL, INC., a Delaware corporation |
| 3. | Name of Tenant: | WIRELESS RETAIL, INC., a Texas corporation |
| 6. | Date of Lease: | _____, 2003 |
| 7. | Initial Lease Term: | Five years, commencing on _____, 2003 and ending _____, 2008. |
| 8. | Option to Extend: | Lessee has the option to extend the initial lease term for two (2) additional periods of five (5) years each. |
| 9 | Demised Premises: | Approximately 177,039 square feet in the building located on the real property more particularly described in Exhibit "A" attached hereto, together with the improvements thereon. |

[Signature Pages Follow]

IMAGING SERVICES

IMAGING SERVICES

ATL01/11405326v9

IN WITNESS WHEREOF, the Parties have executed this Memorandum of Lease as of the day and year first written above.

Date:                    LANDLORD:

INDUSTRIAL DEVELOPMENTS INTERNATIONAL, INC., a Delaware corporation

By:
   Name:
   Title:

Attest:
   Name:
   Title:

[CORPORATE SEAL]

TENANT:

Date:                    WIRELESS RETAIL, INC., a Texas corporation

By:
   Name:
   Title:

Attest:
   Name:
   Title:

[CORPORATE SEAL]

IMAGING SERVICES

## ATTESTATION

Landlord:

STATE OF

COUNTY OF

BEFORE ME, a Notary Public in and for said County, personally appeared
_____ and _____ , known to me to be the person(s)
who, as _____ and _____,
respectively, of Industrial Developments International, Inc., the corporation which executed the foregoing instrument in its capacity as Landlord, signed the same, and acknowledged to me that they did so sign said instrument in the name and upon behalf of said corporation as officers of said corporation, that the same is their free act and deed as such officers, respectively, and they were duly authorized thereunto by its board of directors; and that the seal affixed to said instrument is the corporate seal of said corporation.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name, and affixed my official seal, this
day of _____, 2003.

Notary Public
My Commission Expires:

Tenant:

STATE OF

COUNTY OF

BEFORE ME, a Notary Public in and for said County, personally appeared
_____ and _____ , known to me to be the person(s)
who, as _____ and _____,
respectively, of Wireless Retail, Inc., the corporation which executed the foregoing instrument in its capacity as Tenant, signed the same, and acknowledged to me that they did so sign said instrument in the name and upon behalf of said corporation as officers of said corporation, that the same is their free act and deed as such officers, respectively, and they were duly authorized thereunto by its board of directors; and that the seal affixed to said instrument is the corporate seal of said corporation.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name, and affixed my official seal, this
day of _____, 2003.

Notary Public
My Commission Expires:

EXHIBIT H

CONVEYOR SYSTEM



d-9

**SCHEDULE B**
Special Terms and Conditions Applicable to Sublease of Equipment
described on Exhibit B to the Sublease.

The Subleased Equipment affected by this Schedule B of this Sublease is subject to that certain Master Lease Agreement between Sublessor's predecessor in interest Wireless Retail, Inc., as Lessee, and General Electric Capital Corporation as Lessor dated as of July 3, 2003. For purposes of this Schedule B, Sublandlord under the Sublease is referred to as Sublessor and Warehouse 86, LLC is referred to as Sublessee.

1. TERM:

The term of the Equipment Sublease shall commence on July 14, 2006. The Sublease with respect to Material Handling Equipment (as designated on Exhibit B to the Sublease) will expire at September 30, 2007 and the Sublease with respect to Conveyor/Racking and Miscellaneous Owned Equipment (as designated on Exhibit B to the Sublease) will expire at 12:00 midnight on September 30, 2008, or at such earlier time as the Sublease terminates.

2. TAXES:

(a) If permitted by law, Sublessee shall report and pay promptly all taxes, fees and assessments due, imposed, assessed or levied against any Subleased Equipment (or purchase, ownership, delivery, leasing, possession, use or operation thereof), this Agreement (or any rents or receipts hereunder), Lessor, Sublessor or Sublessee by any governmental entity or taxing authority during or related to the term of this Agreement, including, without limitation, all license and registration fees, and all sales, use, personal property, excise, gross receipts, franchise, stamp or other taxes, imposts, duties and charges, together with any penalties, fines or interest thereon (collectively "Taxes"). Sublessee shall have no liability for Taxes imposed by the United States of America or any state or political subdivision thereof which are on or measured by the net income of Sublessor. Sublessee shall promptly reimburse Sublessor (on an after tax basis) for any Taxes charged to or assessed against Sublessor. Sublessee shall show Sublessor as the owner of the Equipment on all tax reports or returns, and send Sublessor a copy of each report or return and evidence of Sublessee's payment of Taxes upon request.

(b) Sublessee's obligations, and Sublessor's rights and privileges, contained in this Section 2 shall survive the expiration or other termination of this Agreement.

3. REPORTS:

(a) If any tax or other lien shall attach to any Subleased Equipment, Sublessee will notify Sublessor in writing, within ten (10) days after Sublessee becomes aware of the tax or lien. The notice shall include the full particulars of the tax or lien and the location of such Subleased Equipment on the date of the notice

Schedule B -- Page 1

(b) Sublessee will deliver to Sublessor, Sublessee's complete financial statements, certified by a recognized firm of certified public accountants within ninety (90) days of the close of each fiscal year of Sublessee. Sublessee will deliver to Sublessor copies of Sublessee's quarterly financial report certified by the chief financial officer of Sublessee, within ninety (90) days of the close of each fiscal quarter of Sublessee. Sublessee will deliver to Sublessor all forms 10-K and 10-Q, if any, filed with the Securities and Exchange Commission within thirty (30) days after the date on which they are filed.

(c) Sublessor may inspect any Subleased Equipment during normal business hours after giving Sublessee reasonable prior notice.

(d) Sublessee will keep the Subleased Equipment at the Subleased Premises and will give Sublessor prior written notice of any relocation of Subleased Equipment. If Sublessor asks, Sublessee will promptly notify Sublessor in writing of the location of any Subleased Equipment

(e) If any Subleased Equipment is lost or damaged (where the estimated repair costs would exceed the greater of ten percent (10%) of the original Subleased Equipment cost or Ten Thousand Dollars and 00/100 ($10,000), or is otherwise involved in an accident causing personal injury or property damage, Sublessee will promptly and fully report the event to Sublessor in writing.

(f) Sublessee will promptly notify Sublessor of any change in Sublessee's state of incorporation or organization.

4. DELIVERY, USE AND OPERATION:

(a) Sublessee agrees that the Subleased Equipment will be used by Sublessee solely in the conduct of its business and in a manner complying with all applicable laws, regulations and insurance policies and Sublessee shall not discontinue use of the Subleased Equipment.

(b) Sublessee will not move any equipment from the Subleased Premises, without the prior written consent of Sublessor.

(c) Sublessee will keep the Subleased Equipment free and clear of all liens and encumbrances other than those which result from acts of Sublessor.

(d) Sublessor shall not disturb Sublessee's quiet enjoyment of the Subleased Equipment during the term of the Agreement unless a default has occurred and is continuing under the Agreement.

5. MAINTENANCE:

(a) Sublessee will, at its sole expense, maintain each unit of Subleased Equipment in good operating order and repair, normal wear and tear excepted. The Sublessee shall also maintain the Subleased Equipment in accordance with manufacturer's recommendations Sublessee shall make all alterations or modifications required to comply with any applicable law, rule or regulation during the term of this Agreement. If Sublessor requests, Sublessee shall affix plates, tags or other identifying labels showing ownership thereof by Sublessor. The tags or labels shall be placed in a prominent position on each unit of Subleased Equipment.

(b) Sublessee will not attach or install anything on any Subleased Equipment that will impair the originally intended function or use of such Subleased Equipment without the prior written consent of Sublessor. All additions, parts, supplies, accessories, and equipment ("Additions") furnished or attached to any Subleased Equipment that is not readily removable shall become the property of Sublessor, until Subleased Equipment is purchased by Subtenant in accordance with Sublease section 6. (c). All Additions shall be made only in compliance with applicable law. Sublessee will not attach or install any Subleased Equipment to or in any other personal or real property without the prior written consent of Sublessor

6. STIPULATED LOSS VALUE: If for any reason any unit of Subleased Equipment becomes worn out, lost, stolen, destroyed, irreparably damaged or unusable ("Casualty Occurrences") Sublessee shall promptly and fully notify Sublessor in writing. Sublessee shall pay Sublessor the sum of (i) the Stipulated Loss Value (as set out on the list of Stipulated Loss Values attached to the Master Lease Agreement as Exhibit C of the affected unit determined as of the rent payment date prior to the Casualty Occurrence; (ii) all rent and which are then due under the Sublease on the Payment Date for the affected unit The Payment Date shall be the next rent payment date after the Casualty Occurrence. Upon Payment of all sums due hereunder, the term of this lease as to such unit shall terminate.

7. INSURANCE:

(a) Sublessee shall bear the entire risk of any loss, theft, damage to, or destruction of, any unit of Subleased Equipment from any cause whatsoever.

(b) Sublessee agrees, at its own expense, to keep all Subleased Equipment insured for such amounts and against such hazards as Sublessor may reasonably require All such policies shall be with companies, and on terms, reasonably satisfactory to Sublessor The insurance shall include coverage for damage to or loss of the Subleased Equipment; liability for personal injuries, death or property damage Sublessor shall be named as additional insured with a loss payable clause in favor of Sublessor, as its interest may appear, irrespective of any breach of warranty or other act or omission of Sublessee The insurance shall provide for liability coverage in an amount equal to at least ONE MILLION US DOLLARS ($1,000,000.00) total liability per occurrence. The casualty/property damage coverage shall be in an amount equal to the higher of the Stipulated Loss Value or the full replacement cost of the Subleased Equipment. No insurance shall be subject to any co-insurance clause. The insurance policies shall provide that the insurance may not be altered or canceled by the insurer until after thirty (30) days written notice to Sublessor, Sublessee agrees to deliver to Sublessor evidence of insurance reasonably satisfactory to Sublessor.

(c) Sublessee hereby appoints Sublessor as Sublessee's attorney-in-fact with power to appoint Lessor as a substitute attorney-in-fact, to make proof of loss and claim for insurance, and to make adjustments with insurers and to receive payment of and execute or endorse all documents, checks or drafts in connection with insurance payments. Sublessor shall not act as Sublessee's attorney-in-fact and will not appoint Landlord as substitute attorney in fact, unless Sublessee is in default. Sublessee shall pay any reasonable expenses of Sublessor and Lessor in adjusting or collecting insurance. Sublessee will not make adjustments with insurers except with respect to claims for damage to any unit of Subleased Equipment where the repair costs are less than the

lesser of ten percent (10%) of the original Subleased Equipment cost or Ten Thousand Dollars and 00/100 ($10,000.00). Sublessor or Lessor may, at its option, apply proceeds of insurance, in whole or in part, to (i) repair or replace Subleased Equipment or any portion thereof, or (ii) satisfy any obligation of Sublessee to Sublessor under this Agreement.

8. RETURN OF EQUIPMENT:

(a) At the expiration of the Term of this Sublease with respect to any equipment, Sublessee shall perform any testing and repairs required to place the units of Subleased Equipment in the same condition and appearance as when received by Sublessee (reasonable wear and-tear excepted) and in good working order for the original intended purpose of the Subleased Equipment. If required, the units of Subleased Equipment shall be deinstalled, disassembled and crated by an authorized manufacturer's representative or such other service person as is reasonably satisfactory to Lessor. Sublessee shall remove installed markings that are not necessary for the operation, maintenance or repair of the Subleased Equipment. All Subleased Equipment will be cleaned, cosmetically acceptable, and in such condition as to be immediately installed into use in a similar environment for which the Subleased Equipment was originally intended to be used. All waste material and fluid must be removed from the Subleased Equipment and disposed of in accordance with then current waste disposal laws.

(b) Until Sublessee has fully complied with the requirements of Section 8(a) above, Sublessee's rent payment obligation and all other obligations under this Agreement shall continue from month to month notwithstanding any expiration or termination of the lease term Sublessor may terminate the Sublessee's right to use the Subleased Equipment upon thirty (30) days notice to Sublessee.

(c) Sublessee shall provide to Sublessor a detailed inventory of all components of the Subleased Equipment including model and serial numbers Sublessee shall also provide an up-to-date copy of all other documentation pertaining to the Subleased Equipment. All service manuals, blue prints, process flow diagrams, operating manuals, inventory and maintenance records shall be given to Sublessor at least one hundred (100) days and not more than one hundred twenty (120) days prior to lease termination.

(d) Sublessee shall make each item of the Subleased Equipment available for on-site operational inspections by potential purchasers at least one hundred twenty (120) days prior to and continuing up to lease termination for that item of Subleased Equipment, Sublessor shall provide Sublessee with reasonable notice prior to any inspection Sublessee shall provide personnel, power and other requirements necessary to demonstrate electrical, hydraulic and mechanical systems for each item of Subleased Equipment

9. DEFAULT AND REMEDIES:

(a) Sublessor may in writing declare this Agreement in default if: (i) Sublessee breaches its obligation to pay rent or any other sum when due and fails to cure the breach within ten (10) days; (ii) Sublessee breaches any of its insurance obligations under Section 7 of this Schedule A; (iii) Sublessee breaches any of its other obligations and fails to cure that breach within thirty (30) days after written notice from Sublessor; (iv) any representation or warranty made by Sublessee in connection with this Agreement shall be false or misleading in any material respect; (v)

Sublessee or any guarantor or other obligor for the Sublessee's obligations hereunder ("Guarantor") becomes insolvent or ceases to do business as a going concern; (vi) any Subleased Equipment is illegally used; (vii) if Sublessee or any Guarantor is a natural person, any death or incompetence of Sublessee or such Guarantor; or (viii) a petition is filed by or against Sublessee or any Guarantor under any bankruptcy or insolvency laws and in the event of an involuntary petition, the petition is not dismissed within forty-five (45) days of the filing date.

(b) After a default, at the request of Sublessor, Sublessee shall comply with the provisions of Section 8(a) Sublessee hereby authorizes Sublessor or Lessor to peacefully enter any premises where any Subleased Equipment may be add take possession of the Subleased Equipment Sublessee shall immediately pay to Sublessor without further demand as liquidated damages for loss of a bargain and not as a penalty, all rents and other sums then due under the Sublease (calculated as of the rent payment date prior to the declaration of default). Sublessor may terminate this Agreement as to any or all of the Subleased Equipment. A termination shall occur only upon written notice by Sublessor to Sublessee. Sublessor may, but shall not be required to, sell Subleased Equipment at private or public sale, in bulk or in parcels, with or without notice, and without having the Subleased Equipment present at the place of sale Sublessor may also, but shall not be required to, lease, otherwise dispose of or keep idle all or part of the Subleased Equipment. Sublessor or Lessor may use Subleased premises for a reasonable period of time for any or all of the purposes stated above without liability for rent, costs, damages or otherwise. The proceeds of sale, lease or other disposition, if any, shall be applied in the following order of priorities: (i) to pay all of Sublessor's costs, charges and expenses incurred in taking. removing, holding, repairing and selling, leasing or otherwise disposing of Subleased Equipment: then, (ii) to the extent not previously paid by Sublessee, to pay Sublessor all sums due from Sublessee under this Agreement; then (iii) to reimburse to Sublessee any sums previously paid by Sublessee as liquidated damages; and (iv) any surplus shall be retained by Sublessor. Sublessee shall immediately pay any deficiency in (i) and (ii) above.

(c) The foregoing remedies are cumulative, and any or all thereof may be exercised instead of or in addition to each other or any remedies at law, in equity, or under statute Sublessee waives notice of sale or other disposition (and the time and place thereof), and the manner and place of any advertising Sublessee shall pay Sublessor's actual attorney's fees incurred in connection with the enforcement, assertion, defense or preservation of Sublessor's rights and remedies under this Agreement, or if prohibited by law, such lesser sum as may be permitted. Waiver of any default shall not be a waiver of any other or subsequent default

(d) Any default under the terms of this or any other agreement between Sublessor and Sublessee may be declared by Sublessor a default under this and any such other agreement

10. ASSIGNMENT: SUBLESSEE SHALL NOT SELL. TRANSFER, ASSIGN, ENCUMBER. OR SUBLET ANY SUBLEASED EQUIPMENT OR THE INTEREST OF SUBLESSEE IN THE SUBLEASED EQUIPMENT WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR AND SUBLESSOR. Sublessor may, without the consent of Sublessee, assign the Agreement. Sublessee agrees that if Sublessee receives written notice of an assignment from Sublessor, Sublessee will pay all rent and all other amounts payable with respect to any Subleased Equipment under this Schedule A to such assignee or as instructed by Sublessor. Sublessee also agrees to confirm in writing receipt of the notice of assignment as may be reasonably requested by assignee Sublessee hereby waives and agrees not to assert against any

such assignee any defense, set-off, recoupment claim or counterclaim which Sublessee has or may at any time have against Sublessor for any reason whatsoever

11. NET LEASE: Sublessee is unconditionally obligated to pay all rent and other amounts due for the entire lease term no matter what happens, even if the Subleased Equipment is damaged or destroyed, if it is defective or if Sublessee no longer can use it. Sublessee is not entitled to reduce or set-off against rent or other amounts due to Sublessor or to anyone to whom Sublessor assigns this Agreement whether Sublessee's claim arises out of this Agreement, any statement by Sublessor, Sublessor's liability or any manufacturer's liability, strict liability, negligence or otherwise

12. INDEMNIFICATION:

(a) Sublessee hereby agrees to indemnify Lessor and Sublessor, their agents, employees, successors and assigns (on an after tax basis) from and against any and all losses, damages, penalties, injuries, claims, actions and suits, including legal expenses, of whatsoever kind and nature arising out of or relating to the Subleased Equipment or this Agreement, except to the extent the losses, damages, penalties, injuries, claims, actions, suits or expenses result from Lessor's or Sublessor's gross negligence or willful misconduct ("Claims").

This indemnity shall include, but is not limited to. Lessor's or Sublessor's strict liability in tort and Claims, arising out of (i) the selection, manufacture, purchase, acceptance or rejection of Subleased Equipment, the ownership of Subleased Equipment during the term of this Agreement, and the delivery, lease, possession. maintenance, uses, condition, return or operation of Subleased Equipment (including, without limitation. latent and other defects, whether or not discoverable by Sublessor or Sublessee and any claim for patent, trademark or copyright infringement or environmental damage) or (ii) the condition of Subleased Equipment sold or disposed of after use by Sublessee, any Sublessee or employees of Sublessee shall, upon request, defend any actions based on, or arising out of, any of the foregoing

(b) Sublessor At no time during the term of this Agreement will Sublessee take or omit to take, nor will it permit any Sublessee or assignee to take or omit to take, any action (whether or not such act or omission is otherwise permitted by Lessor or Sublessor or by this Agreement), which will result in the disqualification of any Subleased Equipment for, or recapture of, all or any portion of tax benefits accruing to Lessor with respect to the Subleased Equipment.

(c) If as a result of a breach of any representation, warranty or covenant of the Sublessee contained in the Master Lease (i) tax counsel of Lessor shall determine that Lessor is not entitled to claim on its Federal income tax return all or any portion of the Tax Benefits with respect to any Subleased Equipment, or (ii) any Tax Benefit claimed on the Federal income tax return of Lessor is disallowed or adjusted by the Internal Revenue Service, or (iii) any Tax Benefit is recalculated or recaptured (any determination, disallowance, adjustment, recalculation or recapture being a "Loss"), then Sublessee shall pay to Lessor, as an indemnity an amount that shall, in the reasonable opinion of Lessor, cause Lessor's after-tax economic yields and cash flows to equal the Net Economic Return that would have been realized by Lessor if such Loss had not occurred. Such amount shall be payable upon demand accompanied by a statement describing in reasonable detail such Loss and the computation of such amount The economic yields and cash flows shall be computed on the same assumptions, including tax rates as were

used by Lessor in originally evaluating the transaction ("Net Economic Return"). If an adjustment has been made under Section 3 then the Effective Rate used in the next preceding adjustment shall be substituted. Sublessee shall indemnify and hold Sublessor harmless from any cost or liability to Lessor under this paragraph.

(d) All references to Lessor in this Section 14 include Lessor and the consolidated taxpayer group of which Lessor is a member. All of Lessor's and Sublessor's rights, privileges and indemnities contained in this Section 14 shall survive the expiration or other termination of this Agreement. The rights, privileges and indemnities contained herein are expressly made for the benefit of and shall be enforceable by Lessor, and/or Sublessor, and their successors and assigns

15. DISCLAIMER; SUBLESSEE ACKNOWLEDGES THAT IT HAS SELECTED THE SUBLEASED EQUIPMENT WITHOUT ANY ASSISTANCE FROM SUBLESSOR, ITS AGENTS OR EMPLOYEES. SUBLESSOR DOES NOT MAKE, HAS NOT MADE, NOR SHALL BE DEEMED TO MAKE OR HAVE MADE, ANY WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, WRITTEN OR ORAL, WITH RESPECT TO THE SUBLEASED EQUIPMENT LEASED UNDER THIS AGREEMENT OR ANY COMPONENT THEREOF, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY AS TO DESIGN, COMPLIANCE WITH SPECIFICATIONS, QUALITY OF MATERIALS OR WORKMANSHIP, MERCHANTABILITY, FITNESS FOR ANY PURPOSE, USE OR OPERATION, SAFETY, PATENT, TRADEMARK, OR COPYRIGHT INFRINGEMENT, OR TITLE All such risks, as between Sublessor and Sublessee, are to be borne by Sublessee. Without limiting the foregoing, Sublessor shall have no responsibility or liability to Sublessee or any other person with respect to any of the following; (i) any liability, loss or damage caused or alleged to be caused directly or indirectly by any Subleased Equipment, any inadequacy thereof any deficiency or defect (latent or otherwise) of the Subleased Equipment, or any other circumstance in connection with the Subleased Equipment; (ii) the use, operation or performance of any Subleased Equipment or any risks relating to it; (iii) any interruption of service, loss of business or anticipated profits or consequential damages; or (iv) the delivery, operation, servicing, maintenance, repair, improvement or replacement of any Subleased Equipment. If, and so long as, no default exists under this Agreement and the Sublease, Sublessee shall be, and hereby is, authorized during the term of this Agreement to assert and enforce whatever claims and rights Sublessor may have against any Supplier of the Subleased Equipment at Sublessee's sole cost and expense, in the name of and for the account of Sublessor and/or Sublessee, as their interests may appear

16. REPRESENTATIONS AND WARRANTIES OF SUBLESSEE; Sublessee makes each of the following representations and warranties to Sublessor;

(a) Sublessee has adequate power and capacity to enter into, and perform under, this Agreement and all related documents (together, the "Documents") Sublessee is duly qualified to do business wherever necessary to carry on its present business and operations, including the jurisdictions) where the Subleased Equipment is or is to be located;

(b) The Documents have been duly authorized, executed and delivered by Sublessee and constitute valid, legal and binding agreements, enforceable in accordance with their terms, except to the extent that the enforcement of remedies may be limited under applicable bankruptcy and insolvency laws;

(c) No approval, consent or withholding of objections is required from any governmental authority or entity with respect to the entry into or performance by Sublessee of the Documents except such as have already been obtained;

(d) The entry into and performance by Sublessee of the Documents will not: (i) violate any judgment, order, law or regulation applicable to Sublessee or any provision of Sublessee's Certificate of Incorporation or bylaws; or (ii) result in any breach of, constitute a default under or result in the creation of any lien, charge, security interest or other encumbrance upon any Subleased Equipment pursuant to any indenture, mortgage, deed of trust, bank loan or credit agreement or other instrument (other than this Agreement) to which Sublessee is a party;

(e) There are no suits or proceedings pending or threatened in court or before any commission, board or other administrative agency against or affecting Sublessee, which if decided against Sublessee will have a material adverse effect on the ability of Sublessee to fulfill its obligations under this Agreement;

(f) The Subleased Equipment is and will remain tangible personal property;

(g) Each financial statement delivered to Sublessor has been prepared in accordance with generally accepted accounting principles consistently applied. Since the date of the most recent financial statement, there has been no material adverse change;

(h) Sublessee's exact legal name is as set forth in the first sentence of the Sublease and Sublessee is and will be at all times validly existing and in good standing under the laws of the State of its incorporation or organization (specified in the first sentence of the Sublease);

(i) The Subleased Equipment will at all times be used for commercial or business purposes as defined in the Sublease;

(j) Sublessee is and will remain in full compliance with all laws and regulations applicable to it including, without limitation, (i) ensuring that no person who owns a controlling interest in or otherwise controls Sublessee is or shall be (Y) listed on the Specially Designated Nationals and Blocked Person List maintained by the Office of Foreign Assets Control ("OFAC"), Department of the Treasury, and/or any other similar lists maintained by OFAC pursuant to any authorizing statute, Executive Order or regulation or (Z) a person designated under Section 1(b), (c) or (d) of Executive Order No. 13224 (September 23, 2001), any related enabling legislation or any other similar Executive Orders, and (ii) compliance with all applicable Bank Secrecy Act ("BSA") laws, regulations and government guidance on BSA compliance and on the prevention and detection of money laundering violations.

17. PURCHASE OPTION:
(a) Pursuant to Sublease Section 6.(c), Sublessee may at Sublease expiration purchase the Subleased Equipment on an AS IS BASIS for cash equal to the sum of Six Hundred Sixty Nine Thousand Dollars and 00/100 ($669,000.00) plus all applicable sales taxes. Sublessee must notify Sublessor of its intent to purchase the Subleased Equipment in writing as follows; (i) Material Handling Equipment notice received by Sublandlord on or before March 15, 2007, payment of Sixty Nine Thousand Dollars and 00/100 ($69,000) plus sales tax (if applicable)

must be received by Sublandlord on or before September 15, 2007; (ii) Conveyor/Racking and Miscellaneous Owned Equipment notice received by Sublandord on or before April 15, 2008, payment of Six Hundred Thousand Dollars and 00/100 ($600,000) plus sales tax (if applicable) must be received by Sublandlord on or before August 15, 2008. If Sublessee is in default or if the Sublease has already been terminated Sublessee may not purchase the Subleased Equipment.

18. MISCELLANEOUS:

(a) SUBLESSEE AND SUBLESSOR UNCONDITIONALLY WAIVE THEIR RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, ANY OF THE RELATED DOCUMENTS, ANY DEALINGS BETWEEN SUBLESSEE AND SUBLESSOR RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN SUBLESSEE AND SUBLESSOR. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT. THIS WAIVER IS IRREVOCABLE. THIS WAIVER MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING. THE WAIVER ALSO SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT, ANY RELATED DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

(b) The Subleased Equipment shall remain Lessor's property unless Sublessor purchases the Subleased Equipment from Lessor and until such time Sublessee shall only have the right to use the Subleased Equipment as a Sublessee. Any cancellation or termination by Lessor of the Master Lease Agreement, any Schedule, supplement or amendment hereto, or the lease of any Subleased Equipment hereunder shall not release Sublessee from any then outstanding obligations to Sublessor hereunder. All Subleased Equipment shall at all times remain personal property of Lessor even though it may be attached to real property. The Subleased Equipment shall not become part of any other property by reason of any installation in, or attachment to, other real or personal property.

(c) If Sublessee does not comply with any provision of this Agreement, Sublessor shall have the right, but shall not be obligated, to effect such compliance, in whole or in part. All reasonable amounts spent and obligations incurred or assumed by Sublessor in effecting such compliance shall constitute additional rent due to Sublessor. Sublessee shall pay the additional rent within five (5) days after the date Sublessor sends notice to Sublessee requesting payment. Sublessee's effecting such compliance shall not be a waiver of Sublessee's default.

(d) Any rent or other amount not paid to Sublessor when due shall bear interest, from the due date until paid, at the lesser of eighteen percent (18%) per annum or the maximum rate allowed by law. Any provisions in this Agreement and any Schedule that are in conflict with any statute, law or applicable rule shall be deemed omitted, modified or altered to conform thereto.

(e) THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER. SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN

ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF CONNECTICUT (WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES OF SUCH STATE), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, REGARDLESS OF THE LOCATION OF THE SUBLEASED EQUIPMENT.

(f) Any cancellation or termination by Sublessor, pursuant to the provisions of this Agreement, supplement or amendment hereto, of the lease of any Subleased Equipment hereunder, shall not release Sublessee from any then outstanding obligations to Sublessor hereunder.

(g) Each party hereto agrees to keep confidential, the terms and provisions of the Documents and the transactions contemplated hereby and thereby (collectively, the "Transactions"). Notwithstanding the foregoing, the obligations of confidentiality contained herein, as they relate to the Transactions, shall not apply to the federal tax structure or federal tax treatment of the Transactions, and each party hereto (and any employee, representative, or agent of any party hereto) may disclose to any and all persons, without limitation of any kind, the federal tax structure and federal tax treatment of the Transactions. The preceding sentence is intended to cause each Transaction to be treated as not having been offered under conditions of confidentiality for purposes of Section 1.6011-4(b)(3) (or any successor provision) of the Treasury Regulations promulgated under Section 6011 of the Internal Revenue Code of 1986, as amended and shall be construed in a manner consistent with such purpose. In addition, each party hereto acknowledges that it has no proprietary or exclusive rights to the federal tax structure of the Transactions or any federal tax matter or federal tax idea related to the Transactions.

# Exhibit "B"

# Part 1 of 2