INDUSTRIAL LEASE AGREEMENT

BETWEEN

INDUSTRIAL DEVELOPMENTS INTERNATIONAL, INC.

AS LANDLORD

AND

WIRELESS RETAIL, INC.

AS TENANT

## LEASE INDEX

| Section | Subject |
|---|---|
| 1 | Basic Lease Provisions |
| 2 | Demised Premises |
| 3 | Term |
| 4 | Base Rent |
| 5 | Security Deposit |
| 6 | Operating Expenses and Additional Rent |
| 7 | Use of Demised Premises |
| 8 | Insurance |
| 9 | Utilities |
| 10 | Maintenance and Repairs |
| 11 | Tenant's Personal Property; Indemnity |
| 12 | Tenant's Fixtures |
| 13 | Signs |
| 14 | Landlord's Lien |
| 15 | Governmental Regulations |
| 16 | Environmental Matters |
| 17 | Construction of Demised Premises |
| 18 | Tenant Alterations and Additions |
| 19 | Services by Landlord |
| 20 | Fire and Other Casualty |
| 21 | Condemnation |
| 22 | Tenant's Default |
| 23 | Landlord's Right of Entry |
| 24 | Lender's Rights |
| 25 | Estoppel Certificate and Financial Statement |
| 26 | Landlord's Liability |
| 27 | Notices |
| 28 | Brokers |
| 29 | Assignment and Subleasing |
| 30 | Termination or Expiration |
| 31 | Intentionally Omitted |
| 32 | Late Payments |
| 33 | Rules and Regulations |
| 34 | Quiet Enjoyment |
| 35 | Miscellaneous |
| 36 | Special Stipulations |
| 37 | Lease Date |
| 38 | Authority |
| 39 | No Offer Until Executed |

Exhibit "A" Demised Premises
Exhibit "B" Preliminary Plans and Specifications/Work
Exhibit "C" Special Stipulations
Exhibit "D" Rules and Regulations
Exhibit "E" Certificate of Authority
Exhibit "F" SNDA
Exhibit "G" Memorandum of Lease
Exhibit "H" Plans and Specifications for Conveyor Belt System

ATL01/11405526v9

## INDUSTRIAL LEASE AGREEMENT

THIS LEASE AGREEMENT (the "Lease") is made as of the "Lease Date" (as defined in Section 37 herein) by and between INDUSTRIAL DEVELOPMENTS INTERNATIONAL, INC., a Delaware corporation ("Landlord"), and WIRELESS RETAIL, INC., a Texas corporation ("Tenant") (the words "Landlord" and "Tenant" to include their respective legal representatives, successors and permitted assigns where the context requires or permits).

### WITNESSETH:

1. **Basic Lease Provisions.** The following constitute the basic provisions of this Lease:

    (a) Demised Premises Address: 481 Airport Industrial Drive  
    Suite 110  
    Southaven, Mississippi 38671

    (b) Demised Premises Square Footage: approximately 177,039 sq. ft.

    (c) Building Square Footage: approximately 246,078 sq. ft.

    (d) Annual Base Rent (based on 177,039 sq. ft. at $3.272 per square foot; see Section 17 hereof):

    | | | |
    |---|---|---|
    | Lease Year 1 | $579,252.00 | (plus the prorated amount for any Fractional Month per Section 3 hereof, if applicable) |
    | Lease Year 2 | $579,252.00 | |
    | Lease Year 3 | $579,252.00 | |
    | Lease Year 4 | $579,252.00 | |
    | Lease Year 5 | $579,252.00 | |

    (e) Monthly Base Rent Installments (based on 177,039 sq. ft. at $3.272 per square foot; see Section 17 hereof):

    | | | |
    |---|---|---|
    | Lease Year 1 | Months 1-2: $0.00 | |
    | | Months 3-15: $48,271.00 | (plus the prorated amount for any Fractional Month per Section 3 hereof, if applicable) |
    | Lease Year 2 | $48,271.00 | |
    | Lease Year 3 | $48,271.00 | |
    | Lease Year 4 | $48,271.00 | |
    | Lease Year 5 | $48,271.00 | |

    (f) Lease Commencement Date: August 1, 2003

    (g) Base Rent Commencement Date: October 1, 2003

    (h) Expiration Date: The last day of the Sixtieth (60th) full calendar month following the Base Rent Commencement Date

    (i) Primary Term: Sixty-Two (62) months plus, in the event the Base Rent Commencement Date does not occur on the first (1st) day of a calendar month, the period from and including the Base Rent Commencement Date to and including the last day of the calendar month in which the Base Rent Commencement Date occurs (if applicable, the "Fractional Month")

    (j) Tenant's Operating Expense Percentage: 71.94%

    (k) Security Deposit: $48,271.00

ATL01/11405526v9

(l)   Permitted Use:  Distribution, warehousing and assembly of wireless telephones and related products and administrative uses reasonably incidental thereto

(m)   Address for notice:

Landlord:   INDUSTRIAL DEVELOPMENTS INTERNATIONAL, INC.
c/o IDI, Inc.
3424 Peachtree Road, N.E., Suite 1500
Atlanta, Georgia 30326
Attn: Manager - Lease Administration

Tenant:   WIRELESS RETAIL, INC.
8800 E. Chaparral Road, Suite 300
Scottsdale, Arizona 85250
Attn: Real Estate Department
Telephone: (480) 346-4400
Facsimile: (480) 346-4557

(n)   Address for rental payments:

INDUSTRIAL DEVELOPMENTS INTERNATIONAL, INC.
c/o IDI Services Group, LLC
P. O. Box 281464
Atlanta, Georgia 30384-1464

(o)   Broker(s):   CB Richard Ellis

(p)   Guarantor:   Wireless America, Inc.

2.   **Demised Premises.** For and in consideration of the rent hereinafter reserved and the mutual covenants hereinafter contained, Landlord does hereby lease and demise unto Tenant, and Tenant does hereby hire, lease and accept, from Landlord all upon the terms and conditions hereinafter set forth the following premises, referred to as the "Demised Premises", as outlined on Exhibit A attached hereto and incorporated herein: an agreed upon approximately 177,039 square feet of space, approximately 11,310 square feet of which is to be office space, located within Building C, shown on Exhibit A (the "Building"), which Building is to be constructed by Landlord, is to contain a total of approximately 246,078 square feet and is to be located within Airways Distribution Center (the "Project") in DeSoto County, Mississippi.

3.   **Term.** To have and to hold the Demised Premises for a preliminary term (the "Preliminary Term") commencing on the Lease Date and ending on the day immediately preceding the Lease Commencement Date as set forth in Section 1(f), and a primary term (the "Primary Term") commencing on the Lease Commencement Date and terminating on the Expiration Date as set forth in Section 1(b), as the Lease Commencement Date and the Expiration Date may be revised pursuant to Section 17, and subject to Tenant's extension option contained in Special Stipulation 4 on Exhibit C attached hereto (the Preliminary Term, the Primary Term, and any and all extensions thereof, herein referred to as the "Term"). The term "Lease Year", as used in this Lease, shall mean the 12-month period commencing on the Base Rent Commencement Date, and each 12-month period thereafter during the Term; *provided, however,* that (i) if the Base Rent Commencement Date occurs after the Lease Commencement Date, the first Lease Year will include the period between the Lease Commencement Date and the Base Rent Commencement Date, and (ii) if the Base Rent Commencement Date is a day other than the first day of a calendar month, the first Lease Year shall include the resulting Fractional Month and shall extend through the end of the twelfth (12th) full calendar month following the Base Rent Commencement Date.

4.   **Base Rent.** Tenant shall pay to Landlord at the address set forth in Section 1(n), as base rent for the Demised Premises, commencing on the Base Rent Commencement Date and continuing throughout the Term in lawful money of the United States, the annual amount set forth in Section 1(d) payable in equal monthly installments as set forth in Section 1(e) (the "Base Rent"), payable in advance, without demand and without abatement, reduction, set-off or deduction, on the first day of each calendar month during the Term. If the Base Rent Commencement Date shall fall on a day other than the first day of a calendar month, the Base Rent shall be apportioned pro rata on a per diem basis for the resulting Fractional Month (which pro rata payment shall be due and payable on the Base Rent Commencement Date). No payment by Tenant or receipt by Landlord of rent hereunder shall be deemed to be other than on account of the amount due, and no endorsement or statement on any check or any letter accompanying any check or payment of rent shall be deemed an accord and satisfaction, and Landlord may accept such check as payment without prejudice to Landlord's right to recover the balance of such installment or payment of rent or pursue any other remedies available to Landlord.

5.   **Security Deposit.**

(a) Upon Tenant's execution of this Lease, Tenant will pay to Landlord the sum set forth in Section 1(k) (the "Security Deposit") as security for the full and faithful performance by Tenant of each and every term, covenant and condition of this Lease. The acceptance by Landlord of the Security Deposit paid by Tenant shall not render this Lease effective unless and until Landlord shall have executed and delivered to Tenant a fully executed copy of this Lease. The Security Deposit may be commingled with Landlord's other funds or held by Landlord in a separate interest bearing account, with interest paid to Landlord, as Landlord may elect. In the event that Tenant is in default under this Lease, Landlord may retain the Security Deposit for the payment of any sum due Landlord or which Landlord may expend or be required to expend by reason of Tenant's default or failure to perform; provided, however, that any such retention by Landlord shall not be or be deemed to be an election of remedies by Landlord or viewed as liquidated damages, it being expressly understood and agreed that Landlord shall have the right to pursue any and all other remedies available to it under the terms of this Lease or otherwise. In the event all or any portion of the Security Deposit is so retained by Landlord, Tenant shall, within five (5) days of demand therefor from Landlord, replenish the Security Deposit to the full amount set forth in Section 1(k). In the event that Tenant shall comply with all of the terms, covenants and conditions of this Lease, the Security Deposit shall be returned to Tenant within thirty (30) days after the later of (a) the Expiration Date or (b) the date that Tenant delivers possession of the Demised Premises to Landlord. In the event of a sale of the Building, Landlord shall have the right to transfer the Security Deposit to the purchaser, and upon acceptance by such purchaser, Landlord shall be released from all liability for the return of the Security Deposit. Tenant shall not assign or encumber the money deposited as security, and neither Landlord nor its successors or assigns shall be bound by any such assignment or encumbrance.

(b) Tenant shall have the right on the date which is the first day of the thirty-first (31st) month following the Base Rent Commencement Date (the "Return Date"), to request a return of the Security Deposit. If, on the Return Date (a) no Event of Default has occurred and is continuing, (b) Tenant then has a tangible net worth which is (as of the fiscal quarter of Tenant then most recently ended) not less than the its tangible net worth as of the Lease Date and (c) the business of Tenant has generated positive net operating income for the six (6) fiscal quarters of Tenant most recently preceding the Return Date, as verified by Qualified Financial Statements (as hereinafter defined), the Tenant shall be entitled to have the Security Deposit returned. If Tenant becomes entitled to the return of the Security Deposit in accordance with the foregoing, and the Security Deposit is then being held by Landlord in cash, Landlord will, within fifteen (15) business days after receipt by Landlord from Tenant of a written notice confirming the occurrence of the requirements above and providing any related, supporting Qualified Financial Statements, return the Security Deposit to Tenant. If Landlord is then holding a letter of credit for the Security Deposit, Landlord will, not later than fifteen (15) business days after receipt by Landlord from Tenant of a written notice confirming the occurrence of the requirements above and providing any related, supporting Qualified Financial Statements, return the letter of credit to Tenant. Notwithstanding the foregoing, in the event the Security Deposit has been returned to Tenant in accordance with the terms of this subsection (b), on the date which is six (6) months prior to the expiration of the Initial Term (the "First Re-Deposit Date"), Tenant shall re-deposit the Security Deposit with Landlord as security for the full and faithful performance by Tenant of each and every term, covenant and condition of this Lease (the "Security Deposit Re-Deposit"); provided however that Tenant shall not be required to make the Security Deposit Re-Deposit on the First Re-Deposit Date if Tenant has, as of the First Re-Deposit Date, exercised its option to extend the Term as provided in Special Stipulation 4 of Exhibit C attached hereto. In the event Tenant does so exercise its first extension option on or prior to the First Re-Deposit Date (such that Tenant does not, at that time make the Security Deposit Re-Deposit), Tenant shall, on the date which is six (6) months prior to the expiration of the first extended term (the "Second Re-Deposit Date"), make the Security Deposit Re-Deposit, provided however that Tenant shall not be required to make the Security Deposit Re-Deposit on the Second Re-Deposit Date if Tenant has, as of the Second Re-Deposit Date, exercised its second extension option as provided in Special Stipulation 4 of Exhibit C attached hereto. In the event Tenant does so exercise its second extension option, Tenant shall, on the date which is six (6) months prior to the expiration of the second extended term (the "Third Re-Deposit Date") make the Security Deposit Re-Deposit, it being the intention of the parties that in any event the Landlord shall hold the Security Deposit on the date which is six (6) months prior to the expiration of the Term (as such Term may be extended pursuant to said Special Stipulation 4). In order for a financial statement to constitute a "Qualified Financial Statement"," as that term is used herein, such financial statement must (a) cover the relevant fiscal period for the determination being made, (b) be either one or more quarterly statements or an annual statement, (c) be prepared in accordance with generally accepted accounting principles consistently applied, (d) be prepared by one of the "Big Four" accounting firms, (e) be reviewed by such accountants (with respect to quarterly statements) or audited by such accountants (with respect to annual statements), and (f) be certified in writing by the chief financial officer of Tenant to be true, correct and complete.

6. Operating Expenses and Additional Rent.

(a) Tenant agrees to pay as Additional Rent (as defined in Section 6(b) below) its proportionate share of Operating Expenses (as hereinafter defined). "Operating Expenses" shall be defined as all reasonable expenses for operation, repair, replacement and maintenance as necessary to keep the Building and the common areas, driveways, and parking areas associated therewith (collectively, the "Building Common Area") fully operational and in good order, condition and repair, including but not limited to, utilities for the Building Common Area, expenses associated with the driveways and parking areas (including sealing and restriping, and trash, snow and ice removal), security systems, fire detection and prevention systems, lighting facilities, landscaped areas, walkways, painting and caulking, directional

-3-

signage, curbs, drainage strips, sewer lines, all charges assessed against or attributed to the Building pursuant to any applicable easements, covenants, restrictions, agreements, declaration of protective covenants or development standards, property management fees, all real property taxes and special assessments imposed upon the Building (but excluding special assessments assessed and due and payable for periods prior to the current calendar year), the Building Common Area and the land on which the Building and the Building Common Area are constructed, all costs of insurance paid by Landlord with respect to the Building and the Building Common Area (including, without limitation, commercially reasonable deductibles), and costs of improvements to the Building and the Building Common Area required by any law, ordinance or regulation applicable to the Building and the Building Common Area generally (and not because of the particular use of the Building or the Building Common Area by a particular tenant), which cost shall be amortized on a straight line basis over the useful life of such improvement, as reasonably determined by Landlord. Operating Expenses shall not include expenses for the costs of any maintenance and repair required to be performed by Landlord at its own expense under Section (10)(b). Further, Operating Expenses shall not include (i) the costs for capital improvements unless such costs are incurred for the purpose of causing a material decrease in the Operating Expenses of the Building or the Building Common Area or are incurred with respect to improvements made to comply with laws, ordinances or regulations as described above or (ii) any of the costs expressly excluded from Operating Expenses pursuant to Special Stipulation 8 on Exhibit "C" attached hereto. The proportionate share of Operating Expenses to be paid by Tenant shall be a percentage of the Operating Expenses based upon the proportion that the square footage of the Demised Premises bears to the total square footage of the Building (such figure referred to as "Tenant's Operating Expense Percentage" and set forth in Section 1(j)); provided that, as to management fees, Tenant shall pay Landlord the management fees directly attributable to the Rent (as hereinafter defined) payable hereunder with respect to the Demised Premises, and not Tenant's Operating Expense Percentage of the management fees payable on the entire Building. Notwithstanding the foregoing, Landlord shall, in Landlord's reasonable discretion, have the right to adjust Tenant's proportionate share of individual components of Operating Expenses if Tenant's Operating Expense Percentage thereof would not equitably allocate to Tenant its share of such component of Operating Expenses in light of Tenant's particular use, manner of use and/or level of tenant improvements in the Demised Premises. Prior to or promptly after the beginning of each calendar year during the Term, Landlord shall estimate the total amount of Operating Expenses to be paid by Tenant during each such calendar year and Tenant shall pay to Landlord one-twelfth (1/12) of such sum on the first day of each calendar month during each such calendar year, or part thereof, during the Term. Within a reasonable time after the end of each calendar year, Landlord shall submit to Tenant a statement of the actual amount of Operating Expenses for such calendar year, and the actual amount owed by Tenant, and within thirty (30) days after receipt of such statement, Tenant shall pay any deficiency between the actual amount owed and the estimates paid during such calendar year, or in the event of overpayment, Landlord shall credit the amount of such overpayment toward the next installment of Operating Expenses owed by Tenant or remit such overpayment to Tenant if the Term has expired or has been terminated and no Event of Default exists hereunder. The obligations in the immediately preceding sentence shall survive the expiration or any earlier termination of this Lease. If the Lease Commencement Date shall fall on other than the first day of the calendar year, and/or if the Expiration Date shall fall on other than the last day of the calendar year, Tenant's proportionate share of the Operating Expenses for such calendar year shall be apportioned prorata. Landlord shall be responsible for keeping the Building Common Areas fully operational and in good order, provided that the related costs shall be paid in accordance with this Section 6(a).

(b) Any amounts required to be paid by Tenant hereunder (in addition to Base Rent) and any charges or expenses incurred by Landlord on behalf of Tenant under the terms of this Lease shall be considered "Additional Rent" payable in the same manner and upon the same terms and conditions as the Base Rent reserved hereunder except as set forth herein to the contrary (all such Base Rent and Additional Rent sometimes being referred to collectively herein as "Rent"). Any failure on the part of Tenant to pay such Additional Rent when and as the same shall become due shall entitle Landlord to the remedies available to it for non-payment of Base Rent. Tenant's obligations for payment of Additional Rent shall begin to accrue on the Lease Commencement Date regardless of the Base Rent Commencement Date.

(c) If applicable in the jurisdiction where the Demised Premises are located, Tenant shall pay and be liable for all rental, sales, use and inventory taxes or other similar taxes, if any, on the amounts payable by Tenant hereunder levied or imposed by any city, state, county or other governmental body having authority, such payments to be in addition to all other payments required to be paid Landlord by Tenant under the terms of this Lease. Such payment shall be made by Tenant directly to such governmental body if billed to Tenant, or if billed to Landlord, such payment shall be paid concurrently with the payment of the Base Rent, Additional Rent, or such other charge upon which the tax is based, all as set forth herein.

7. Use of Demised Premises.

(a) The Demised Premises shall be used for the Permitted Use set forth in Section 1(l) and for no other purpose.

(b) Tenant will permit no liens to attach or exist against the Demised Premises, and shall not commit any waste.

-4-

(c) The Demised Premises shall not be used for any illegal purposes, and Tenant shall not allow, suffer, or permit any vibration, noise, odor, light or other effect to occur within or around the Demised Premises that could constitute a nuisance or trespass for Landlord or any occupant of the Building or an adjoining building, its customers, agents, or invitees. Upon notice by Landlord to Tenant that any of the aforesaid prohibited uses are occurring, Tenant agrees to promptly remove or control the same.

(d) Tenant shall not in any way violate any law, ordinance or restrictive covenant affecting the Demised Premises ("Laws"), and shall not in any manner use the Demised Premises so as to cause cancellation of, prevent the use of, or increase the rate of, the fire and extended coverage insurance policy required hereunder. Tenant shall have the right, after written notice to Landlord, to contest by appropriate legal proceedings, diligently conducted in good faith, at its sole cost and expense, the validity or application of any Law with which Tenant is not in compliance, and to delay compliance therewith pending the prosecution of such proceedings, provided no civil or criminal penalty would be suffered or incurred by Landlord or the Building and no lien would be imposed upon or satisfied out of the Demised Premises or the Building by reason of such delay, and provided, further, that Landlord shall in no event be obligated to join in any such proceedings. Landlord makes no (and does hereby expressly disclaim any) covenant, representation or warranty as to the Permitted Use being allowed by or being in compliance with any applicable laws, rules, ordinances or restrictive covenants now or hereafter affecting the Demised Premises, and any zoning letters, copies of zoning ordinances or other information from any governmental agency or other third party provided to Tenant by Landlord or any of Landlord's agents or employees shall be for informational purposes only, Tenant hereby expressly acknowledging and agreeing that Tenant shall conduct and rely solely on its own due diligence and investigation with respect to the compliance of the Permitted Use with all such applicable laws, rules, ordinances and restrictive covenants and not on any such information provided by Landlord or any of its agents or employees.

(e) In the event insurance premiums pertaining to the Demised Premises, the Building, or the Building Common Area, whether paid by Landlord or Tenant, are increased over the least hazardous rate available due to the nature of the use of the Demised Premises by Tenant, Tenant shall pay such additional amount as Additional Rent.

(f) Tenant, its permitted subtenants and their employees, licensees and guests, shall have access to the Demised Premises at all times, twenty-four (24) hours per day, every day of the year, subject to such after-normal business hour security procedures as Landlord may require.

8. Insurance.

(a) Tenant covenants and agrees that from and after the Lease Commencement Date or any earlier date upon which Tenant enters or occupies the Demised Premises or any portion thereof, Tenant will carry and maintain, at its sole cost and expense, the following types of insurance, in the amounts specified and in the form hereinafter provided for:

(i) Liability insurance in the Commercial General Liability form (including Broad Form Property Damage and Contractual Liabilities or reasonable equivalent thereto) covering the Demised Premises and Tenant's use thereof against claims for bodily injury or death, property damage and product liability occurring upon, in or about the Demised Premises, such insurance to be written on an occurrence basis (not a claims made basis), to be in combined single limits amounts not less than $3,000,000.00 and to have general aggregate limits of not less than $10,000,000.00 for each policy year, with such commercially reasonable deductible as may be approved by Landlord, which approval shall not be unreasonably withheld. The insurance coverage required under this Section 8(a)(i) shall, in addition, extend to any liability of Tenant arising out of the indemnities provided for in Section 11 and, if necessary, the policy shall contain a contractual endorsement to that effect.

(ii) Insurance covering (A) all of the items included in the leasehold improvements constructed in the Demised Premises by or at the expense of Landlord (collectively, the "Improvements"), including but not limited to demising walls and ductwork and portions of the heating, ventilating and air conditioning system located within the Demised Premises and (B) Tenant's trade fixtures, merchandise and personal property from time to time in, on or upon the Demised Premises, in an amount not less than one hundred percent (100%) of their full replacement value from time to time during the Term, providing protection against perils included within the standard form of "Special Form" fire and casualty insurance policy, together with insurance against sprinkler damage, vandalism and malicious mischief. Any policy proceeds from such insurance relating to the Improvements shall be used solely for the repair, construction and restoration or replacement of the Improvements damaged or destroyed unless this Lease shall cease and terminate under the provisions of Section 20.

(b) All policies of the insurance provided for in Section 8(a) shall be issued in form reasonably acceptable to Landlord by insurance companies with a rating of not less than "A," and financial size of not less than Class XII, in the most current available "Best's Insurance Reports", and licensed to do business in the state in which the Building is located. Each and every such policy:

(i) shall name Landlord, Lender (as defined in Section 24), and any other party reasonably designated by Landlord, as an additional insured. In addition, the coverage described in Section 8(a)(ii)(A) relating to the Improvements shall also name Landlord as "loss payee";

-5-

ATL01/11405525v9

(ii) shall be delivered to Landlord, in the form of an insurance certificate acceptable to Landlord as evidence of such policy, prior to the Lease Commencement Date and thereafter within thirty (30) days prior to the expiration of each such policy, and, as often as any such policy shall expire or terminate. Renewal or additional policies shall be procured and maintained by Tenant in like manner and to like extent;

(iii) shall contain a provision that the insurer will give to Landlord and such other parties in interest at least thirty (30) days notice in writing in advance of any material change, cancellation, termination or lapse, or the effective date of any reduction in the amounts of insurance; and

(iv) shall be written as a primary policy which does not contribute to and is not in excess of coverage which Landlord may carry.

(c) In the event that Tenant shall fail to carry and maintain the insurance coverages set forth in this Section 8, Landlord may upon thirty (30) days notice to Tenant (unless such coverages will lapse in which event no such notice shall be necessary) procure such policies of insurance and Tenant shall promptly reimburse Landlord therefor.

(d) Landlord and Tenant hereby waive any rights each may have against the other on account of any loss or damage occasioned to Landlord or Tenant, as the case may be, their respective property, the Demised Premises, its contents or to the other portions of the Building, arising from any risk covered by "Special Form" fire and extended coverage insurance of the type and amount required to be carried hereunder, provided that such waiver does not invalidate such policies or prohibit recovery thereunder. The parties hereto shall cause their respective insurance companies insuring the property of either Landlord or Tenant against any such loss, to waive any right of subrogation that such insurers may have against Landlord or Tenant, as the case may be.

9. Utilities. During the Term, Tenant shall promptly pay as billed to Tenant all rents and charges for water and sewer services and all costs and charges for gas, steam, electricity, fuel, light, power, telephone, heat and any other utility or service used or consumed in or servicing the Demised Premises and all other costs and expenses involved in the care, management and use thereof as charged by the applicable utility companies. To the extent possible, all such utilities, except for sewer shall be separately metered and billed to Tenant, and Tenant shall establish an account with the utility provider with respect to each such separately metered utility. Sewer shall not be separately metered, and shall be billed to Tenant by Landlord, at Landlord's actual cost, in an amount equal to a reasonable estimation of such utility actually used by Tenant. Tenant's obligation for payment of all utilities shall commence on the earlier of the Lease Commencement Date or the date of Tenant's actual occupancy of all or any portion of the Demised Premises, including any period of occupancy prior to the Lease Commencement Date, regardless of whether or not Tenant conducts business operations during such period of occupancy. In the event Tenant's use of any utility not separately metered is in excess of the average use by other tenants, Landlord shall have the right to install a meter for such utility, at Tenant's expense, and bill Tenant for Tenant's actual use. If Tenant fails to pay any utility bills or charges, Landlord may, at its option and upon reasonable notice to Tenant, pay the same and in such event, the amount of such payment, together with interest thereon at the Interest Rate as defined in Section 32 from the date of such payment by Landlord, will be added to Tenant's next payment due as Additional Rent. Notwithstanding the foregoing, if: (i) such utility service is interrupted solely because of the acts of Landlord, its employees, agents or contractors; (ii) Tenant notifies Landlord of such interruption in writing (the "Interruption Notice"); (iii) such interruption does not arise in whole or in part as a result of an act or omission of Tenant, its employees, agents, invitees or contractors; (iv) such interruption is not caused by a fire or other casualty; (v) the repair or restoration of such service is the responsibility of and is reasonably within the control of Landlord; and (vi) as a result of such interruption, the Demised Premises or a material portion thereof is rendered untenantable (meaning that Tenant is unable to use the Demised Premises in the normal course of it business) and Tenant in fact ceases to use the Demised Premises, or material portion thereof, then, Tenant's sole remedy for such interruption shall be as follows: on the third (3rd) consecutive business day following the later to occur of (a) the date the Demised Premises (or material portion thereof) becomes untenantable, (b) the date Tenant ceases to use such space and (c) the date Tenant provides Landlord with an Interruption Notice, the Base Rent payable hereunder shall be abated on a per diem basis for each day after such three (3) business day period based upon the percentage of the Demised Premises so rendered untenantable and not used by Tenant, and such abatement shall continue until the date the Demised Premises or the applicable portions thereof become tenantable again.

10. Maintenance and Repairs.

(a) Tenant shall, at its own cost and expense, maintain in good condition and repair and replace as necessary the interior of the Demised Premises, including but not limited to the heating, air conditioning and ventilation systems, glass, windows and doors, sprinkler, all plumbing and sewage systems, fixtures, interior walls, floors (including floor slabs), ceilings, storefronts, plate glass, skylights, all electrical facilities and equipment including, without limitation, lighting fixtures, lamps, fans and any exhaust equipment and systems, electrical motors, and all other appliances and equipment (including, without limitation, dock levelers, dock shelters, dock seals and dock lighting) of every kind and nature located in, upon or about the Demised Premises, except as to such maintenance, repair and replacement as

-6-

is the obligation of Landlord pursuant to Section 10(b). During the Term, Tenant shall maintain in full force and effect a service contract for the maintenance of the heating, ventilation and air conditioning systems with an entity reasonably acceptable to Landlord. Tenant shall deliver to Landlord (i) a copy of said service contract prior to the Lease Commencement Date, and (ii) thereafter, a copy of a renewal or substitute service contract within thirty (30) days prior to the expiration of the existing service contract. Tenant's obligation shall exclude any maintenance, repair and replacement required because of the act or negligence of Landlord, its employees, contractors or agents, which shall be the responsibility of Landlord.

(b) Landlord shall, at its own cost and expense, maintain in good condition and repair the foundation (beneath the floor slab), the roof and structural frame of the Building. Landlord's obligation shall exclude the cost of any maintenance or repair required because of the act or negligence of Tenant or any of Tenant's subsidiaries or affiliates, or any of Tenant's or such subsidiaries' or affiliates' agents, contractors, employees, licensees or invitees (collectively, "Tenant's Affiliates"), the cost of which shall be the responsibility of Tenant. Landlord shall never have any obligation to repair, maintain or replace, pursuant to this subsection 10(b) or any other provision of this Lease, any Tenant's Change (as defined in Section 18 hereof). If Landlord fails to make any repairs or to perform any maintenance required of Landlord hereunder and within Landlord's reasonable control, and such failure shall persist for an unreasonable time (not less than thirty (30) days or, in the event Landlord's failure to make any such repair or perform any such maintenance results in the inability of Tenant to conduct its business at the Demised Premises for a period in excess of forty eight (48) hours) after written notice of the need for such repairs or maintenance is given to Landlord (unless Landlord has commenced such repairs or maintenance during such period and is diligently pursuing the same, Tenant may (but shall not be required to) following a second notice (which notice shall have a heading in at least 12-point type, bold and all caps "FAILURE TO RESPOND SHALL RESULT IN TENANT EXERCISING SELF-HELP RIGHTS") with a specific description of the work to be performed by Tenant and the name of Tenant's contractor, and Landlord's failure to commence repairs within forty eight (48) hours after receipt of such second notice, perform such repairs or maintenance in accordance with the provisions of this Lease governing Tenant's repairs and Tenant Changes and Landlord shall reimburse Tenant for the reasonable, actual costs and expenses therefor within thirty (30) days after receipt of adequate invoices and back-up documentation substantiating said cost, less any amounts otherwise reimbursable to Tenant under any insurance policies carried by Tenant.

(c) Unless the same is caused solely by the negligent action or inaction of Landlord, its employees or agents, and is not covered by the insurance required to be carried by Tenant pursuant to the terms of this Lease, Landlord shall not be liable to Tenant or to any other person for any damage occasioned by failure in any utility system or by the bursting or leaking of any vessel or pipe in or about the Demised Premises, or for any damage occasioned by water coming into the Demised Premises or arising from the acts or neglects of occupants of adjacent property or the public.

11. **Tenant's Personal Property; Indemnity.** All of Tenant's personal property in the Demised Premises shall be and remain at Tenant's sole risk. Landlord, its agents, employees and contractors, shall not be liable for, and Tenant hereby releases Landlord from, any and all liability for theft thereof or any damage thereto occasioned by any act of God or by any acts, omissions or negligence of any persons. Landlord, its agents, employees and contractors, shall not be liable for any injury to the person or property of Tenant or other persons in or about the Demised Premises, Tenant expressly agreeing to indemnify and save Landlord, its agents, employees and contractors, harmless, in all such cases, except, in the case of personal injury only, to the extent caused by the negligence of Landlord, its agents, employees and contractors (and to such extent, Landlord expressly agrees to indemnify and save Tenant, its agents, employees and contractors, harmless); provided, however, that in the case of property damage caused by the negligence of Landlord, its agents, employees and contractors, but without otherwise limiting or impairing the waivers contained in Section 8(d) hereof, Landlord shall reimburse Tenant for the amount of any commercially reasonable deductible payable by Tenant under its insurance policy covering such property, up to but not to exceed $5,000.00. Tenant further agrees to indemnify and reimburse Landlord for any costs or expenses, including, without limitation, attorneys' fees, that Landlord reasonably may incur in investigating, handling or litigating any such claim against Landlord by a third person, unless such claim arose from the negligence of Landlord, its agents, employees or contractors. The provisions of this Section 11 shall survive the expiration or earlier termination of this Lease with respect to any damage, injury or death occurring before such expiration or termination.

12. **Tenant's Fixtures.** Tenant shall have the right to install in the Demised Premises trade fixtures required by Tenant or used by it in its business, and if installed by Tenant, to remove any or all such trade fixtures from time to time during and upon termination or expiration of this Lease, provided no Event of Default, as defined in Section 22, then exists; provided, however, that Tenant shall repair and restore any damage or injury to the Demised Premises (to the condition in which the Demised Premises existed prior to such installation) caused by the installation and/or removal of any such trade fixtures. Landlord and Tenant acknowledge and agree that Tenant's racking and conveyor belt system shall at all times be considered and remain the personal property of Tenant and shall be removed by Tenant upon expiration or earlier termination of this Lease and that Tenant shall repair any damage or injury to the Demised Premises (and restore the Demised Premises to the condition in which the Demised Premises existed prior to such installation) caused by the installation and/or removal of the racking and conveyor belt system.

13. **Signs.** No sign, advertisement or notice shall be inscribed, painted, affixed, or displayed on the windows or exterior walls of the Demised Premises or on any public area of the Building, except in such

-7-

places, numbers, sizes, colors and styles as are approved in advance in writing by Landlord, and which conform to all applicable laws, ordinances, or covenants affecting the Demised Premises. Any and all signs installed or constructed by or on behalf of Tenant pursuant hereto shall be installed, maintained and removed by Tenant at Tenant's sole cost and expense. During the initial Term, Tenant shall have the non-exclusive right to place its name on the Building in such location as is reasonably acceptable to Landlord (the "Signage"). The Signage shall be installed and maintained in accordance with all terms of this Lease and at Tenant's sole cost and expense throughout the Term and the installation, maintenance and removal of the Signage shall be completed lien free. The rights of Tenant under this paragraph: (i) are personal to Tenant and may not be assigned to any other party, including without limitation any assignee or subtenant; (ii) are terminable by Landlord following any default not cured within applicable cure periods; and (iii) are terminable by Landlord if Tenant reduces the size of the Demised Premises, notwithstanding the consent of Landlord thereto. The location, size, material and design of the Signage shall be subject to the prior written approval of Landlord, and Tenant shall be responsible for compliance with Laws in connection with the Signage. Upon the expiration or earlier termination of this Lease or the termination of Tenant's sign rights as set forth herein, Tenant shall remove the Signage, at Tenant's sole cost and expense, and restore the Building to its condition immediately prior to the installation of the Signage. If Tenant fails to timely remove the Signage, then the Signage shall conclusively be deemed to have been abandoned by Tenant and may be appropriated, sold, stored, destroyed, or otherwise disposed of by Landlord without further notice to Tenant or any other person and without obligation to account therefor. Tenant shall reimburse Landlord for all reasonable costs incurred by Landlord in connection therewith within ten (10) days of Landlord's invoice. The provisions of this paragraph shall survive the expiration or earlier termination of the Lease.

14. _Landlord's Lien_. Notwithstanding any other provision hereof to the contrary, Tenant does hereby grant to Landlord, and Landlord shall have at all times, a security interest in and a valid first lien upon all of the personal property and trade fixtures of Tenant situated in and upon the Demised Premises to secure the obligations of Tenant for all Base Rent, Additional Rent and other sums to become due hereunder and the performance by Tenant of each and all of Tenant's other covenants and obligations hereunder. The security interest and lien granted herein may be foreclosed in the manner and form provided by law for the foreclosure of chattel mortgages or in any other manner provided or permitted by law. Landlord agrees to subordinate its foregoing contractual lien rights to a third party providing furniture, fixtures and/or equipment for Tenant's use in the Demised Premises during the Term (the "Collateral"), or providing funds for the acquisition of same or any other financing to Tenant which requires a pledge of the Collateral, provided that: (i) there is no uncured Event of Default by Tenant under the Lease at the time of such subordination; (ii) such subordination shall be limited to the Collateral and time stated in the subordinating instrument; and (iii) such subordination shall be in writing, signed by all parties and in a form reasonably acceptable to Landlord.

15. _Governmental Regulations_. Tenant shall promptly comply throughout the Term, at Tenant's sole cost and expense, with all present and future laws, ordinances, orders, rules, regulations or requirements of all federal, state and municipal governments and appropriate departments, commissions, boards and officers thereof (collectively, "Governmental Requirements") relating to (a) all or any part of the Demised Premises, and (b) the use or manner of use of the Demised Premises and the manner of use and use by Tenant of the Building Common Area. Tenant shall also observe and comply with the requirements of all policies of public liability, fire and other policies of insurance at any time in force with respect to the Demised Premises. Without limiting the foregoing, if as a result of one or more Governmental Requirements it is necessary, from time to time during the Term, to perform an alteration or modification of the Demised Premises or the Building Common Area (a "Code Modification") which is made necessary as a result of the specific use being made by Tenant of the Demised Premises or a Tenant's Change, then such Code Modification shall be the sole and exclusive responsibility of Tenant in all respects; any such Code Modification shall be promptly performed by Tenant at its expense in accordance with the applicable Governmental Requirement and with Section 18 hereof except to the extent such Code Modification arises as a result of the failure of the initial construction of the Building and/or Improvements made by Landlord pursuant to Section 17 hereinbelow to be in compliance with Governmental Requirements in effect as of the Lease Date (without regard to Tenant's specific use), in which event any such Code Modification shall be the sole and exclusive responsibility of Landlord in all respects and any such Code Modification shall be promptly performed by Landlord at its expense in accordance with the applicable Governmental Requirement. Furthermore, if as a result of one or more Governmental Requirements it is necessary from time to time during the Term to perform a Code Modification which (i) would be characterized as a capital expenditure under generally accepted accounting principles and (ii) is not made necessary as a result of the specific use being made by Tenant of the Demised Premises (as distinguished from an alteration or modification which would be required to be made by the owner of any warehouse-office building comparable to the Building irrespective of the use thereof by any particular occupant) or a Tenant's Change, then (a) Landlord shall have the obligation to perform the Code Modification at its expense, (b) the cost of such Code Modification shall be amortized on a straight-line basis over the useful life of the item in question, as reasonably determined by Landlord, and (c) Tenant shall be obligated to pay (as Additional Rent, payable in the same manner and upon the same terms and conditions as the Base Rent reserved hereunder) for (i) Tenant's proportionate share (based on Tenant's Operating Expense Percentage) of the portion of such amortized costs attributable to the remainder of the Term, including any extensions thereof, with respect to any Code Modification respecting the Building Common Area, and (ii) the entire portion of such amortized costs attributable to the remainder of the Term, including any extensions thereof, with respect to any Code Modification respecting the Demised Premises (except to the extent Landlord is required to perform the Code Modification pursuant to the immediately preceding sentence of this Section

-8-

15 or pursuant to Section 17(e) hereinbelow and/or Special Stipulation 6 of Exhibit C attached hereto). Tenant shall promptly send to Landlord a copy of any written notice received by Tenant requiring a Code Modification.

16. Environmental Matters.

(a) For purposes of this Lease:

(i) "Contamination" as used herein means the presence of or release of Hazardous Substances (as hereinafter defined) into any environmental media from, upon, within, below, into or on any portion of the Demised Premises, the Building, the Building Common Area or the Project so as to require remediation, cleanup or investigation under any applicable Environmental Law (as hereinafter defined).

(ii) "Environmental Laws" as used herein means all federal, state, and local laws, regulations, orders, permits, ordinances or other requirements, which exist now or as may exist hereafter, concerning protection of human health, safety and the environment, all as may be amended from time to time including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. 9601 et seq. ("CERCLA") and the Resource Conservation and Recovery Act, 42 U.S.C. 6901 et seq. ("RCRA").

(iii) "Hazardous Substances" as used herein means any hazardous or toxic substance, material, chemical, pollutant, contaminant or waste as those terms are defined by any applicable Environmental Laws and any solid wastes, polychlorinated biphenyls, urea formaldehyde, asbestos, radioactive materials, radon, explosives, petroleum products and oil.

(b) Landlord represents that, except as revealed to Tenant in writing by Landlord, to Landlord's actual knowledge, Landlord has not treated, stored or disposed of any Hazardous Substances upon or within the Demised Premises, nor, to Landlord's actual knowledge, has any predecessor owner of the Demised Premises.

(c) Tenant covenants that all its activities, and the activities of Tenant's Affiliates (as defined in Section 10(b)), on the Demised Premises, the Building, or the Project during the Term will be conducted in compliance with Environmental Laws. Tenant warrants that it is currently in compliance with all applicable Environmental Laws and that there are no pending or threatened notices of deficiency, notices of violation, orders, or judicial or administrative actions involving alleged violations by Tenant of any Environmental Laws. Tenant, at Tenant's sole cost and expense, shall be responsible for obtaining all permits or licenses or approvals under Environmental Laws necessary for Tenant's operation of its business on the Demised Premises and shall make all notifications and registrations required by any applicable Environmental Laws. Tenant, at Tenant's sole cost and expense, shall at all times comply with the terms and conditions of all such permits, licenses, approvals, notifications and registrations and with any other applicable Environmental Laws. Tenant warrants that it has obtained all such permits, licenses or approvals and made all such notifications and registrations required by any applicable Environmental Laws necessary for Tenant's operation of its business on the Demised Premises.

(d) Tenant shall not cause or permit any Hazardous Substances to be brought upon, kept or used in or about the Demised Premises, the Building, or the Project without the prior written consent of Landlord, which consent shall not be unreasonably withheld; provided, however, that the consent of Landlord shall not be required for the use at the Demised Premises of cleaning supplies, toner for photocopying machines and other similar materials, in containers and quantities reasonably necessary for and consistent with normal and ordinary use by Tenant in the routine operation or maintenance of Tenant's office equipment or in the routine janitorial service, cleaning and maintenance for the Demised Premises. For purposes of this Section 16, Landlord shall be deemed to have reasonably withheld consent if Landlord determines that the presence of such Hazardous Substance within the Demised Premises could result in a risk of harm to person or property or otherwise negatively affect the value or marketability of the Building or the Project.

(e) Tenant shall not cause or permit the release of any Hazardous Substances by Tenant or Tenant's Affiliates into any environmental media such as air, water or land, or into or on the Demised Premises, the Building or the Project in any manner that violates any Environmental Laws. If such release shall occur, Tenant shall (i) take all steps reasonably necessary to contain and control such release and any associated Contamination, (ii) clean up or otherwise remedy such release and any associated Contamination to the extent required by, and take any and all other actions required under, applicable Environmental Laws and (iii) notify and keep Landlord reasonably informed of such release and response.

(f) Regardless of any consents granted by Landlord pursuant to Section 16(d) allowing Hazardous Substances upon the Demised Premises, Tenant shall under no circumstances whatsoever cause or permit (i) any activity on the Demised Premises which would cause the Demised Premises to become subject to regulation as a hazardous waste treatment, storage or disposal facility under RCRA or the regulations promulgated thereunder, (ii) the discharge of Hazardous Substances into the storm sewer system serving the Project or (iii) the installation of any underground storage tank or underground piping on or under the Demised Premises.

-9-

ATL01/11405526v9

(g)    Tenant shall and hereby does indemnify Landlord and hold Landlord harmless from and against any and all expense, loss, and liability suffered by Landlord (except to the extent that such expenses, losses, and liabilities arise out of Landlord's own negligence or willful act), by reason of the storage, generation, release, handling, treatment, transportation, disposal, or arrangement for transportation or disposal, of any Hazardous Substances (whether accidental, intentional, or negligent) by Tenant or Tenant's Affiliates or by reason of Tenant's breach of any of the provisions of this Section 16. Such expenses, losses and liabilities shall include, without limitation, (i) any and all expenses that Landlord may incur to comply with any Environmental Laws; (ii) any and all costs that Landlord may incur in studying or remedying any Contamination at or arising from the Demised Premises, the Building, or the Project; (iii) any and all costs that Landlord may incur in studying, removing, disposing or otherwise addressing any Hazardous Substances; (iv) any and all fines, penalties or other sanctions assessed upon Landlord; and (v) any and all legal and professional fees and costs incurred by Landlord in connection with the foregoing. The indemnity contained herein shall survive the expiration or earlier termination of this Lease.

(g)    Landlord shall indemnify Tenant and hold Tenant harmless from and against any and all expenses, losses and liabilities actually suffered by Tenant (with the exception of any and all consequential damages, including but not limited to the loss of use of the Demised Premises, lost profits and loss of business, and those expenses, losses, and liabilities arising from Tenant's own the negligence or willful act of Tenant or Tenant's Affiliates) as a result of a governmental authority having jurisdiction ordering a cleanup, removal or other remediation by Tenant of any Hazardous Substances placed on, under or about the Demised Premises by Landlord. Notwithstanding the foregoing, Landlord shall have the right to undertake and perform any studying, remedying, removing or disposing of, or otherwise addressing, any Contamination which is the responsibility of Landlord hereunder and to control all communications with regulatory or governmental agencies with respect thereto, and Tenant shall not perform such acts and communications nor be entitled to any indemnification hereunder unless (w) Tenant is specifically required by Environmental Laws to perform such acts, (x) Tenant notifies Landlord of such Contamination promptly after Tenant has actual knowledge or reasonable belief of its existence, (y) Tenant promptly provides copies to Landlord of any notices given or received by Tenant related to such Contamination and (z) Landlord has failed or refused to perform such acts and communications after having been afforded reasonable written notice by Tenant and having had reasonable opportunity to perform such acts and communications.

17.    Construction of Demised Premises.

(a)    Within thirty (30) days after the Lease Date, Landlord shall prepare, at Landlord's sole cost and expense, and submit to Tenant a set of plans and specifications and/or construction drawings (collectively, the "Plans and Specifications") based on the preliminary plans and specifications and/or preliminary floor plans set forth on Exhibit B attached hereto and incorporated herein, covering all work to be performed by Landlord (at Landlord's sole cost and expense except as hereinafter set forth in this Section 17(a) and Special Stipulation 2(a)) in constructing the Improvements (as defined in Section 8(a)(ii)). Tenant shall have ten (10) days after receipt of the Plans and Specifications in which to review and to give to Landlord written notice of its approval of the Plans and Specifications or its requested changes to the Plans and Specifications. Tenant shall have no right to request any changes to the Plans and Specifications which would materially alter either the Demised Premises or the exterior appearance or basic nature of the Building, as the same are contemplated by the Preliminary Plans. If Tenant fails to approve or request changes to the Plans and Specifications by ten (10) days after its receipt thereof, then Tenant shall be deemed to have approved the Plans and Specifications and the same shall thereupon be final. If Tenant requests any changes to the Plans and Specifications, Landlord shall make those changes which are reasonably requested by Tenant and shall within ten (10) days of its receipt of such request submit the revised portion of the Plans and Specifications to Tenant. Tenant may not thereafter disapprove the revised portions of the Plans and Specifications unless Landlord has unreasonably failed to incorporate reasonable comments of Tenant and, subject to the foregoing, the Plans and Specifications, as modified by said revisions, shall be deemed to be final upon the submission of said revisions to Tenant. Landlord and Tenant shall at all times in their review of the Plans and Specifications, and of any revisions thereto, act reasonably and in good faith. Tenant acknowledges that the Improvements are being constructed on a "fast track" basis and that Landlord shall have the right and option to submit various parts of the proposed Plans and Specifications from time to time during said thirty (30) day period and the time period for approval of any part of the proposed Plans and Specifications shall commence upon receipt of each submission. The date on which Tenant approves or is deemed to have approved the Plans and Specifications is hereinafter referred to as the "Approval Date". After Tenant has approved the Plans and Specifications or the Plans and Specifications have otherwise been finalized pursuant to the procedures set forth hereinabove, any subsequent changes to the Plans and Specifications requested by Tenant (herein referred to as a "Change Order") shall be at Tenant's sole cost and expense and subject to Landlord's written approval, which approval shall not be unreasonably withheld, conditioned or delayed. In the event Landlord approves any such requested Change Order, Landlord shall give written notice thereof to Tenant, which notice will specify the Change Order approved by Landlord as well as the estimated incremental cost thereof. The cost to Tenant for Change Orders shall be Landlord's incremental cost plus fifteen percent (15%) of such amount as Landlord's overhead. Tenant acknowledges and agrees that Landlord shall be under no obligation to proceed with any work related to the approved Change Order unless and until Tenant delivers to Landlord an amount equal to the full estimated incremental cost of such approved Change Order as set forth in Landlord's notice. When the final incremental cost of any such Change Order has been determined and incurred, Landlord and Tenant each agree to pay or refund the amounts owed to the other with respect to

-10-

such Change Order, based on the estimated payment made to Landlord. If after the Plans and Specifications have been finalized pursuant to the procedures set forth hereinabove Tenant requests a Change Order or any further changes to the Plans and Specifications and, as a result thereof, Substantial Completion (as hereinafter defined) of the Improvements is delayed (such delay to be referred to herein as "Tenant Delay"), then for purposes of establishing any date tied to the date of Substantial Completion, Substantial Completion shall be deemed to mean the date when Substantial Completion would have been achieved but for such Tenant delay. Notwithstanding the foregoing, any changes to the Plans and Specifications required by Landlord as a result of any Law applicable to industrial warehouse and/or distribution facilities generally (and without respect to the Improvements or Tenant's intended use of the Demised Premises), shall be the sole responsibility of Landlord; provided that Landlord shall obtain Tenant's approval, which approval shall not be unreasonably withheld, conditioned or delayed, for any such change by Landlord that will materially affect Tenant's use of or access to the Demised Premises.

(b) Landlord shall schedule and attend periodic progress meetings (not more than once per month), walk-throughs and any other reasonably requested meetings with the architect, the contractor performing the construction work and Tenant to discuss the progress of the construction of the Improvements ("Meetings"). Landlord shall give Tenant approximately seven (7) days prior notice (written or telephonic) of all such Meetings. Tenant shall designate in writing the person or persons appointed by Tenant to attend the Meetings and such designated party shall be entitled to be present at and to participate in the discussions during all Meetings; but Landlord may conduct the Meetings even if Tenant's appointees are not present. In addition to the foregoing and to Tenant's early entry rights as provided in Special Stipulation 5 of Exhibit "C" attached hereto, Tenant or its agents shall have the right at reasonable times to conduct inspections, tests, surveys and reports of work in progress ("Inspections") for the purpose of reviewing whether the Improvements are being constructed in accordance with the Plans and Specifications, provided Tenant shall not interfere with Landlord's completion of the Improvements. Landlord shall use reasonable speed and diligence to Substantially Complete the Improvements, at Landlord's sole cost and expense, and have the Demised Premises ready for occupancy on or before August 1, 2003, provided that Landlord shall not be liable to Tenant in any way for achieving Substantial Completion after such target date, and any such failure to complete by such target date shall not in any way affect the obligations of Tenant hereunder. No liability whatsoever shall arise or accrue against Landlord by reason of its failure to deliver or afford possession of the Demised Premises, and Tenant hereby releases and discharges Landlord from and of any claims for damage, loss, or injury of every kind whatsoever as if this Lease were never executed.

(c) Upon Substantial Completion of the Demised Premises, a representative of Landlord and a representative of Tenant together shall inspect the Demised Premises and generate a punchlist of defective or uncompleted items relating to the completion of construction of the Improvements (the "Punchlist"). Landlord shall, within a reasonable time after the Punchlist is prepared and agreed upon by Landlord and Tenant, complete such incomplete work and remedy such defective work as is set forth on the Punchlist. Subject to Landlord's Warranty (as hereinafter defined), all construction work performed by Landlord shall be deemed approved by Tenant in all respects except for items of said work which are not completed or do not conform to the Plans and Specifications and which are included on the Punchlist.

(d) Upon Substantial Completion of the Demised Premises and the creation of the Punchlist, Tenant shall execute and deliver to Landlord a letter of acceptance in which Tenant (i) accepts the Demised Premises subject only to Landlord's completion of the items listed on the Punchlist and (ii) confirms the Lease Commencement Date, the Base Rent Commencement Date and the Expiration Date. Within thirty (30) calendar days after substantial completion of the Demised Premises, Landlord shall deliver to Tenant a written certification of an architect, duly licensed as such under the laws of the State of Mississippi, of the square footage contained in the Building and in the Demised Premises, based on a "dripline" measurement from the outside of the exterior walls of the Building and the Demised Premises. The square footage so certified by such architect shall conclusively determine the Building Square Footage and the square footage of the Demised Premises for all purposes under this Lease, including, without limitation, calculation of Base Rent and Tenant's Operating Expense Percentage. The Annual Base Rent and Monthly Base Rent Installments shall be adjusted on the basis of the square footage of the Building and the Demised Premises so certified by such architect, using the per square foot rental rates set forth in Section 1 of this Lease. The letter of acceptance from Tenant shall also confirm the final square footage of the Building and the Demised Premises and Tenant's Operating Expense Percentage.

(e) Landlord hereby warrants to Tenant, which warranty ("Landlord's Warranty") shall survive for the one (1) year period following the Lease Commencement Date (the "Warranty Period"), that (i) the materials and equipment furnished by Landlord's contractors in the completion of the Improvements and the Building will be of good quality and new, and (ii) such materials and equipment and the work of such contractors shall be free from defects not inherent in the quality required or permitted hereunder. This warranty shall exclude damages or defects caused by Tenant or Tenant's Affiliates, improper or insufficient maintenance, improper operation, and normal wear and tear under normal usage. Landlord grants to Tenant, until the expiration or earlier termination of the Term, without recourse or warranty, a non-exclusive right during the Term to exercise Landlord's rights under any warranties obtained with respect to the heating, ventilation and air conditioning system, or any other portions of the Improvements within the Demised Premises required to be maintained or repaired by Tenant pursuant to this Lease.

-11-

ATL01/11405526v9

(f) For purposes of this Lease, the term "Substantial Completion" (or any variation thereof) shall mean completion of construction of the Improvements in accordance with the Plans and Specifications, subject only to Punchlist items established pursuant to Section 17(o), as established by the delivery by Landlord to Tenant of a certificate of occupancy or its equivalent (or temporary certificate of occupancy or its equivalent, which is subject only to work or improvements to be performed or installed by Tenant) for the Demised Premises issued by the appropriate governmental authority, if a certificate is so required by a governmental authority, or if not so required or if unavailable because of unfinished work to be performed by Tenant, then by the delivery by Landlord to Tenant of a Certificate of Substantial Completion for the Improvements on Standard AIA Form G-704 certified by Landlord's architect. In the event Substantial Completion is delayed because of Tenant's failure to approve the Plans and Specifications as set forth in Section 17(a), by change orders requested by Tenant after approval of the Plans and Specifications or by any other delay caused by Tenant or Tenant's Affiliates, then for the purpose of establishing the Lease Commencement Date and any other date tied to the date of Substantial Completion, Substantial Completion shall be deemed to mean the date when Substantial Completion would have been achieved but for such delay.

18. <u>Tenant Alterations and Additions</u>.

(a) Tenant shall not make or permit to be made any alterations, improvements, or additions to the Demised Premises (a "Tenant's Change"), without first obtaining on each occasion Landlord's prior written consent (which consent Landlord agrees not to unreasonably withhold) and Lender's prior written consent (if such consent is required). As part of its approval process, Landlord may require that Tenant submit plans and specifications to Landlord, for Landlord's approval or disapproval, which approval shall not be unreasonably withheld or delayed. Notwithstanding the foregoing, Tenant shall not be obligated to receive the written consent of Landlord for interior Tenant's Changes to the Demised Premises if said Tenant's Changes are not structural in nature and do not impair the Building systems or structural integrity of the Building, do not exceed the total amount of ~~Twenty-Five~~ Fifty Thousand Dollars ($50,000.00) in the aggregate in any calendar year and the total amount of such Tenant Changes do not exceed One Hundred Fifty Thousand Dollars ($150,000.00) in the aggregate over the term of the Lease, and Tenant is not required by applicable Law to obtain a permit to perform the Tenant Change (provided that in the event the consent of Landlord is not requested, Tenant shall, at its sole cost and expense and at Landlord's option upon the termination or expiration of this Lease, remove the same and restore the Demised Premises to its condition prior to such Tenant's Change. All Tenant's Changes shall be performed in accordance with all legal requirements applicable thereto and in a good and workmanlike manner with first-class materials. Tenant shall maintain insurance reasonably satisfactory to Landlord during the construction of all Tenant's Changes. If Landlord at the time of giving its approval to any Tenant's Change notifies Tenant in writing that approval is conditioned upon restoration, then Tenant shall, at its sole cost and expense and at Landlord's option upon the termination or expiration of this Lease, remove the same and restore the Demised Premises to its condition prior to such Tenant's Change. Notwithstanding the foregoing, upon Tenant's request at the time it seeks Landlord's consent to a Tenant's Change, Landlord agrees to indicate in writing whether it will require such alteration to be removed upon the expiration or earlier termination of the Lease (provided that no such early election shall be required by Landlord in the event Tenant does not request the consent of Landlord to the Tenant's Change). No Tenant's Change shall be structural in nature or impair the structural strength of the Building or reduce its value. Tenant shall pay the full cost of any Tenant's Change and shall give Landlord such reasonable security as may be requested by Landlord to insure payment of such cost. Except as otherwise provided herein and in Section 12, all Tenant's Changes and all repairs and all other property attached to or installed on the Demised Premises by or on behalf of Tenant shall immediately upon completion or installation thereof be and become part of the Demised Premises and the property of Landlord without payment therefor by Landlord and shall be surrendered to Landlord upon the expiration or earlier termination of this Lease. Landlord hereby approves Tenant's plans and specifications in connection with the installation of its conveyor belt system, which are attached hereto as Exhibit H, and such installation shall not be considered a Tenant's Change.

(b) To the extent permitted by law, all of Tenant's contracts and subcontracts for such Tenant's Changes shall provide that no lien shall attach to or be claimed against the Demised Premises or any interest therein other than Tenant's leasehold interest in the Demised Premises, and that all subcontracts let thereunder shall contain the same provision. Whether or not Tenant furnishes the foregoing, Tenant agrees to hold Landlord harmless against all liens, claims and liabilities of every kind, nature and description which may arise out of or in any way be connected with such work. Tenant shall not permit the Demised Premises to become subject to any mechanics', laborers' or materialmen's lien on account of labor, material or services furnished to Tenant or claimed to have been furnished to Tenant in connection with work of any character performed or claimed to have been performed for the Demised Premises by, or at the direction or sufferance of Tenant and if any such liens are filed against the Demised Premises, Tenant shall promptly discharge the same; <u>provided, however</u>, that Tenant shall have the right to contest, in good faith and with reasonable diligence, the validity of any such lien or claimed lien if Tenant shall give to Landlord, within fifteen days after demand, such security as may be reasonably satisfactory to Landlord to assure payment thereof and to prevent any sale, foreclosure, or forfeiture of Landlord's interest in the Demised Premises by reason of non-payment thereof; provided further that on final determination of the lien or claim for lien, Tenant shall immediately pay any judgment rendered, with all proper costs and charges, and shall have the lien released and any judgment satisfied. If Tenant fails to post such security or does not diligently contest such lien, Landlord may, without investigation of the validity of the lien claim, discharge such lien and Tenant shall reimburse Landlord upon demand for all costs and expenses incurred

-12-

in connection therewith, which expenses shall include any attorneys' fees, paralegals' fees and any and all costs associated therewith, including litigation through all trial and appellate levels and any costs in posting bond to effect a discharge or release of the lien. Nothing contained in this Lease shall be construed as a consent on the part of Landlord to subject the Demised Premises to liability under any lien law now or hereafter existing of the state in which the Demised Premises are located.

19. <u>Services by Landlord</u>. Landlord shall be responsible for providing for maintenance of the Building Common Area, and, except as required by Section 6(a) or 10(b) hereof or as otherwise specifically provided for herein, Landlord shall be responsible for no other services whatsoever. Tenant, by payment of Tenant's share of the Operating Expenses, shall pay Tenant's pro rata share of the expenses incurred by Landlord hereunder.

20. <u>Fire and Other Casualty</u>. In the event the Demised Premises are damaged by fire or other casualty insured by Landlord, Landlord agrees to promptly restore and repair the Demised Premises at Landlord's expense, including the Improvements to be insured by Tenant but only to the extent Landlord receives insurance proceeds therefor, including the proceeds from the insurance required to be carried by Tenant on the Improvements. Notwithstanding the foregoing, in the event that the Demised Premises are (i) in the reasonable opinion of Landlord, so destroyed that they cannot be repaired or rebuilt within two hundred seventy (270) days after the date of such damage; or (ii) destroyed by a casualty which is not covered by Landlord's insurance, or if such casualty is covered by Landlord's insurance but Lender or other party entitled to insurance proceeds fails to make such proceeds available to Landlord in an amount sufficient for restoration of the Demised Premises, then Landlord shall give written notice to Tenant of such determination (the "Determination Notice") within sixty (60) days of such casualty. Either Landlord or Tenant may terminate and cancel this Lease effective as of the date of such casualty by giving written notice to the other party within thirty (30) days after Tenant's receipt of the Determination Notice. Upon the giving of such termination notice, all obligations hereunder with respect to periods from and after the effective date of termination shall thereupon cease and terminate. If no such termination notice is given, Landlord shall, to the extent of the available insurance proceeds, make such repair or restoration of the Demised Premises to the approximate condition existing prior to such casualty, promptly and in such manner as not to unreasonably interfere with Tenant's use and occupancy of the Demised Premises (if Tenant is still occupying the Demised Premises). Base Rent and Additional Rent shall proportionately abate during the time that the Demised Premises or any part thereof are unusable by reason of any such damage thereto.

21. <u>Condemnation</u>.

(a) If all of the Demised Premises is taken or condemned for a public or quasi-public use, or if a material portion of the Demised Premises is taken or condemned for a public or quasi-public use and the remaining portion thereof is not usable by Tenant in the reasonable opinion of Landlord and Tenant, cooperating together in good faith, this Lease shall terminate as of the earlier of the date title to the condemned real estate vests in the condemnor or the date on which Tenant is deprived of possession of the Demised Premises. In such event, the Base Rent herein reserved and all Additional Rent and other sums payable hereunder shall be apportioned and paid in full by Tenant to Landlord to that date, all Base Rent, Additional Rent and other sums payable hereunder prepaid for periods beyond that date shall forthwith be repaid by Landlord to Tenant, and neither party shall thereafter have any liability hereunder, except that any obligation or liability of either party, actual or contingent, under this Lease which has accrued on or prior to such termination date shall survive. Landlord shall promptly notify Tenant upon its receipt of notice of the instigation of any condemnation proceedings affecting the Demised Premises.

(b) If only part of the Demised Premises is taken or condemned for a public or quasi-public use and this Lease does not terminate pursuant to Section 21(a), Landlord shall, to the extent of the award it receives, restore the Demised Premises to a condition and to a size as nearly comparable as reasonably possible to the condition and size thereof immediately prior to the taking, and there shall be an equitable adjustment to the Base Rent and Additional Rent based on the actual loss of use of the Demised Premises suffered by Tenant from the taking.

(c) Landlord shall be entitled to receive the entire award in any proceeding with respect to any taking provided for in this Section 21, without deduction therefrom for any estate vested in Tenant by this Lease, and Tenant shall receive no part of such award. Nothing herein contained shall be deemed to prohibit Tenant from making a separate claim, against the condemnor, to the extent permitted by law, for the value of Tenant's moveable trade fixtures, machinery and moving expenses, provided that the making of such claim shall not and does not adversely affect or diminish Landlord's award.

22. <u>Tenant's Default</u>.

(a) The occurrence of any one or more of the following events shall constitute an "Event of Default" of Tenant under this Lease:

(i) If Tenant fails to pay Base Rent or any Additional Rent hereunder as and when such rent becomes due and such failure shall continue for more than five (5) days after Landlord gives written notice to Tenant of such failure (provided, however, that if payment of any Base Rent or Additional Rent required hereunder is by check, and following deposit thereof such check is

-13-

rejected or returned due to insufficient funds, then such event shall constitute an immediate Event of Default and no such five (5) day notice and cure period shall be required);

    (ii)  if Tenant fails to pay Base Rent or any Additional Rent on time more than three (3) times in any period of twelve (12) months, notwithstanding that such payments have been made within the applicable cure period;

    (iii)  if the Demised Premises become vacant, deserted, or abandoned for more than ten (10) consecutive days or if Tenant fails to take possession of the Demised Premises on the Lease Commencement Date or promptly thereafter;

    (iv)  if Tenant permits to be done anything which creates a lien upon the Demised Premises and fails to discharge or bond such lien, or post security with Landlord acceptable to Landlord within thirty (30) days after receipt by Tenant of written notice thereof;

    (v)  If Tenant fails to maintain in force all policies of insurance required by this Lease and such failure shall continue for more than ten (10) days after Landlord gives Tenant written notice of such failure;

    (vi)  if any petition is filed by or against Tenant or any guarantor of this Lease under any present or future section or chapter of the Bankruptcy Code, or under any similar law or statute of the United States or any state thereof (which, in the case of an involuntary proceeding, is not permanently discharged, dismissed, stayed, or vacated, as the case may be, within sixty (60) days of commencement), or if any order for relief shall be entered against Tenant or any guarantor of this Lease in any such proceedings;

    (vii)  if Tenant or any guarantor of this Lease becomes insolvent or makes a transfer in fraud of creditors or makes an assignment for the benefit of creditors;

    (viii)  if a receiver, custodian, or trustee is appointed for the Demised Premises or for all or substantially all of the assets of Tenant or of any guarantor of this Lease, which appointment is not vacated within sixty (60) days following the date of such appointment; or

    (ix)  if Tenant fails to perform or observe any other term of this Lease and such failure shall continue for more than thirty (30) days after Landlord gives Tenant written notice of such failure, or, if such failure cannot be corrected within such thirty (30) day period, if Tenant does not commence to correct such default within said thirty (30) day period and thereafter diligently prosecute the correction of same to completion within a reasonable time.

  (b)  Upon the occurrence of any one or more Events of Default, Landlord may, at Landlord's option, without any demand or notice whatsoever (except as expressly required in this Section 22):

    (i)  Terminate this Lease by giving Tenant notice of termination, in which event this Lease shall expire and terminate on the date specified in such notice of termination and all rights of Tenant under this Lease and in and to the Demised Premises shall terminate. Tenant shall remain liable for all obligations under this Lease arising up to the date of such termination, and Tenant shall surrender the Demised Premises to Landlord on the date specified in such notice; or

    (ii)  Terminate this Lease as provided in Section 22(b)(i) hereof and recover from Tenant all damages Landlord may incur by reason of Tenant's default, including, without limitation, an amount which, at the date of such termination, is calculated as follows: (1) the value of the excess, if any, of (A) the Base Rent, Additional Rent and all other sums which would have been payable hereunder by Tenant for the period commencing with the day following the date of such termination and ending with the Expiration Date had this Lease not been terminated (the "Remaining Term"), over (B) the aggregate reasonable rental value of the Demised Premises for the Remaining Term (which excess, if any shall be discounted to present value at the "Treasury Yield" as defined below for the Remaining Term); plus (2) the costs of recovering possession of the Demised Premises and all other expenses incurred by Landlord due to Tenant's default, including, without limitation, reasonable attorney's fees; plus (3) the unpaid Base Rent and Additional Rent earned as of the date of termination plus any interest and late fees due hereunder, plus other sums of money and damages owing on the date of termination by Tenant to Landlord under this Lease or in connection with the Demised Premises. The amount as calculated above shall be deemed immediately due and payable. The payment of the amount calculated in subparagraph (ii)(1) shall not be deemed a penalty but shall merely constitute payment of liquidated damages, it being understood and acknowledged by Landlord and Tenant that actual damages to Landlord are extremely difficult, if not impossible, to ascertain. "Treasury Yield" shall mean the rate of return in percent per annum of Treasury Constant Maturities for the length of time specified as published in document H.15(519) (presently published by the Board of Governors of the U.S. Federal Reserve System titled "Federal Reserve Statistical Release") for the calendar week immediately preceding the calendar week in which the termination occurs. If the rate of return of Treasury Constant Maturities for the calendar week in question is not published on or before the business day preceding the date of the Treasury Yield in question is to become effective, then the Treasury Yield shall be based upon the rate of return of Treasury Constant Maturities for the length of time specified for the

-14-

ATL01/11405526v9

most recent calendar week for which such publication has occurred. If no rate of return for Treasury Constant Maturities is published for the specific length of time specified, the Treasury Yield for such length of time shall be the weighted average of the rates of return of Treasury Constant Maturities most nearly corresponding to the length of the applicable period specified. If the publishing of the rate of return of Treasury Constant Maturities is ever discontinued, then the Treasury Yield shall be based upon the index which is published by the Board of Governors of the U.S. Federal Reserve System in replacement thereof or, if no such replacement index is published, the index which, in Landlord's reasonable determination, most nearly corresponds to the rate of return of Treasury Constant Maturities. In determining the aggregate reasonable rental value pursuant to subparagraph (ii)(1)(B) above, the parties hereby agree that, at the time Landlord seeks to enforce this remedy, all relevant factors should be considered, including, but not limited to, (a) the length of time remaining in the Remaining Term, (b) the then current market conditions in the general area in which the Building is located, (c) the likelihood of reletting the Demised Premises for a period of time equal to the remainder of the Term, (d) the net effective rental rates then being obtained by landlords for similar type space of similar size in similar type buildings in the general area in which the Building is located, (e) the vacancy levels in the general area in which the Building is located, (f) current levels of new construction that will be completed during the Remaining Term and how this construction will likely affect vacancy rates and rental rates and (g) inflation; or

(iii) Without terminating this Lease, declare immediately due and payable the sum of the following: (1) the present value (calculated using the "Treasury Yield") of all Base Rent and Additional Rent due and coming due under this Lease for the entire Remaining Term (as if by the terms of this Lease they were payable in advance), plus (2) the cost of recovering and reletting the Demised Premises and all other expenses incurred by Landlord in connection with Tenant's default (but excluding any extraordinary expenses incurred to prepare the Demised Premises for a replacement tenant to the extent such expenses demonstratively exceed those which are at that time currently standard and prevailing for buildings comparable to the Building in the Southaven, Mississippi market area), plus (3) any unpaid Base Rent, Additional Rent and other rentals, charges, assessments and other sums owing by Tenant to Landlord under this Lease or in connection with the Demised Premises as of the date this provision is invoked by Landlord, plus (4) interest on all such amounts from the date due at the Interest Rate, and Landlord may immediately proceed to distrain, collect, or bring action for such sum, or may file a proof of claim in any bankruptcy or insolvency proceedings to enforce payment thereof; provided, however, that such payment shall not be deemed a penalty or liquidated damages, but shall merely constitute payment in advance of all Base Rent and Additional Rent payable hereunder throughout the Term, and provided further, however, that upon Landlord receiving such payment, Tenant shall be entitled to receive from Landlord all rents received by Landlord from other assignees, tenants and subtenants on account of said Demised Premises during the remainder of the Term (provided that the monies to which Tenant shall so become entitled shall in no event exceed the entire amount actually paid by Tenant to Landlord pursuant to this subparagraph (iii)), less all costs, expenses and attorneys' fees of Landlord incurred but not yet reimbursed by Tenant in connection with recovering and reletting the Demised Premises; or

(iv) Without terminating this Lease, in its own name but as agent for Tenant, enter into and upon and take possession of the Demised Premises or any part thereof. Any property remaining in the Demised Premises may be removed and stored in a warehouse or elsewhere at the cost of, and for the account of, Tenant without Landlord being deemed guilty of trespass or becoming liable for any loss or damage which may be occasioned thereby unless caused by Landlord's negligence or the negligence of Landlord's employees, agents or contractors. Thereafter, Landlord may, but shall not be obligated to, lease to a third party the Demised Premises or any portion thereof as the agent of Tenant upon such terms and conditions as Landlord may deem necessary or desirable in order to relet the Demised Premises. The remainder of any rentals received by Landlord from such reletting, after the payment of any indebtedness due hereunder from Tenant to Landlord, and the payment of any costs and expenses of such reletting (but excluding any extraordinary expenses incurred to prepare the Demised Premises for a replacement tenant to the extent such expenses demonstratively exceed those which are at that time currently standard and prevailing for buildings comparable to the Building in the Southaven, Mississippi market area), shall be held by Landlord to the extent of and for application in payment of future rent owed by Tenant, if any, as the same may become due and payable hereunder. If such rentals received from such reletting shall at any time or from time to time be less than sufficient to pay to Landlord the entire sums then due from Tenant hereunder, Tenant shall pay any such deficiency to Landlord. Notwithstanding any such reletting without termination, Landlord may at any time thereafter elect to terminate this Lease for any such previous default provided same has not been cured; or

(v) Without terminating this Lease, and with or without notice to Tenant, enter into and upon the Demised Premises and, without being liable for prosecution or any claim for damages therefor, maintain the Demised Premises and repair or replace any damage thereto unless caused by the negligence of Landlord, its employees, agents or contractors or do anything or make any payment for which Tenant is responsible hereunder. Tenant shall reimburse Landlord immediately upon demand for any expenses which Landlord incurs in thus effecting Tenant's compliance under this Lease and Landlord shall not be liable to Tenant for any damages with respect thereto; or

(vi) Without liability to Tenant or any other party and without constituting a constructive or actual eviction, suspend or discontinue furnishing or rendering to Tenant any property, material, labor, utilities or other service, wherever Landlord is obligated to furnish or render the same so long as an Event of Default exists under this Lease; or

-15-

(vii) With or without terminating this Lease, allow the Demised Premises to remain unoccupied and collect rent from Tenant as it comes due; or

(viii) Pursue such other remedies as are available at law or equity.

(c) If this Lease shall terminate as a result of or while there exists an Event of Default hereunder, any funds of Tenant held by Landlord may be applied by Landlord to any damages payable by Tenant (whether provided for herein or by law) as a result of such termination or default.

(d) Neither the commencement of any action or proceeding, nor the settlement thereof, nor entry of judgment thereon shall bar Landlord from bringing subsequent actions or proceedings from time to time, nor shall the failure to include in any action or proceeding any sum or sums then due be a bar to the maintenance of any subsequent actions or proceedings for the recovery of such sum or sums so omitted.

(e) No agreement to accept a surrender of the Demised Premises and no act or omission by Landlord or Landlord's agents during the Term shall constitute an acceptance or surrender of the Demised Premises unless made in writing and signed by Landlord. No re-entry or taking possession of the Demised Premises by Landlord shall constitute an election by Landlord to terminate this Lease unless a written notice of such intention is given to Tenant. No provision of this Lease shall be deemed to have been waived by either party unless such waiver is in writing and signed by the party making such waiver. Landlord's acceptance of Base Rent or Additional Rent in full or in part following an Event of Default hereunder shall not be construed as a waiver of such Event of Default. No custom or practice which may grow up between the parties in connection with the terms of this Lease shall be construed to waive or lessen either party's right to insist upon strict performance of the terms of this Lease, without a written notice thereof to the other party.

(f) If an Event of Default shall occur, Tenant shall pay to Landlord, on demand, all expenses incurred by Landlord as a result thereof, including reasonable attorneys' fees, court costs and expenses actually incurred.

23. Landlord's Right of Entry. Tenant agrees to permit Landlord and the authorized representatives of Landlord and of Lender to enter upon the Demised Premises at all reasonable times for the purposes of inspecting the Demised Premises and Tenant's compliance with this Lease, and making any necessary repairs thereto; provided that, except in the case of an emergency, Landlord shall give Tenant reasonable prior notice of Landlord's intended entry upon the Demised Premises. Nothing herein shall imply any duty upon the part of Landlord to do any work required of Tenant hereunder, and the performance thereof by Landlord shall not constitute a waiver of Tenant's default in failing to perform it. Landlord shall not be liable for inconvenience, annoyance, disturbance or other damage to Tenant by reason of making such repairs or the performance of such work in the Demised Premises or on account of bringing materials, supplies and equipment into or through the Demised Premises during the course thereof, and the obligations of Tenant under this Lease shall not thereby be affected; provided, however, that Landlord shall use reasonable efforts not to disturb or otherwise interfere with Tenant's operations in the Demised Premises in making such repairs or performing such work. Landlord also shall have the right to enter the Demised Premises at all reasonable times upon reasonable prior notice to Tenant to exhibit the Demised Premises to any prospective purchaser, mortgagee or tenant thereof. Tenant shall have the right to have an officer or employee of Tenant accompany Landlord in the event of any such entry under this Section 23 (except in the case of an emergency, to the extent infeasible under the circumstances).

24. Lender's Rights.

(a) For purposes of this Lease:

(i) "Lender" as used herein means the holder of a Mortgage;

(ii) "Mortgage" as used herein means any or all mortgages, deeds to secure debt, deeds of trust or other instruments in the nature thereof which may now or hereafter affect or encumber Landlord's title to the Demised Premises, and any amendments, modifications, extensions or renewals thereof.

(b) This Lease and all rights of Tenant hereunder are and shall be subject and subordinate to the lien and security title of any Mortgage. Tenant recognizes and acknowledges the right of Lender to foreclose or exercise the power of sale against the Demised Premises under any Mortgage.

(c) Tenant shall, in confirmation of the subordination set forth in Section 24(b) and notwithstanding the fact that such subordination is self-operative, and no further instrument or subordination shall be necessary, upon demand, at any time or times, execute, acknowledge, and deliver to Landlord or to Lender any and all instruments requested by either of them to evidence such subordination.

(d) At any time during the Term, Lender may, by written notice to Tenant, make this Lease superior to the lien of its Mortgage. If requested by Lender, Tenant shall, upon demand, at any time

-16-

ATL01/11405526v0