EXHIBIT F

SNDA

## SUBORDINATION, NON-DISTURBANCE, AND ATTORNMENT AGREEMENT
(Commercial Real Estate)

**THIS AGREEMENT**, made effective as of the _____ day of _____, 2003, by and between _____, a _____ ("Tenant"), with its principal offices at _____ _____, and U.S. BANK NATIONAL ASSOCIATION, a national banking association ("Lender"), whose mailing address is c/o Commercial Real Estate Loan Department, 150 4th Avenue North, CN-TN-PL02, Nashville, TN 37219, and/or its participants, successors or assigns.

### WITNESSETH:

A.  WHEREAS, by Lease dated _____, 200__ (hereinafter referred to as the "Lease"), Industrial Developments International, Inc., a Delaware corporation ("Landlord"), leased to Tenant a portion of the building located at _____ and commonly known as _____ (such building and the land on which the building is located being called the "Property," and the portions of such building leased to Tenant pursuant to the Lease being called the "Premises"); and

B.  WHEREAS, Landlord has obtained a loan from Lender secured by, among other things, a deed of trust on the Property (the "Deed of Trust"), and as a condition of such loan, Landlord is required to obtain from Tenant certain written agreements; and

C.  WHEREAS, Tenant and Lender desire hereby to establish certain rights, safeguards, obligations and priorities with respect to their respective interests by means of the following agreement.

NOW THEREFORE, for and in consideration of the premises and of the mutual covenants and promises herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Tenant and Lender agree as follows:

1.  The Lease and the rights of Tenant thereunder are and shall be subject and subordinate to the lien of the Deed of Trust and to all of the terms, conditions and provisions thereof, to all advances made or to be made thereunder, to the full extent of the principal sum, interest thereon and other amounts from time to time secured thereby, and to any renewal, substitution, extension, modification or replacement thereof, including any increase in the indebtedness secured thereby or any supplements thereto. In the event that Lender or any other person (Lender, any other such person and their successors and assigns being referred to herein as the "Purchaser") acquires title to the Property pursuant to the exercise of any remedy provided for in the Deed of Trust or by reason of the acceptance of a deed in lieu of foreclosure, Tenant covenants and agrees to attorn to and recognize and be bound to Purchaser as its new landlord, and subject to the other terms, provisions and conditions of this Agreement, the Lease shall continue in full force and effect as a direct lease between Tenant and Purchaser.

2.  So long as the Lease is in full force and effect and Tenant shall not be in default under any provision of the Lease or this Agreement, and no event has occurred which has continued to exist for a period of time (after notice, if any, required by the Lease) as would entitle Landlord to terminate the Lease or would cause, without further action by Landlord, the termination of the Lease or would entitle Landlord to dispossess Tenant thereunder:

    a.  the right of possession of Tenant to the Property shall not be terminated or disturbed by any steps or proceedings taken by Lender in the exercise of any of its rights under the Deed of Trust;

    b.  the Lease shall not be terminated or affected by said exercise of any remedy provided for in the Deed of Trust, and Lender hereby covenants that any sale by it of the Property pursuant to the exercise of any rights and remedies under the Deed of Trust or otherwise, shall be made subject to the Lease and the rights of Tenant thereunder.

  c. subject to any offsets or defenses which Tenant might have against any prior landlord;

  d. bound by any payment of rent or additional rent which Tenant might have paid to any prior landlord for more than the current month.

4. Tenant agrees to give prompt written notice to Lender of any default by Landlord under the Lease which would entitle Tenant to cancel the Lease or abate the rent payable thereunder, and agrees that notwithstanding any provision of the Lease, no notice of cancellation thereof shall be effective unless Lender has received the notice aforesaid and has failed within 30 days of the date of receipt thereof to cure, or if the default cannot be cured within 30 days, has failed to commence and to pursue diligently the cure of Landlord's default which gave rise to such right of cancellation or abatement. Tenant further agrees to give such notices to any successor-in-interest of Lender, provided that such successor-in-interest shall have given written notice to Tenant of its acquisition of Lender's interest in the Deed of Trust and designated the address to which such notices are to be sent.

5. Tenant acknowledges that Landlord has executed and delivered to Lender an Assignment of Rents and Leases conveying the rentals under the Lease as additional security for said loan, and Tenant hereby expressly consents to and recognizes such Assignment, and agrees to pay the rent to Lender or its nominee whenever Lender claims or requests the rent under the terms of said Assignment.

6. Tenant agrees that it will not, without the prior written consent of Lender, do any of the following, and any such purported action without such consent shall be void as against Lender:

  a. make a prepayment in excess of one month of rent under the Lease;

  b. subordinate or permit subordination of the Lease to any lien subordinate to the Deed of Trust; or

  c. make or enter into any amendment or modification or termination of the Lease.

7. Tenant agrees to certify in writing to Lender, upon request, whether or not any default on the part of Landlord exists under the Lease and the nature of any such default. Tenant states that as of this date, the Lease is in full force and effect, without modification, a copy of said Lease being attached hereto. Tenant further states as follows:

  a. Tenant is the tenant under the Lease for the Premises, which contain approximately _____ rentable square feet of space.

  b. Tenant has accepted possession of the Premises pursuant to the Lease. The Lease term commenced on _____, 200__. The termination date of the Lease term, excluding renewals and extensions, is _____, 20__. Tenant has the right to extend or renew the Lease for _____ period(s) of _____ years.

  c. Any improvements required by the terms of the Lease to be made by Landlord have been completed to the satisfaction of Tenant in all respects, and Landlord has fulfilled all of its duties under the Lease.

  d. The Lease has not been assigned, modified, supplemented or amended in any way by Tenant. The Lease constitutes the entire agreement between the parties and there are no other agreements concerning the Premises, and Tenant is not entitled to receive any concession or benefit (rental or otherwise) or other similar compensation in connection with renting the Premises other than as set forth in the Lease.

  e. The Lease is valid and in full force and effect, and, to the best of Tenant's knowledge, no party thereto is presently in default thereunder. Tenant has no defense, set-off or counterclaim against Landlord arising out of the Lease or in any way relating thereto, and no event has occurred and no condition exists, which with the giving of notice or the passage of time, or both, will constitute a default under the Lease.

  f. No rent or other sum payable under the Lease has been paid more than one month in advance.

  g. The amount of the security deposit, if any, to secure Tenant's performance under the Lease is $_____.

8. The foregoing provisions shall be self-operative and effective without the execution of any further instruments on the part of either party hereto. However, Tenant agrees to execute and deliver to

d-3

Lender or to any person to whom Tenant herein agrees to attorn to such other instruments as either shall request in order to effect said provisions.

9. The agreements herein contained shall be binding upon and shall inure to the benefit of the parties hereto, their respective successors and assigns, and, without limiting such, the agreements of Lender shall specifically be binding upon any Purchaser of the Property at foreclosure or otherwise.

10. This Agreement may not be modified other than by an agreement in writing signed by the parties hereto or their respective successors.

11. This Agreement may be signed in counterparts.

12. If any term or provision of this Agreement shall to any extent be held invalid or unenforceable, the remaining terms and provisions hereof shall not be affected thereby, but each term and provision hereof shall be valid and enforceable to the fullest extent permitted by law.

13. All notices, statements and other communications to be given under the terms of this Agreement shall be in writing and delivered by hand against written receipt or sent by certified or registered mail, return receipt requested, postage prepaid and addressed as provided in the first paragraph of this Agreement, or at such other address as from time to time designated by the party receiving the notice.

IN WITNESS WHEREOF, Tenant and Lender have caused this instrument to be executed as of the day and year first above written.

**TENANT:**

_____

By:_____
Name:_____
Title:_____

**LENDER:**

**U.S. BANK NATIONAL ASSOCIATION**

By:_____
Name:_____
Title:_____

*AGREED:*

**LANDLORD:**

**INDUSTRIAL DEVELOPMENTS INTERNATIONAL, INC.**

By:_____
Name:_____
Title:_____

d-4

ATL01/11405526v9

STATE OF _____
COUNTY OF _____, ss:

The foregoing instrument was acknowledged before me this _____ day of _____, 2003, by _____, _____ of _____, a _____, on behalf of the _____.

_____
Notary Public

STATE OF _____
COUNTY OF _____, ss:

The foregoing instrument was acknowledged before me this _____ day of _____, 2003, by _____, _____ of U.S. Bank National Association, a national banking association, on behalf of the national banking association.

_____
Notary Public

d-5

ATL01/11405526v9

EXHIBIT G

FORM OF MEMORANDUM OF LEASE

WHEN RECORDED RETURN TO:

Helen D. Shapiro, Esq.
Greenberg Traurig, LLP
2375 E. Camelback Road, Suite 700
Phoenix, Arizona 85016

MEMORANDUM OF LEASE

THIS MEMORANDUM OF LEASE shall evidence that there is in existence a Lease as hereinafter described. It is executed by the parties hereto for recording purposes only as to the Lease hereinafter described, and it is not intended and shall not modify, amend, supersede or otherwise effect the terms and provisions of said Lease.

| | | |
|---|---|---|
| 1. | Name of Document: | INDUSTRIAL LEASE AGREEMENT |
| 2. | | Name of Landlord:  INDUSTRIAL DEVELOPMENTS INTERNATIONAL, INC., a Delaware corporation |
| 3. | Name of Tenant: | WIRELESS RETAIL, INC., a Texas corporation |
| 6. | Date of Lease: | _____, 2003 |
| 7. | Initial Lease Term: | Five years, commencing on _____, 2003 and ending _____, 2008. |
| 8. | Option to Extend: | Lessee has the option to extend the initial lease term for two (2) additional periods of five (5) years each. |
| 9. | Demised Premises: | Approximately 177,039 square feet in the building located on the real property more particularly described in Exhibit "A" attached hereto, together with the improvements thereon. |

[Signature Pages Follow]

IN WITNESS WHEREOF, the Parties have executed this Memorandum of Lease as of the day and year first written above.

Date:

LANDLORD:

INDUSTRIAL DEVELOPMENTS INTERNATIONAL, INC., a Delaware corporation

By:
  Name:
  Title:

Attest:
  Name:
  Title:

[CORPORATE SEAL]

TENANT:

Date:

WIRELESS RETAIL, INC., a Texas corporation

By:
  Name:
  Title:

Attest:
  Name:
  Title:

[CORPORATE SEAL]

## ATTESTATION

Landlord:

STATE OF

COUNTY OF

BEFORE ME, a Notary Public in and for said County, personally appeared _____ and _____, known to me to be the person(s) who, as _____ and _____, respectively, of Industrial Developments International, Inc., the corporation which executed the foregoing instrument in its capacity as Landlord, signed the same, and acknowledged to me that they did so sign said instrument in the name and upon behalf of said corporation as officers of said corporation, that the same is their free act and deed as such officers, respectively, and they were duly authorized thereunto by its board of directors; and that the seal affixed to said instrument is the corporate seal of said corporation.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name, and affixed my official seal, this _____ day of _____, 2003.

        Notary Public
        My Commission Expires:

Tenant:

STATE OF

COUNTY OF

BEFORE ME, a Notary Public in and for said County, personally appeared _____ and _____, known to me to be the person(s) who, as _____ and _____, respectively, of Wireless Retail, Inc., the corporation which executed the foregoing instrument in its capacity as Tenant, signed the same, and acknowledged to me that they did so sign said instrument in the name and upon behalf of said corporation as officers of said corporation, that the same is their free act and deed as such officers, respectively, and they were duly authorized thereunto by its board of directors; and that the seal affixed to said instrument is the corporate seal of said corporation.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name, and affixed my official seal, this _____ day of _____, 2003.

        Notary Public
        My Commission Expires:

EXHIBIT H

CONVEYOR SYSTEM



# Exhibit "C"

## ASSIGNMENT

WHEREAS, Industrial Developments International Inc., a Delaware Corporation ("Landlord") and Wireless Retail, Inc, a Texas corporation ("Tenant"), entered into that certain lease dated August 1, 2003, relating to certain space known as Suite 110 in the Airways Distribution Center located at 481 Airport Industrial Drive, Southaven, Mississippi (collectively the "Prime Lease");

WHEREAS, SC Kiosks, Inc., a Delaware corporation is the successor in interest to Wireless Retail, Inc. by assignment dated October 1, 2004;

WHEREAS, by Sublease of even date herewith, between SC Kiosks, Inc., as "Sublandlord" and Warehouse 86, LLC, an Arizona limited liability company as "Subtenant," (the "Sublease") Subtenant has subleased from Sublandlord the space subject to the Prime Lease (the "Subleased Premises");

WHEREAS, by agreement dated _____, Subtenant has contracted with UPS Oasis Supply Corp., ("UPS") to perform certain services to and on behalf of UPS ("Service Agreement") and will use the Subleased Premises in the performance thereunder. Pursuant to the Service Agreement UPS is obligated to pay to Subtenant certain sums in the event that UPS terminates the service agreement for its convenience as provided therein (the "Termination Fees"); and

WHEREAS, the execution and delivery of this Assignment by Subtenant is a condition of the Sublease;

NOW, THEREFORE, to induce Sublandlord to enter into the Sublease agreement, to secure payment of sums owed to Sublandlord under the Sublease:

1. <u>Assignment</u>. Subtenant hereby assigns to Sublandlord all its right to receive Termination Fees from UPS as provided in the Service Agreement in an amount not to exceed the amount of all sums owed or to be owed, which are due and to become due to Sublandlord from Subtenant under the terms of the Sublease for any remaining term of the Sublease. Sublandlord shall have first priority in receipt of sums owed to Subtenant as Termination Fees until such time as all sums owed to Sublandlord under the Sublease are paid in full.

2. <u>Direction to Pay</u>. By this assignment, Subtenant agrees to make payments of Termination Fees directly to Sublandlord

3. <u>Secured Debt</u>. This Assignment is made to secure the payment by Assignor to Assignee of the following described obligations (collectively, the "Secured Debt");

    (a) The payment and performance by Assignor of all of Assignor's Obligations for rent and other sums due to Assignee, under the terms of the Sublease The term

"Obligations" includes but is not limited to the rents and other sums owed or to become due which are or may become payable by Assignor to Assignee under the Sublease; and

(b) All reasonable costs incurred by Assignee to obtain, preserve, and enforce this Assignment, collect the Secured Debt, and maintain and preserve the Leases and the Rents, including specifically, but without limitation, Assignee's reasonable attorneys' fees, disbursements and legal expenses.

4. Assignor's Warranties and Representations.

(a) Ownership of Right to Payment. Assignor is the owner and holder of the right to receive payment of the Termination Fees, and all requisite right, power and authority to assign Assignor's interest in the Termination Fees and the right to receive them, and no other person, firm or corporation has any right, title or interest therein.

(b) No Defaults. Assignor has substantially performed all and singular the terms, covenants, conditions and warranties of the Service Agreement on Assignor's part to be kept, observed and performed.

(c) No Modification of Service Agreement. The Service Agreement is valid and enforceable by Assignor and unmodified except as indicated herein and is in full force and effect; Assignor has not previously sold, assigned, transferred, mortgaged or pledged the Termination Fees or the right to receive Termination Fees, whether now due or hereafter to become due.

(d) Assignability. The right of Assignor to receive Termination Fees under the Service Agreement is assignable, and this assignment is not a breach of the Service Agreement.

5. Assignor's Covenants and Agreements.

(a) Performance. Assignor shall observe, perform and discharge punctually all and singular the obligations, terms, covenants, conditions and warranties of the Sublease, the Service Agreement and this Assignment, and Assignor shall give prompt notice to Assignee of any failure on the part of Assignor to observe, perform and discharge the same.

(b) Modification of Service Agreement. Without obtaining in each instance the prior written consent of Assignee, Assignor shall not cancel, terminate or consent to any surrender of the Service Agreement nor modify or in any way materially alter the terms thereof, including without limitation the rights to receive Termination Fees under Article 11.

Assignment — Page 2

(c) <u>Financing Statement</u>. Sublandlord may file a UUC financing statement to perfect its claim against the sums assigned hereunder, and Subtenant shall sign and deliver to Sublandlord all instruments, documents, or other writings that may be necessary to perfect Sublandlord's security interest in the sums assigned.

(d) <u>Collection of Termination Fee</u>. In the event of termination of the Service Agreement by UPS under circumstances in which UPS becomes obligated to pay a Termination Fee, Landlord will submit to Subtenant a statement reflecting the full amount of rent and other sums that may come due through the entire remaining term of the Sublease, and may submit a copy of the statement to UPS accompanied by a demand for payment of such amount. Sublandlord may accelerate the due date of all sums to be paid thereunder and apply the amounts received under this Assignment to such sum without terminating the Sublease or without accelerating the due date of any sum due, hold the Termination Fee received and apply a portion to pay any monthly rent payment or other sums owed on their due date. If Subtenant fails to pay to Assignee any portion of a Termination Fee which is payable under the Service Agreement within 30 days of the notice by Sublessor to UPS of the amount payable, Assignee may by written notice to Assignor and terminate the Sublease and regain possession of the leased premises.

7. <u>Default</u>. Assignor shall be in default under this Assignment upon the occurrence of any of the following events or conditions:

(a) If Assignor shall fail, refuse or neglect to pay, in full, any portion or installment of the Secured Debt when same shall become due and payable as agreed by Assignor and Assignee, whether at the due date thereof stipulated in the Sublease or other instrument evidencing the Secured Debt, or by acceleration or otherwise.

(b) If any representation, warranty or covenant made by Assignor, under or pursuant to the Service Agreement, the Sublease, this Assignment or otherwise executed in connection with the Sublease shall be false or misleading in any material respect.

(c) If Assignor shall (a) procure the voluntary or allow the involuntary appointment of a receiver, trustee or liquidator for himself or for all or any part of his property; (b) file any petition seeking a discharge, rearrangement or reorganization of his debts, pursuant to the bankruptcy laws or any other debtor relief laws of the United States or any state or any other competent jurisdiction, (c) make a general assignment for the benefit of his creditors, or (d) admit in writing his inability to pay his debts as they mature.

(d) If (a) a petition is filed against Assignor seeking relief under the bankruptcy, arrangement, reorganization or other debtor relief laws of the United States or any state or other competent jurisdiction and such proceeding is not vacated or dismissed within ninety (90) days of the filing thereof, or (b) a court of competent

Assignment — Page 3

jurisdiction enters an order, judgment or decree appointing, without the consent of Assignor, a receiver or trustee for him, or for all or any part of his property.

(e)   If UPS terminates the Service Agreement for any reason.

(f)   Any event which results in the acceleration of the maturity of the Debt of Assignor to others under any note, security agreement, mortgage or agreement or undertaking of any kind whatsoever.

(g)   Levy on, seizure, or attachment of the Lessor's interest in the Service Agreement, or any part thereof.

8.   Remedies.   Upon or at any time after the occurrence of an event of default hereunder, Assignee at its option shall have the complete right, power and authority hereunder then or at any time thereafter to exercise and enforce any or all of the following rights and remedies:

(a)   to demand, collect, receive, sue for, attach and levy on the Termination Fees and the right to receive the Termination Fees, and give proper receipts, releases and acquittances therefor, and after deducting all necessary and proper costs and expenses of operation and collection, as reasonably determined by Assignee, including reasonable attorneys' fees, and apply the net proceeds thereof, together with any funds of Assignor deposited with Assignee, in reduction or payment of the Secured Debt in such order of priority as Assignee may, in its sole discretion, determine;

(b)   to declare all sums secured hereby immediately due and payable and, at the option of Assignee, exercise all of the rights and remedies contained in the Sublease and this Assignment;

(c)   to exercise all rights under this Assignment; and

9.   Exculpation of Assignee.   The acceptance by Assignee of this Assignment with all of the rights, powers, privileges and authority created hereby shall not be deemed or construed to constitute assumption by Assignee of any obligation under the Service Agreement.

10.   No Waiver.   The collection of the Termination Fees as provided for in this Assignment shall not be deemed to cure or waive any default or waive, modify or affect any notice of default under the Sublease or invalidate any act done pursuant to any such notice.

11.   Continuation - Termination.   Upon payment and discharge in full of the Secured Debt and of all sums payable hereunder, this Assignment shall become and be void and of no force or effect, but the affidavit of any officer of Assignee stating that any part of the Secured Debt remains unpaid and undischarged shall be and constitute conclusive

Assignment — Page 4

evidence of the validity, effectiveness and continuing force of this Assignment, and any person, firm or corporation may and is hereby authorized to rely thereon.

12. <u>Notices</u>. All notices, demands or documents of any kind which Assignee may be required or may desire to serve upon Assignor hereunder shall be sufficiently served and shall be deemed delivered by personal delivery to Assignor or by depositing a copy thereof addressed to Assignor at the address of Assignor set forth herein or by depositing a copy thereof in the United States mail, postage prepaid and addressed to Assignor at such address.

13. <u>Modifications</u>. No provision hereof shall be modified or limited except by a written agreement expressly referring hereto and to the provision so modified or limited and signed by both Assignor and Assignee, nor by course of conduct, usage of trade, or by the law merchant.

14. <u>Applicable Law</u>. This Assignment shall be construed according to the laws of the State of Texas.

15. <u>Venue</u>. It is agreed that venue in any proceeding hereunder shall be in Tarrant County, Texas.

IMAGING SERVICES

IMAGING SERVICES

Assignment -- Page 5

IN WITNESS WHEREOF, this Assignment is effective as of June ____, 2006.

ADDRESS:

P.O. Box 17361
Memphis, TN 38187

ASSIGNOR:
Warehouse 86, LLC

By: _____
Name: Ernest K. Strahan, III
Title: CFO

ADDRESS:

300 RadioShack Circle
Fort Worth, TX 76102
MS-CF 6-314

ASSIGNEE:
SC Kiosks, Inc.

By: _____
Name: DAVID S. GOLDBERG
Title: VP SC Kiosks, Inc.

**IMAGING SERVICES**

Assignment -- Page 6