# Exhibit E
## <u>Part 1 of 4</u>



McLarens ___ ing
International
GLOBAL CLAIMS SERVICES

1866 N. Central Expressway, Suite 710
Dallas, TX 75243-3780
Tel   972 907-9910
Fax   972 907-9871

September 17, 2008

Ms. Joan Ruland Donnelly
Liberty Mutual Property
20 Riverside Road
Weston , MA  02493

RE:   Claim No.                 :   X58A-000922-00
      Report No.        5       :   Interim
      Insured                   :   Radio Shack Corporation
      Type of Loss              :   Tornado and Fire
      Loss Date                 :   Tornado – 2-5-08, Fire – 2-11-08
      Policy No.                :   YJ2-L9L-004096-167
      Loss Location             :   Warehouse 86, Southaven, MS
      MYI File No.              :   16.004205

Dear Ms. Donnelly:

Enclosed herewith is our interim report in connection with the above captioned claim.

**ENCLOSURES:**

1.   Statement of Loss
2.   Depreciation Schedule
3.   Estimate from J.S. Held, Inc.
4.   Other claim documentation
5.   Copy of lease agreement

**INSURED:**

The named insured is Radio Shack Corporation and their address is 300 Radio Shack Circle, Fort Worth, TX.

**COVERAGE:**

Coverage is in force through policy number YJ2-L9L-004096-167 and effective dates are 7-1-07 to 7-1-08. Policy valuation is at promotional retail value for stock and replacement cost for store improvements and fixtures.  There is a $250,000 deductible applicable.

**OTHER INSURANCE:**

The sub-tenant, Warehouse 86 LLC, has a policy of insurance in place as per the enclosed Certificate of Insurance, carried by Employers Mutual Casualty for business personal property in the amount of $1,000,000 which lists S.C. Kiosks, Inc. as having an interest in the policy.  S.C. Kiosks is owned by Radio Shack Corporation.  It is understood this location is listed on the Schedule of Insured Locations.

ESTIMATE OF LOSS:                 $2,765,100
DEDUCTIBLES 2@ $250,000:          ( 500,000)
RESERVE RECOMMENDED:              $2,265,100

O/F#: 16.004205
September 17, 2008
Page 2 of 4

**CAUSE OF LOSS:**

On February 5, 2008, a tornado struck a warehouse which contained equipment wherein Kiosks, Inc., a division of Radio Shack Corporation, holds an interest. The details of Radio Shack's interest and the damaged property will be discussed later in this report.

Subsequent to the tornado, the landlord hired a demolition contractor who in turn hired a welding subcontractor to cut away metal debris. The welding sub contractor caused a fire while in the process of cutting away debris from the building on February 11, 2008. The equipment which Radio Shack has an interest in, sustained additional damage from the fire.

**SUBROGATION:**

There are subrogation possibilities against the sub-tenant, Warehouse 86, as they were to insure the property of Radio Shack including the conveyor system and security system. The adjuster for Warehouse 86 is a Micah Moore, P.O. Box 190, 11625 Highway 64 Eads, TN  38028. The telephone number for Micah Moore is (901) 299-8962.

There are also subrogation possibilities against the steel contractor, Diamond Steel, apparently they were involved in causing a fire while cutting away steel structure during the demo process. Their adjuster is a Kevin Fox, claims specialist, P.O. Box 140996, Nashville, TN  32737. Mr. Fox's telephone number is (888)549-9876 ext 1228.

**SALVAGE:**

In-Motion Systems, LLC, was hired to remove the conveyor system from the warehouse following the occurrences. In-Motion Systems advises in their correspondence dated March 23, 2007, there will be some salvage value estimated at approximately $60,000. In-Motion Systems advises they have currently been unable to locate a buyer for the remains of the conveyor system and their efforts continue.

**ADJUSTMENT:**

Enclosed is a proposed Statement of Loss indicating a loss amount of $2,765,024.26. Applying refundable depreciation as per the Schedule enclosed of $476,763.00 and applying two separate deductibles, one for the tornado of 2-5-08 and the other for the fire of 2-11-08, makes for net claim as outlined of $1,706,761.26.

The following is a brief discussion of the items outlined on the enclosed Statement of Loss:

1.       Improvements and Betterments

Enclosed is a revised estimate prepared by Christy Ball of J.S. Held for replacement of improvements and betterments in the amount of $1,417,756.48. The landlord is not in complete agreement with this amount, however, they will agree to use this as a base replacement cost for the improvements and betterments. The policy of insurance allows Liberty Mutual Insurance Company to withhold depreciation until the improvements and betterments are replaced and enclosed is a Schedule of Depreciation which totals $476,763.00. The actual cash value loss and claim for the improvements and betterments as outlined on the enclosed Statement of Loss totals $940,993.48.

The policy of insurance requires the improvements and betterments be replaced within a 2 year time frame beginning on the loss date of February 5, 2008 to qualify for the refundable depreciation. The landlord advises they did not intend to replace the improvements and

O/F#: 16.004205
September 17, 2008
Page 3 of 4

betterments until they locate a tenant to reoccupy the warehouse. It is understood the rebuild of the warehouse is approximately 75% complete at this time. The landlord has until February 5, 2010 to replace the improvements and betterments to qualify for the refundable depreciation.

2.    Security System

Radio Shack Corporation submitted documentation to substantiate the replacement cost of the security systems from Integral Technologies which totals $163,000. Applicable depreciation is 50% of the value which totals $81,500.00, leaving an actual cash value claim amount for the security system of $81,500.00.

3.    Conveyor System

GE Capital invoiced Radio Shack the sum of $1,064,361.78 which represents the value of the conveyor system as of the loss date. Please note the replacement value of the entire conveyor system is in the range of $2,000,000 to $2,500,000 and the amount invoiced by GE Capital represents the actual cash value of the conveyor system as of the date of loss. It was necessary for Radio Shack to remove the remains of the conveyor system and In-Motion Systems LLC agrees to remove the conveyor system for the sum of $119,906.00. This makes for a loss to the conveyor system of $1,184,267.78.

There are two separate deductibles applicable, one for the tornado damage of 2-5-08 and the other for the fire damage of 2-11-08 and each deductible is $250,000. Applying the two separate deductibles makes for a net claim on the conveyor system of $684,267.78.

As per the enclosed Statement of Loss, the net claim after taking refundable depreciation and applying two separate deductibles is $1,706,761.26.

These figures have been discussed in detail with representatives of Radio Shack Corporation and they are in agreement.

The lease agreement has been reviewed and Radio Shack Corporation is responsible for replacement of the improvements and betterments. In addition, the landlord, IDI, Inc. is listed as an additional insured.

Radio Shack has requested that two separate checks be issued, the first for the claim on the improvements and betterments in the amount of $940,993.48 payable to IDI, Inc. and Radio Shack Corporation and the second check for the net claim on the security system and the conveyor system, $81,500 and $684,267.78 respectively, for a total of $765,767.78, payable to Radio Shack Corporation only.

## WHAT HAS BEEN DONE:

The enclosed Statement of Loss has been prepared reflecting a loss of $2,765,024.26 and a net claim of $1,706,761.26. The lease agreement has been reviewed along with the policy of insurance to verify the obligations of Radio Shack Corporation with regard to the improvements and betterments. The enclosed Depreciation Schedule has been prepared reflecting the refundable depreciation based on the revised estimate prepared by J.S. Held Corporation.

O/F# 16.004205
September 17, 2008
Page 4 of 4

**WHAT IS TO BE DONE:**

If your office concurs with the above recommendation, a Sworn Statement in Proof of Loss in the net amount of $1,706,761.26 will be forwarded to Radio Shack Corporation to conclude the claim.  A Replacement Cost Proof of Loss will also be forwarded reflecting the refundable depreciation of $476,763.00.  Radio Shack has requested two separate checks be issued as outlined above.

**CONCLUSION:**

Authority is requested to provide a Sworn Statement in Proof of Loss for the ACV claim of $1,706,761.26 and a Replacement Cost Proof of Loss to reflect the refundable depreciation of $476,763.00.

Please respond with authority.

**MCLARENS YOUNG INTERNATIONAL**

Bill Adams
Vice President/Branch Manager
Executive General Adjuster

BA/ma

STATEMENT OF LOSS

Insured:  Radio Shack
Loss Location:  Southhaven, MS
Date of Loss:  2-5-08 and 2-11-08
MYI File No.  16.004205

|  | VALUE | LOSS | CLAIM |
|---|---|---|---|
| Item I:  Real Property | | | |
| Loss As Determined | | | |
| See Attached Documentation | | | |
| 1.  Improvements and Betterments | $ 1,800,000.00 | | |
| J.S. Held Estimate | $ 1,417,756.48 | | $ 1,417,756.48 |
| Less:  Depreciation | $  (476,763.00) | | |
| **ACV LOSS & CLAIM** | $   940,993.48 | | 940,993.48 |
| | | | |
| 2.  Security System | $  163,000.00 | | |
| Integral Technologies | $   163,000.00 | | $   163,000.00 |
| Less:  Depreciation (50%) | $   (81,500.00) | | |
| **CLAIM** | $    81,500.00 | | $    81,500.00 |
| | | | |
| 3.  Conveyor System | $ 2,000,000.00 | | |
| G.E. Capital Invoice | $ 1,064,361.78 | | |
| In-Motion Systems LLC | $   119,906.00 | | |
| **LOSS** | $ 1,184,267.78 | | $ 1,184,267.78 |
| Less:  Deductible (Tornado ) | $  (250,000.00) | | |
| Less:  Deductible (Fire) | $  (250,000.00) | | |
| **CLAIM** | $   684,267.78 | | $   684,267.78 |
| | | | |
| **VALUE, LOSS, CLAIM** | $ 3,963,000.00 | $ 2,765,024.26 | $ 1,706,761.26 |

DEPRECIATION SCHEDULE
RADIO SHACK
SOUTHAVEN, MS
MYI #16.004205

| ITEM | REPLACEMENT COST | % DEPRECIATION | DEPRECIATION |
|---|---|---|---|
| Acoustical Treatments | $ 19,747.00 | 50% | $ 9,873.00 |
| Cabinetry | $ 18,659.00 | 40% | $ 7,463.00 |
| Concrete/Asphalt | $ 28,400.00 | 30% | $ 8,520.00 |
| Doors | $ 9,269.00 | 30% | $ 2,780.00 |
| Drywall | $ 65,387.00 | 40% | $ 26,154.00 |
| Electrical | $ 236,287.00 | 40% | $ 94,514.00 |
| Electrical - Special System | $ 8,539.00 | 30% | $ 2,561.00 |
| Misc. Equipment | $ 73,375.00 | 40% | $ 29,350.00 |
| Carpet | $ 21,011.00 | 50% | $ 10,505.00 |
| Vinyl Floor | $ 7,358.00 | 40% | $ 2,943.00 |
| Fencing | $ 56,500.00 | 40% | $ 22,600.00 |
| Finish Hardware | $ 14,442.00 | 40% | $ 5,776.00 |
| Fire Proective System | $ 43,949.00 | 40% | $ 17,579.00 |
| Framing/Rough Carpentry | $ 3,930.00 | 20% | $ 786.00 |
| Glass/Glazing | $ 14,725.00 | 30% | $ 4,417.00 |
| HVAC | $ 99,375.00 | 60% | $ 59,625.00 |
| Insulation -Mechanical | $ 9,231.00 | 35% | $ 3,230.00 |
| Insulation -Mechanical | $ 68,851.00 | 25% | $ 17,212.00 |
| Light Fixtures | $ 157,745.00 | 50% | $ 78,872.00 |
| Mirrors/Shower Doors | $ 875.00 | 25% | $ 218.00 |
| Plumbing | $ 49,152.00 | 40% | $ 19,660.00 |
| Painting | $ 9,014.00 | 50% | $ 4,507.00 |
| Toilet/Bath Accessorie | $ 4,854.00 | 50% | $ 2,427.00 |
| Window Treatment | $ 4,632.00 | 30% | $ 1,389.00 |
| SUBTOTAL | | | $ 432,961.00 |
| Overhead | $ 118,386.00 | 37% | $ 43,802.00 |
| TOTAL | | | $ 476,763.00 |

InMotionSystems, LLC

2324 Foxhaven Drive
Franklin, TN 37069

# Invoice

| Date | Invoice # |
|------|-----------|
| 4/5/2008 | 11 |

| Bill To |
|---------|
| Radio Shack |
| Attn : Judy McCampbell |
| 300 RadioShack Circle |
| MS CF4-324 |
| Fort Worth, TX 76102-1964 |

| P.O. No. | Terms | Project |
|----------|-------|---------|
| Judy McCampbell | Due on receipt | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | Radio Shack – Southaven, MS Asset and Liquidation – Quote #2008-148 – 25% progress payment due April 11, 2007 | 29,976 50 | 29,976 50 |

*01005⁻⁰*

Radio Shack Fleet
Amount _29976.50_
Account Number _1258_
Authorized Payment By

~~Jaime Caballero~~
415-0357

It's been a pleasure working with you!

| | Total | $29,976.50 |

InMotionSystems, LLC

# Invoice

2324 Foxhaven Drive
Franklin, TN 37069

| Date | Invoice # |
|------|-----------|
| 4/5/2008 | 13 |

**Bill To**

Radio Shack
Attn : Judy McCampbell
300 RadioShack Circle
MS CF4-324
Fort Worth, TX 76102-1964

| P.O. No. | Terms | Project |
|----------|-------|---------|
| Judy McCampbell | Due on receipt | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | Radio Shack - Southaven, MS Asset and Liquidation - Quote #2008-148 - 25% Final Payment due April 25, 2008 | 29,976.50 | 29,976.50 |

01-0050 Radio Shack Deck
Amount 29,976.50
Account Number 1250
Authorized Payment By Judy L McCampbell
Jaime Ceballero
415-0357

| Thank you for your business | **Total** | $29,976.50 |
|------|------|------|



**McLarens Young International**
GLOBAL CLAIMS SERVICES

2655 N. Central Expressway, Suite 710
Dallas, TX 75243-3790
Tel   972 907-9910
Fax   972 907-9871

June 13, 2008

Ms. Judy McCampbell
Radio Shack Corporation
300 Radio Shack Circle
MSCF4-320
Fort Worth, TX 76102

RE:     Claim No.           :     X58A-000922-00
        Insured             :     Radio Shack Corporation
        Type of Loss        :     Tornado and Fire
        Loss Date           :     Tornado – 2-5-08, Fire – 2-11-08
        Policy No.          :     YJ2-L9L-004096-167
        Loss Location       :     Warehouse 86, Southaven, MS
        MYI File No.        :     16.004205

Dear Ms. McCampbell:

As requested enclosed is a copy of our claim submission for the above captioned claim.  Should you need additional information please let us know.

Yours truly,

**MCLARENS YOUNG INTERNATIONAL**

*Bill Adams*

Bill Adams
Vice President/Branch Manager
Executive General Adjuster

BA/ma

RECEIVED
DEC 12 2008

CONVEYOR

# Motion Systems, LLC.
2324 Foxhaven Drive
Franklin, TN 37069
(866) 898-5575
scott.renninger@InMotionSI.com

March 23, 2007

Bill Adams
McLarens Young

Subject:     Radio Shack - Southaven, MS Asset Dismantle and Liquidation
             Quote # 2008-148

Mr. Adams,

As requested, we are submitting a written proposal for the New Radio Shack -
Southaven, MS Asset Dismantle and Liquidation as described below;

1.  Pallet Racking – Dismantle Only
    a.  (373) Used pallet rack uprights – 23'-6" x 44" - structural bolt style
    b.  (7) Used pallet rack uprights – 16' x 42" - tear drop style
    c.  (48) Used 96" x 4" load beams – tear drop style
    d.  (1384) Used 96" x 3" load beams - structural bolt style
    e.  (2028) Used 96" x 4" load beams - structural bolt style
    f.  (200) Used 12" row spacers - structural bolt style
    g.  (3108) Used Wire Decking 44" x 46"
    h.  (48) Used Wire Decking 42" x 46"
    i.  (6232) Bolt-in pallet supports - structural bolt style
    j.  (114) Fire Damaged (Scrap value only) Used pallet rack uprights – 23'-6"
        x 44" - structural bolt style
    k.  (2592) Fire Damaged (Scrap value only) Used 96" x 3" load beams -
        structural bolt style
    l.  (5184) Fire Damaged (Scrap value only) Bolt-in pallet supports -
        structural bolt style
    m.  (2592) Fire Damaged (Scrap value only)  Used Wire Decking 44" x 46"
    n.  Labor and all equipment

2.  Guardrail – Dismantle ONLY
    a.  (20) Used pallet rack end guards – 2 rail
    b.  (14) sections 96" with 2 rail
    c.  Labor and all equipment

3.  Flow Rack (carton flow) - Dismantle ONLY
    a.  (19)  Bays of Carton Flow Rack 8' wide x 8' deep – 3 shelves
    b.  Labor and all equipment

# InMotion Systems, LLC.

2324 Foxhaven Drive
Franklin, TN  37069
(866) 898-5575
scott.renninger@InMotionSI.com

4. Conveyor System – Dismantle ONLY
    a. (2) Used powered 24" wide BEST FLEX conveyor complete with
    b. (900 LF) Gravity 24" wide conveyor complete with guardrail and stands
    c. (2000 LF) Powered, various width conveyor, complete with guardrail and stands
    d. (240 LF) Powered positive divert sorter, complete with guardrail and stands
    e. All Powered curves – slave driven, complete with guardrail and stands
    f. All Crossover units – steel constructed
    g. Labor and all equipment
    h. All Electrical and controls

5. Mezzanine - Dismantle ONLY
    a. (3150 SF) Torbek structural mezzanine with stairs and landings and handrail 18' x 25' (7 bays long)
    b. Labor and all equipment

6. Pallet Flow - Dismantle ONLY
    a. (76) Pallet rail guides and support angle
    b. Labor and all equipment

7. Wire Partitions - Dismantle ONLY
    a. (600 LF) Wire Crafters welded wire partitions 5' x 10' panels, sliding gate and doors
    b. Labor and all equipment

8. Wire Partitions - Dismantle ONLY
    a. (4000 SF) Safety netting and attachment hardware
    b. Labor and all equipment

9. Miscellaneous
    a. Security room and cameras
    b. Labor and all equipment

### Motion Systems, LLC.
2324 Foxhaven Drive
Franklin, TN 37069
(866) 898-5575
scott.renninger@InMotionSI.com

10. Mobilization & Temporary Facilities
    a.  Mobile Office
    b.  Phone
    c.  Job Johnny
    d.  Storage Trailer
    e.  Dumpster – General housekeeping ONLY
    f.  Forklifts
    g.  Aerial Lifts
    h.  Fuel
    i.  Banding - steel
    j.  Wood - crating

**Total for the above**.............................................................**$119,906**

## ASSET VALUE – Wholesale and Retail during a 30 day period

| | |
|---|---|
| Low Value | $41,289 * |
| Average Value | $59,387 * |
| High Value | $75,264 * |

\* Based upon a 30 day sale period and available Customers

Asset values are estimates ONLY and are subject of change based upon condition and inventory of assets during the scope for this project.

InMotion Systems guarantees the sale of all mentioned Assets for a value of $27,500

## EXISTING INVENTORY REMOVAL AND DISPOSAL

All labor and equipment need to remove all existing inventory from the facility and dispose of into waste containers (20 – containers estimated) to be hauled away.

If additional containers are required per container charge will be added to the final bill at a rate of $1,200/container.

**Total for the above**...................................................................**$46,000**

InMotion Systems, LLC.
2324 Foxhaven Drive
Franklin, TN  37069
(866) 898-5575
scott.renninger@InMotionSI.com


Project start date:  March 31, 2008

Project completion time is 3 – 4 weeks from receipt of first payment.

Terms: 50% prior to start
       25% due April 11, 2008
       25% due April 25, 2008

We appreciate the opportunity to provide this proposal.  We would appreciate the opportunity to serve Butler with our broad array of business partner skills.  Our goal is to be your solution provider of choice on this project and all upcoming projects that require our skills and abilities.

Should you have any questions or need clarification regarding this proposal, call me direct at 775-691-2166.

Sincerely,

Scott Renninger
General Manager
InMotion Systems, LLC.
(866) 898-5575 ext. - 3
Scott.renninger@InMotionSI.com



Accepted By:  _____

Date:  _____

Title:  _____

P.O. /Ref #:  _____

InMotionSystems, LLC

2324 Foxhaven Drive
Franklin, TN 37069

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/31/2008 | 12 |

**Bill To**

Radio Shack
Attn.:  Judy McCampbell
300 RadioShack Circle
MS CF4-324
Fort Worth, TX 76102-1964

| P.O. No. | Terms | Project |
|----------|-------|---------|
| Verbal Judy | Due on receipt | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| 1 | Radio Shack - Southaven, MS Asset and Liquidation - Quote #2008-148 - 50% down payment | 59,953.00 | 59,953.00 |

Thank you for your business.

**Total** $59,953.00

Radio Shack~Tandy Electronics~Tandy Retail Services~Tech America

## DISBURSEMENT AUTHORIZATION

Business Unit _____ Origin _____

Requestor's Phone No.   Ext. 3647 _____

### Vendor Setup

Setup Required [ ]   VMG Approval _____   Date _____

### Invoice Information

Vendor ID _____   Location Number _____

Name   IN MOTION SYSTEMS

Address 1:   2324 FOXHAVEN DR.

Address 2: _____

City/State:   FRANKLIN, TN   Zip Code:   37069

Terms _____   Invoice Date _____   Invoice Number _____

Amount :   59,953.00

### Distribution Line

| | Amount | Store | | Account | | Sortable |
|---|---|---|---|---|---|---|
| Amount | $ 59,953.00 | Store | 01-0050 | Account | 1250 | Sortable \_\_\_\_\_ |
| Amount | $ \_\_\_\_ | Store | \_\_\_\_ | Account | \_\_\_\_ | Sortable \_\_\_\_\_ |
| Amount | \_\_\_\_ | Store | \_\_\_\_ | Account | \_\_\_\_ | Sortable \_\_\_\_\_ |

### Asset Fields

Profile ID _____   CAP Number _____

### Rent Fields

Lease Number _____   Rent Element _____   Rent Period _____

Lease Number _____   Rent Element _____   Rent Period _____

Lease Number _____   Rent Element _____   Rent Period _____

### Approval

Authorized By _____   Date   03-28-08

Authorized By _____   Date _____

### Check Instructions

Separate Check [ ]   Check Message   Removal of equipment, per proposal

Special Handling [ ]   Express Check [ ]

Special Handling Message/Instructions _____

 **GE Capital**

GAM
Account Number: 4145183 - 001

| Billing ID | Invoice No. | Due Date |
|---|---|---|
| 4145183 - 001 | 894386 | 03/01/2008 |
| Total Due | | |
| $1,064,361.78 | | |

**Make checks payable and remit to:**
GE CAPITAL CORPORATION
10 RIVERVIEW DR.
DANBURY, CT 06810
ATTN : CHRISTOPHER SMYTH

SC KIOSKS, INC.
300 RADIO SHACK CIRCLE
ATTN: DEAN HARTMAN
FORT WORTH,TX 76102-1964
ATTN: MARIEM HARRIS

To ensure proper credit--detach along dotted line and return upper portion with payment. Please do not staple or fold.

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

**GE Capital**

| Billing ID | Customer No. | Office ID | Customer Service |
|---|---|---|---|
| 4145183 - 001 | 001157259 | CISW | 1-800-362-0135 |
| Invoice No. | Invoice Date | Due Date | Total Due |
| 894386 | 02/29/2008 | 03/01/2008 | $1,064,361.78 |

SC KIOSKS, INC.
300 RADIO SHACK CIRCLE
ATTN: DEAN HARTMAN
FORT WORTH,TX 76102-1964
ATTN: MARIEM HARRIS

| Account | Due Date | Description | Amount |
|---|---|---|---|
| 4145183001 | 03/01/2008 | LATE CHARGES | $1,813.62 |
| | | STIP LOSS VALUE | $895,200.80 |
| | | SALES TAX | $62,664.06 |
| | | PROPERTY TAXES | $104,683.30 |
| | | Total Due | $1,064,361.78 |

# DEMATIC

|  |  |
|---|---|
| Ms. Judy McCampbell | **Name**     John Pino<br>                    Customer Services |
| Radioshack Corporation<br>Warehouse 86, LLC,<br>481Airport Industrial Dr.<br>Suite 110<br>Southaven, MS. 38671 | **Telephone**  616-913-7400<br>**Fax**        616-913-7433<br><br>**E-mail**     john.pino@dematic.com<br>**Internet**   http://www.dematic.us<br><br>**Date**      March 17, 2008 |

RE: Dematic Conveyor Audit, Damage Assessment - Project 11069365

Dear Ms. McCampbell,

The Conveyor System suffered damage from several elements: first the initial tornado, then the fire, and now exposure to the elements. This report will describe the overall conveyor equipment condition, the structural integrity of the individual conveyor "unit", and the condition of the individual components.

One hundred percent of the equipment listed has been affected by water and smoke (soot) damage. Dematic strongly recommends that all the belts be replaced. Water has short and long term affects to the belts and especially the belt lacing. The soot damage is primarily a housekeeping issue which will require the cleaning of all the units.

The extent of the water damage to the electrical system, motors and switches, is unknown and impossible to evaluate without powering up the individual units. The electrical control cabinets on-site, specifically CC1, CC10, CC2, and Dispatch "Icebox" were inspected and appeared to be in good condition. The cabinet doors were closed which should have prevented any internal damage. There was also no sign of water damage in these cabinets.

The conveyor equipment displayed signs of oxidation, primarily to the unpainted surfaces, and bed rollers and axles. The most extensive oxidation was found on units exposed to the extreme heat, water, and elements. These units suffered considerable damage and the following section will note the percent of the unit that is salvageable.

**Individual Unit Assessment:**

- Group **ONE** list units that have only water and smoke damage. The units' physical integrity is intact and it has suffered only minor damage. These units are still anchored in their original locations.

- Group **TWO** list units that have significant damage and a percent salvageable. These units will require major component replacement in order to become operational again.

- Group **THREE** list units that were totally destroyed (some components may possibly be salvaged).

Dematic Corp.<br>Customer Services

Office address:<br>Dematic<br>507 Plymouth Avenue NE<br>Grand Rapids, MI 49505-6029

Switchboard: 616-913-6200

| Group ONE | Group TWO | Group THREE |
|---|---|---|
| SS-0112 (sorter) | BT-0111 (Induction) - 80% Salvageable | There were a considerable number of units which had been damaged and pushed into a large pile. The unit numbers on these units were not accessible. |
| BT-0114A (410) | RT-0224 (1102) - 80% Salvageable | BT-0110 (Wide Belt) |
| RT-0114B (996) | SS-0307 (PS-140 Positive Sorter) - 50% salvageable. This sorter has frame damage to 3 middle bed sections and the discharge end is severely damaged from exposure to fire. (See Photo below) | VB-0110A (Vertibelt) |
| RA-0115 (1265) | RT-0309 (1265) - 20% Salvageable. The drive package is the only good part left. | |
| RT-0115A (996) | RT-0105 (1102) - 40% Salvageable the charge end discharge are good with the damage to the center of the unit. | |
| RA-0115B (1265) | | |
| RT-0111E (996) | | |
| BT-0111A (410) | | |
| RT-0111B (996) | | |
| RA-0111C (1265) | | |
| BT-0111D (410) | | |
| RA-0230 (1265) | | |
| RT-0231 (1265) | | |
| BT-0232 (410) | | |
| RT-0233 (996) | | |
| RA-0234 (1265) | | |
| BM-0235 (2305) | | |
| Unit # na (2305) | | |
| Unit # na (1265) | | |
| Unit # na  (410) | | |
| RT-0229 (1102 Merge) | | |
| BT-0228 (410) | | |
| BT-0219 (410) | | |
| BT-0209 (410) | | |
| RA-0227 (1265) | | |
| RT-0225 (1102) | | |
| RA-0218 (1265) | | |
| RT-0215 (1102) | | |
| RT-0214 (1102) | | |

| Group ONE | Group TWO | Group THREE |
|---|---|---|
| RA-0208 (1265) | | |
| RT-0207 (996) | | |
| RT-0205 (1102) | | |
| RT-0204 (1102) | | |
| RA-0201 (1265) | | |
| RA-0203 (1265) | | |
| RA-0211 (1265) | | |
| RA-0213 (1265) | | |
| RA-0221 (1265) | | |
| RA-0223 (1265) | | |
| Shipping Sorter Mezzanine Area | | |
| BT-0306A (Induction) | | |
| RT-0310 (2305) | | |
| RA-0301 (1265) | | |
| BM-0302 (2305) | | |
| BT-0303 Spiral | | |
| BT-0304 (Spiral) | | |

We at Dematic would like to thank you for the opportunity to assist you in your equipment service needs.

If you have any questions, or require additional information, please contact Customer Service at 1-800-530-9153.

Thank you and we look forward to servicing Radio Shack's equipment in the future.

Sincerely,


John Pino
Dematic Field Service Technician

# Photos of Group TWO Issues

| Unit Number | Issue Identified |
|---|---|
| SS-0307 (PS-140 Positive Sorter) - 50% salvageable. | This sorter has frame damage to 3 middle bed sections and the discharge end is severely damaged from exposure to fire. |
| |  |

Service Report
Radio Shack

| Unit Number | Issue Identified |
|---|---|
| |  |

| Unit Number | Issue Identified |
|---|---|
|  |  |

GAM
Account Number: 4145183 - 001

### EQUIPMENT PURCHASE INVOICE AND BILL OF SALE

Account No # : 4145183 - 001

Invoice Number: 902680

Invoice Date: 03/11/2008

Due Date: 03/18/2008

**Buyer:**

Sc Kiosks, Inc.
300 Radio Shack Circle
Mail Stop Wswf6-108
Fort Worth, TX, 761021964

Attn: Judy Mccampbell

**Seller:**

General Electric Capital Corporation
10 Riverview Dr.
Danbury, CT 06810

| | | |
|---|---|---|
| Purchase Price | $895,200.80 | REMIT TO: |
| Sales Tax on Purchase | $62,664.06 | GE Capital |
| Property Tax | $104,683.30 | 500 First Avenue |
| Late Charges | $1,813.62 | ARA Lockbox – 640387 |
| | --------------- | Pittsburgh, PA 15219 |
| Total Due | $1,064,361.78 | Attn: Christopher Smyth |

### Equipment Schedule
Please see attached Schedule (A)

Payment of the Total Due quoted above on or prior to the Due Date set forth above by Buyer shall be conclusive evidence of Buyer's agreement to be bound by this Invoice and Bill of Sale and Buyer's receipt and acceptance of the Equipment pursuant to the terms of this Invoice and Bill of Sale

SELLER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, OF ANY KIND OR NATURE EXCEPT THAT (1) BUYER WILL ACQUIRE BY THE TERMS OF THIS INVOICE TITLE TO THE EQUIPMENT FREE FROM ALL ENCUMBRANCES CREATED BY SELLER AND (2) SELLER HAS THE RIGHT TO SELL THE EQUIPMENT. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SELLER MAKES NO WARRANTIES WITH RESPECT TO THE QUALITY, CONTENT, CONDITION, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OF THE EQUIPMENT AND NO WARRANTIES AGAINST PATENT INFRINGEMENT OR THE LIKE. BUYER ACKNOWLEDGES THAT THE ITEMS SOLD HEREUNDER ARE USED AND THAT SELLER IS OR WAS THE LESSOR THEREOF AND DID NOT USE, MAINTAIN OR HAVE OPERATIONAL CONTROL OF THE EQUIPMENT. BUYER ACKNOWLEDGES THAT IT HAS NOT RELIED AND IS NOT RELYING ON ANY REPRESENTATION OR STATEMENT OF CONDITION OF THE EQUIPMENT MADE BY SELLER IN CONNECTION WITH BUYER'S PURCHASE OF THE EQUIPMENT.

Buyer agrees to save and hold harmless Seller from and against any and all federal, state, municipal and local license fees and taxes of any kind of nature, including, but not limited to, any and all excise, personal property, use and sales taxes, and from and against any and all liabilities, obligations, losses, damages, penalties, claims, actions and suits resulting therefrom and imposed upon, incurred by or asserted as a consequence of, the sale of the Equipment to, or the ownership, possession, operation or use of the Equipment by, Buyer

If the Equipment does not secure any other account(s) that you have with GE Commercial Equipment Financing, then certified funds (wire transfer, bank or certified check) are required if you would like to have any liens/titles released within a commercially reasonable time. Providing that any and all amounts paid have been recognized as good and available funds, liens/titles will be released thirty days after receipt of your company check.

This Total Due is quoted as of 02/29/2008 and such quote is valid until 03/02/2008 If Seller received such amount after such date and further amounts are due under the Master Lease Agreement (including any additional or supplemental rents due thereunder), no sale shall be deemed to have taken place until any such further amounts have been received by Seller

| Buyer | Seller |
|---|---|
| Sc Kiosks, Inc. | General Electric Capital Corporation |
| By: _____ | By: _____ |
| Title: _VP REAL ESTATE_ | Title: _ACCT MGR_ |
| Date: _3-13-08_ | Date: _____ |

Schedule (A)

Equipment Description

| ACCOUNT | YEAR | QTY | MAKE | MODEL | S/N | DESCRIPTION |
|---------|------|-----|------|-------|-----|-------------|
| 4145183001 | 0 | 1 | | | | FRAZIER INDUSTRIAL COMPANY VAR |
| 4145183001 | 0 | 1 | | | | SIEMENS DEMATIC CONVEYOR SYSTE |

CS(R020403) 4145183001

**\*LEAS8760\***

AMENDED EQUIPMENT SCHEDULE
SCHEDULE NO. 001
DATED THIS _____
TO MASTER LEASE AGREEMENT
DATED AS OF July 3, 2003

**Lessor & Mailing Address:**

General Electric Capital Corporation
16479 Dallas Parkway #300
Addison, TX 75001-2512

**Lessee & Mailing Address:**

Wireless Retail, Inc.
8800 Chaparral, Suite 300
Scottsdale, AZ 85250

This Schedule is executed pursuant to, and incorporates by reference the terms and conditions of, and capitalized terms not defined herein shall have the meanings assigned to them in, the Master Lease Agreement identified above ("Agreement" said Agreement and this Schedule being collectively referred to as "Lease"). This Schedule, incorporating by reference the Agreement, constitutes a separate instrument of lease.

A.    **Equipment:**   Subject to the terms and conditions of the Lease, Lessor agrees to Lease to Lessee the Equipment described below (the "Equipment").

| Number of Units | Capitalized Lessor's Cost | Manufacturer | Serial Number | Model and Type of Equipment |
|---|---|---|---|---|
| 1 | $1,805,977.00 ✓ | Siemens Dematic | none | Conveyor system per Siemens Dematic proposal number 27844 - Rev. 03 dated 5-14-2003 more fully described on Annex A attached hereto |
| 1 | $382,778.00 ✓ | Frazier Industrial Company | | various racking more fully described on Annex A attached hereto |

Equipment immediately listed above is located at: 481 Airport Industrial Dr, Suite 110, Southaven, De Soto County, MS 38671

B.    **Financial Terms**

| | | | |
|---|---|---|---|
| 1. | Advance Rent (if any): $ 36,272.44 ✓ | 5. | Basic Term Commencement Date: December 15, 2003 |
| 2. | Capitalized Lessor's Cost: $ 2,188,755.00 ✓ | 6. | Lessee Federal Tax ID No.: 760463942 |
| 3. | Basic Term (No. of Months): 60 Months ✓ | 7. | Last Delivery Date: December 15, 2003 |
| 4. | Basic Term Lease Rate Factor: .01657218 ✓ | 8. | Daily Lease Rate Factor: .000276203 |

9.    First Termination Date:  Thirty-six (36) months after the Basic Term Commencement Date.

10.    Interim Rent:  For the period from and including the Lease Commencement Date to but not including the Basic Term Commencement Date ("Interim Period"), Lessee shall pay as rent ("Interim Rent") for each unit of Equipment, the product of the Daily Lease Rate Factor times the Capitalized Lessor's Cost of such unit times the number of days in the Interim Period.  Interim Rent shall be due on  Not Applicable.

11.    Basic Term Rent.  Commencing on  December 15, 2003  and on the same day of each month thereafter (each, a "Rent Payment Date") during the Basic Term, Lessee shall pay as rent ("Basic Term Rent") the product of the Basic Term Lease Rate Factor times the Capitalized Lessor's Cost of all Equipment on this Schedule.

C.    **Tax Benefits**    Depreciation Deductions:

1.    Depreciation method is the 200 % declining balance method, switching to straight line method for the 1st taxable year for which using the straight line method with respect to the adjusted basis as of the beginning of such year will yield a larger allowance, taking into account the 30% or 50% special depreciation allowance and basis adjustment under Section 168(k)(1) of the Code, whichever is applicable.

2.    Recovery Period:  5 years.

3.    Basis: 100 % of the Capitalized Lessor's Cost.



**D. Property Tax**

APPLICABLE TO EQUIPMENT LOCATED IN SOUTHAVEN, MS: Lessee agrees that it will not list any of such Equipment for property tax purposes or report any property tax assessed against such Equipment until otherwise directed in writing by Lessor. Upon receipt of any property tax bill pertaining to such Equipment from the appropriate taxing authority, Lessor will pay such tax and will invoice Lessee for the expense. Upon receipt of such invoice, Lessee will promptly reimburse Lessor for such expense.

Lessor may notify Lessee (and Lessee agrees to follow such notification) regarding any changes in property tax reporting and payment responsibilities.

**E. Article 2A Notice**

IN ACCORDANCE WITH THE REQUIREMENTS OF ARTICLE 2A OF THE UNIFORM COMMERCIAL CODE AS ADOPTED IN THE APPLICABLE STATE, LESSOR HEREBY MAKES THE FOLLOWING DISCLOSURES TO LESSEE PRIOR TO EXECUTION OF THE LEASE, (A) THE PERSON(S) SUPPLYING THE EQUIPMENT IS Siemens Dematic Corp., Frazier Industrial Company (THE "SUPPLIER(S)"), (B) LESSEE IS ENTITLED TO THE PROMISES AND WARRANTIES, INCLUDING THOSE OF ANY THIRD PARTY, PROVIDED TO THE LESSOR BY SUPPLIER(S), WHICH IS SUPPLYING THE EQUIPMENT IN CONNECTION WITH OR AS PART OF THE CONTRACT BY WHICH LESSOR ACQUIRED THE EQUIPMENT AND (C) WITH RESPECT TO SUCH EQUIPMENT, LESSEE MAY COMMUNICATE WITH SUPPLIER(S) AND RECEIVE AN ACCURATE AND COMPLETE STATEMENT OF SUCH PROMISES AND WARRANTIES, INCLUDING ANY DISCLAIMERS AND LIMITATIONS OF THEM OR OF REMEDIES. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE HEREBY WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE IN ARTICLE 2A AND ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE WHICH MAY LIMIT OR MODIFY ANY OF LESSOR'S RIGHTS OR REMEDIES UNDER THE DEFAULT AND REMEDIES SECTION OF THE AGREEMENT.

**F. Stipulated Loss and Termination Value Table***

| Rental Basic | Termination Value Percentage | Loss Value Percentage | Rental | Termination Value Percentage | Stipulated Loss Value Percentage |
|---|---|---|---|---|---|
| 1 | 103.260 | 107.253 | 31 | 63.412 | 68.477 |
| 2 | 102.038 | 106.067 | 32 | 61.982 | 67.084 |
| 3 | 100.808 | 104.872 | 33 | 60.544 | 65.681 |
| 4 | 99.569 | 103.670 | 34 | 59.101 | 64.274 |
| 5 | 98.323 | 102.460 | 35 | 57.654 | 62.863 |
| 6 | 97.070 | 101.242 | 36 | 56.197 | 61.441 |
| 7 | 95.810 | 100.018 | 37 | 54.736 | 60.016 |
| 8 | 94.543 | 98.786 | 38 | 53.270 | 58.585 |
| 9 | 93.267 | 97.546 | 39 | 51.794 | 57.146 |
| 10 | 91.984 | 96.299 | 40 | 50.310 | 55.697 |
| 11 | 90.694 | 95.044 | 41 | 48.821 | 54.244 |
| 12 | 89.395 | 93.781 | 42 | 47.327 | 52.785 |
| 13 | 88.089 | 92.511 | 43 | 45.828 | 51.322 |
| 14 | 86.775 | 91.233 | 44 | 44.324 | 49.854 |
| 15 | 85.453 | 89.947 | 45 | 42.810 | 48.376 |
| 16 | 84.123 | 88.652 | 46 | 41.292 | 46.894 |
| 17 | 82.787 | 87.352 | 47 | 39.769 | 45.406 |
| 18 | 81.445 | 86.046 | 48 | 38.236 | 43.909 |
| 19 | 80.098 | 84.735 | 49 | 34.699 | 42.407 |
| 20 | 78.745 | 83.418 | 50 | 35.156 | 40.900 |
| 21 | 77.394 | 82.092 | 51 | 33.604 | 39.384 |
| 22 | 76.017 | 80.761 | 52 | 32.061 | 37.877 |
| 23 | 74.644 | 79.424 | 53 | 30.512 | 36.364 |
| 24 | 73.263 | 78.078 | 54 | 28.957 | 34.844 |
| 25 | 71.876 | 76.727 | 55 | 27.395 | 33.319 |
| 26 | 70.483 | 75.370 | 56 | 25.827 | 31.786 |
| 27 | 69.081 | 74.004 | 57 | 24.253 | 30.248 |
| 28 | 67.671 | 72.629 | 58 | 22.672 | 28.703 |

|    |        |        |    |        |        |
|----|--------|--------|----|--------|--------|
| 29 | 66.256 | 71.280 | 59 | 21.083 | 27.151 |
| 30 | 64.836 | 69.866 | 60 | 19.491 | 25.593 |

*The Stipulated Loss Value or Termination Value for any unit of Equipment shall be the Capitalized Lessor's Cost of such unit multiplied by the appropriate percentage derived from the above table. In the event that the Lease is for any reason extended, then the last percentage figure shown above shall control throughout any such extended term.

## G. Modifications and Additions for This Schedule Only

For purposes of this Schedule only, the Agreement is amended as follows:

1. The INDEMNIFICATION Section subsection (b) of the Lease is hereby amended by deleting the word "and" immediately preceding "(ii)" on the second line thereof and inserting the following at the end thereof:

; (iii) each item of Equipment constitutes "qualified property" pursuant to Section 168(k) of the Internal Revenue Code of 1986, as now and hereafter amended (the "Code"), and is eligible for the additional first-year depreciation deduction equal to (A) thirty percent (30%) or (B) fifty percent (50%) of 100% of the Capitalized Lessor's Cost of the Equipment contemplated by the Code, whichever is applicable; (iv) the Equipment shall be treated as originally placed in service not earlier than the date of the execution and delivery of this Schedule, or in the event the transaction is a sale -leaseback transaction, Lessee has not placed in service the Equipment subject to this Lease at any time prior to three months before the execution and delivery of this Schedule; (v) Lessee has not arranged to purchase, and Lessor is not purchasing the Equipment pursuant to a binding written contract entered into before September 11, 2001, if clause (iii) (A) above applies, or not before May 06, 2003, if clause (iii) (B) above applies, and (vi) each item of Equipment shall be placed in service before January 1, 2005.

## 2   EQUIPMENT SPECIFIC PROVISIONS

RETURN PROVISIONS: In addition to the provisions provided for in Section XI ("Return of Equipment") of the Lease, and provided that Lessee has elected not exercise its option to purchase or renew the Equipment, Lessee shall, at its expense:

(A) at least one hundred eighty (180) days and not more than two hundred forty (240) days prior to the expiration of the term of this Lease, provide to lessor detailed inventory of all components of the Equipment. The inventory should include, but not be limited to, a listing of all model, serial numbers, and size description (length width, height, diameter) for all items of Equipment;

(B) at least one hundred twenty (120) days prior to the expiration of the term of the Lease, upon reasonable notice by Lessor, make the Equipment available for on-site operational inspections by potential purchasers and provide personnel, power and other requirements necessary to demonstrate electrical, mechanical and computerized systems for each item of the Equipment;

(C) at least one hundred twenty (120) days prior to expiration or earlier termination of the Lease, upon receiving reasonable notice from Lessor, provide or cause the vendor(s) or manufacturer(s) to provide to Lessor the following documents: (1) one set of service manuals, blue prints, process flow diagrams and operating manuals including replacements and/or additions thereto, such that all documentation is completely up -to-date; (2) one set of documents, detailing equipment configuration, operating requirements, maintenance records, and other technical data concerning the set -up and operation of the Equipment, including replacements and/or additions thereto, such that all documentation is completely up -to-date;

(D) at least ninety (90) days prior to the redelivery of the Equipment, Lessee shall at its own expense, have a manufacturer's representative(s) or a qualified equipment maintenance provider(s), acceptable to Lessor, perform a comprehensive physical inspection(s) to: (1) ensure the equipment is clean and cosmetical acceptable, (2) that the equipment will operate or is capable of being operated in accordance with the manufacturer's recommendations, and (3) in such condition so that may be immediately installed and placed into use in a similar warehouse environment. There shall be no missing screws, bolts, fasteners, etc. The Equipment will be free from all large scratches and dents. All Equipment will be in good working condition and conform to all applicable local, state, federal laws, and health and safety guidelines. There shall be no evidence of extreme use, abuse or overloading, i.e. bowed, cracked, bent or sagging racking, shelving and/or conveyor sections, etc. At equipment enhancements or additions will revert to the Lessor upon expiration or earlier termination of the lease and shall not effect, in an adverse manner, the Fair Market Value of the Equipment at Lease Expiration. Such additions and enhancements shall be made only with prior written approval of the Lessor whose approval will not be unnecessarily withheld.

(E) provided that, if during such inspection, the Authorized Inspector finds the Equipment not in compliance with Subsection (d) above, then Lessee shall repair or replace any such Equipment with identical or better quality and, after corrective measures are completed, Lessee will provide for a follow -up inspection of the Equipment by the Authorized Inspector as outlined in Subsection (d) above;

(F) permit Lessor or Lessor's authorized representative to video tape the Equipment "under power" at the lessee's facility at a time during normal working hours mutually agreeable to the Lessor and Lessee prior to de -installation.

(G) properly remove all Lessee installed markings which are not necessary for the installation, operation, maintenance or repair of the Equipment;

(H) at Lessor's choice, either (1) allow Lessor, at Lessor's expense, and provided Lessor has provided reasonable notice to Lessee, to arrange for an on-site auction of the Equipment in an assembled and functional state. Any such auction will be conducted no more than sixty (60) days prior to Lease termination and will be conducted in a manner which will not interfere with Lessee's business operations, or (2) at Lessee's expense, provide for the de-installation, packing) and transporting the Equipment to include, but not limited to, the following: (a) the manufacturer's representative(s) or other person(s) acceptable to Lessor; shall de-install all Equipment including all wire, cable, and mounting hardware; (b) if applicable, the Lessee shall ensure all necessary permits and labor are obtained to redeliver the Equipment; (c) the Equipment shall be packed properly and in accordance to the manufacturer's recommendations; (d) the Lessee shall transport the Equipment in a manner consistent with the manufacturer's recommendations and practices to anywhere within the continental United States as Lessor shall direct; and shall have the equipment unloaded at such location; (e) obtain and pay for a policy(s) of transit insurance for the Equipment in an amount equal to the replacement value of the Equipment and Lessor shall be named as the loss payee on all such policies of insurance, (3) provide free safe storage for the Equipment for a period not to exceed sixty (60) days from Lease expiration or early return of the equipment.

3    LEASE TERM OPTIONS

Early Lease Term Options

The Lease is amended by adding the following thereto:

EARLY PURCHASE OPTION:

(a) Provided that the Lease has not been earlier terminated and provided further that Lessee is not in default under the Lease or any other agreement between Lessor and Lessee, Lessee may, UPON AT LEAST 30 DAYS BUT NO MORE THAN 270 DAYS PRIOR WRITTEN NOTICE TO LESSOR OF LESSEE'S IRREVOCABLE ELECTION TO EXERCISE SUCH OPTION, purchase on an AS IS BASIS all (but not less than all) of the Equipment listed and described in this Schedule on the rent payment date (the "Early Purchase Date") which is 48 months from the Basis Term Commencement Date for a price equal to THIRTY-FOUR AND 69/100 percent (34.69%) of the Capitalized Lessor's Cost (the "FMV Early Option Price"), plus all applicable sales taxes.

Lessor and Lessee agree that the FMV Early Option Price is a reasonable prediction of the Fair Market Value (as such term is defined in the PURCHASE OPTION Section subsection (b) of the Lease hereof) of the Equipment at the time the option is exercisable. Lessor and Lessee agree that if Lessee makes any non-severable improvement to the Equipment which increases the value of the Equipment and is not required or permitted by the MAINTENANCE Section or the RETURN OF EQUIPMENT Section of the Lease prior to lease expiration, then at the time of such option being exercised, Lessor and Lessee shall adjust the purchase price to reflect any addition to the price anticipated to result from such improvement. (The purchase option granted by this subsection shall be referred to herein as the "Early Purchase Option".)

(b) If Lessee exercises its Early Purchase Option with respect to the Equipment leased hereunder, then on the Early Purchase Option Date, Lessee shall pay to Lessor any Rent and other sums due and unpaid on the Early Purchase Option Date and Lessee shall pay the FMV Early Option Price, plus all applicable sales taxes, to Lessor in cash.

H.    Payment Authorization

You are hereby irrevocably authorized and directed to deliver and apply the proceeds due under this Schedule as follows:

| Company Name | Address | Amount |
|---|---|---|
| Siemens Dematic Corporation | | $1,805,977.00 |
| Frazier Industrial Company | | 382,778.00 |
| Total | | $2,188,755.00 |

This authorization and direction is given pursuant to the same authority authorizing the above-mentioned financing.

Except as expressly modified hereby, all terms and provisions of the Agreement shall remain in full force and effect. This Schedule is not binding or effective with respect to the Agreement or Equipment until executed on behalf of Lessor and Lessee by authorized representatives of Lessor and Lessee, respectively.

SEE SIGNATURE BLOCKS NEXT PAGE

IN WITNESS WHEREOF, Lessee and Lessor have caused this Schedule to be executed by their duly authorized representatives as of the date first above written.

LESSOR:

General Electric Capital Corporation

By: _____

Name: Joyce Taylor

Title: Sr. Risk Analyst

LESSEE:

Wireless Retail, Inc.

By: _____

Name: J. Dan mc mahan

Title: Chairman

GE CAPITAL SCHEDULE #001
Equipment Schedule

Interest Rate Calculation          $36,479.25
Rate from calculation above               0

| Pymt | | Interest | Principal Pymt | Total Mnthly Payment | Outstanding Principal |
|---|---|---|---|---|---|
| | | | | | 2,188,755.00 |
| 1 | Jan-04 | 0.00 | 36,272.44 | 36,272.44 | 2,152,482.56 |
| 2 | Feb-04 | 0.00 | 36,272.44 | 36,272.44 | 2,116,210.12 |
| 3 | Mar-04 | 0.00 | 36,272.44 | 36,272.44 | 2,079,937.68 |
| 4 | Apr-04 | 0.00 | 36,272.44 | 36,272.44 | 2,043,665.24 |
| 5 | May-04 | 0.00 | 36,272.44 | 36,272.44 | 2,007,392.80 |
| 6 | Jun-04 | 0.00 | 36,272.44 | 36,272.44 | 1,971,120.36 |
| 7 | Jul-04 | 0.00 | 36,272.44 | 36,272.44 | 1,934,847.92 |
| 8 | Aug-04 | 0.00 | 36,272.44 | 36,272.44 | 1,898,575.48 |
| 9 | Sep-04 | 0.00 | 36,272.44 | 36,272.44 | 1,862,303.04 |
| 10 | Oct-04 | 0.00 | 36,272.44 | 36,272.44 | 1,826,030.60 |
| 11 | Nov-04 | 0.00 | 36,272.44 | 36,272.44 | 1,789,758.16 |
| 12 | Dec-04 | 0.00 | 36,272.44 | 36,272.44 | 1,753,485.72 |
| 13 | Jan-05 | 0.00 | 36,272.44 | 36,272.44 | 1,717,213.28 |
| 14 | Feb-05 | 0.00 | 36,272.44 | 36,272.44 | 1,680,940.84 |
| 15 | Mar-05 | 0.00 | 36,272.44 | 36,272.44 | 1,644,668.40 |
| 16 | Apr-05 | 0.00 | 36,272.44 | 36,272.44 | 1,608,395.96 |
| 17 | May-05 | 0.00 | 36,272.44 | 36,272.44 | 1,572,123.52 |
| 18 | Jun-05 | 0.00 | 36,272.44 | 36,272.44 | 1,535,851.08 |
| 19 | Jul-05 | 0.00 | 36,272.44 | 36,272.44 | 1,499,578.64 |
| 20 | Aug-05 | 0.00 | 36,272.44 | 36,272.44 | 1,463,306.20 |
| 21 | Sep-05 | 0.00 | 36,272.44 | 36,272.44 | 1,427,033.76 |
| 22 | Oct-05 | 0.00 | 36,272.44 | 36,272.44 | 1,390,761.32 |
| 23 | Nov-05 | 0.00 | 36,272.44 | 36,272.44 | 1,354,488.88 |
| 24 | Dec-05 | 0.00 | 36,272.44 | 36,272.44 | 1,318,216.44 |
| 25 | Jan-06 | 0.00 | 36,272.44 | 36,272.44 | 1,281,944.00 |
| 26 | Feb-06 | 0.00 | 36,272.44 | 36,272.44 | 1,245,671.56 |
| 27 | Mar-06 | 0.00 | 36,272.44 | 36,272.44 | 1,209,399.12 |
| 28 | Apr-06 | 0.00 | 36,272.44 | 36,272.44 | 1,173,126.68 |
| 29 | May-06 | 0.00 | 36,272.44 | 36,272.44 | 1,136,854.24 |
| 30 | Jun-06 | 0.00 | 36,272.44 | 36,272.44 | 1,100,581.80 |
| 31 | Jul-06 | 0.00 | 36,272.44 | 36,272.44 | 1,064,309.36 |
| 32 | Aug-06 | 0.00 | 36,272.44 | 36,272.44 | 1,028,036.92 |
| 33 | Sep-06 | 0.00 | 36,272.44 | 36,272.44 | 991,764.48 |
| 34 | Oct-06 | 0.00 | 36,272.44 | 36,272.44 | 955,492.04 |
| 35 | Nov-06 | 0.00 | 36,272.44 | 36,272.44 | 919,219.60 |
| 36 | Dec-06 | 0.00 | 36,272.44 | 36,272.44 | 882,947.16 |
| 37 | Jan-07 | 0.00 | 36,273.44 | 36,273.44 | 846,673.72 |
| 38 | Feb-07 | 0.00 | 36,274.44 | 36,274.44 | 810,399.28 |
| 39 | Mar-07 | 0.00 | 36,275.44 | 36,275.44 | 774,123.84 |
| 40 | Apr-07 | 0.00 | 36,276.44 | 36,276.44 | 737,847.40 |

| | | | | | |
|---|---|---|---|---|---|
| 41 | May-07 | 0.00 | 36,277.44 | 36,277.44 | 701,569.96 |
| 42 | Jun-07 | 0.00 | 36,278.44 | 36,278.44 | 685,291.52 |
| 43 | Jul-07 | 0.00 | 36,279.44 | 36,279.44 | 629,012.08 |
| 44 | Aug-07 | 0.00 | 36,280.44 | 36,280.44 | 592,731.64 |
| 45 | Sep-07 | 0.00 | 36,281.44 | 36,281.44 | 556,450.20 |
| 46 | Oct-07 | 0.00 | 36,282.44 | 36,282.44 | 520,167.76 |
| 47 | Nov-07 | 0.00 | 36,283.44 | 36,283.44 | 483,884.32 |
| 48 | Dec-07 | 0.00 | 36,284.44 | 36,284.44 | 447,599.88 |
| 49 | Jan-08 | 0.00 | 36,285.44 | 36,285.44 | 411,314.44 |
| 50 | Feb-08 | 0.00 | 36,286.44 | 36,286.44 | 375,028.00 |
| 51 | Mar-08 | 0.00 | 36,287.44 | 36,287.44 | 338,740.56 |
| 52 | Apr-08 | 0.00 | 36,288.44 | 36,288.44 | 302,452.12 |
| 53 | May-08 | 0.00 | 36,289.44 | 36,289.44 | 266,162.68 |
| 54 | Jun-08 | 0.00 | 36,290.44 | 36,290.44 | 229,872.24 |
| 55 | Jul-08 | 0.00 | 36,291.44 | 36,291.44 | 193,580.80 |
| 56 | Aug-08 | 0.00 | 36,292.44 | 36,292.44 | 157,288.36 |
| 57 | Sep-08 | 0.00 | 36,293.44 | 36,293.44 | 120,994.92 |
| 58 | Oct-08 | 0.00 | 36,294.44 | 36,294.44 | 84,700.48 |
| 59 | Nov-08 | 0.00 | 36,295.44 | 36,295.44 | 48,405.04 |
| 60 | Dec-08 | 0.00 | 36,296.44 | 36,296.44 | 12,108.60 |

| GE Capital | | | GE Capital | | | GE Capital | |
|---|---|---|---|---|---|---|---|
| Term Months | 60 | | Term Months | 60 | | Term Months | 48 |
| Equipment Cost | 1,805,977 | | Equipment Cost | 382,778 | | Equipment Cost | 211,960 |
| Rate Factor | 1.657218% | | Rate Factor | 1.657218% | | Rate Factor | 1.793614% |
| EBO 48 months | 34.69% | | EBO 48 months | 34.69% | | EBO at 48 mos. | 47.2% |
| | | | | | | | |
| Implicit Rate | 5.27% | | Implicit Rate | 5.27% | | Implicit Rate | 5.41% |
| NPV of min pymts | 1,582,460 | | NPV of min pymts | 335,404 | | NPV of min pymts | 164,690 |
| NVP/Cost | 87.6% | | NVP/Cost | 87.6% | | NVP/Cost | 77.7% |

| | Min Pmts | Impl Rate | | Min Pmts | Impl Rate | | Min Pmts | Impl Rate |
|---|---|---|---|---|---|---|---|---|
| 1 | 29,929 | (1,776,048) | 1 | 6,343 | (376,435) | 1 | 3,805.98 | (208,154) |
| 2 | 29,929 | 29,929 | 2 | 6,343 | 6,343 | 2 | 3,806 | 3,806 |
| 3 | 29,929 | 29,929 | 3 | 6,343 | 6,343 | 3 | 3,806 | 3,806 |
| 4 | 29,929 | 29,929 | 4 | 6,343 | 6,343 | 4 | 3,806 | 3,806 |
| 5 | 29,929 | 29,929 | 5 | 6,343 | 6,343 | 5 | 3,806 | 3,806 |
| 6 | 29,929 | 29,929 | 6 | 6,343 | 6,343 | 6 | 3,806 | 3,806 |
| 7 | 29,929 | 29,929 | 7 | 6,343 | 6,343 | 7 | 3,806 | 3,806 |
| 8 | 29,929 | 29,929 | 8 | 6,343 | 6,343 | 8 | 3,806 | 3,806 |
| 9 | 29,929 | 29,929 | 9 | 6,343 | 6,343 | 9 | 3,806 | 3,806 |
| 10 | 29,929 | 29,929 | 10 | 6,343 | 6,343 | 10 | 3,806 | 3,806 |
| 11 | 29,929 | 29,929 | 11 | 6,343 | 6,343 | 11 | 3,806 | 3,806 |
| 12 | 29,929 | 29,929 | 12 | 6,343 | 6,343 | 12 | 3,806 | 3,806 |
| 13 | 29,929 | 29,929 | 13 | 6,343 | 6,343 | 13 | 3,806 | 3,806 |
| 14 | 29,929 | 29,929 | 14 | 6,343 | 6,343 | 14 | 3,806 | 3,806 |
| 15 | 29,929 | 29,929 | 15 | 6,343 | 6,343 | 15 | 3,806 | 3,806 |
| 16 | 29,929 | 29,929 | 16 | 6,343 | 6,343 | 16 | 3,806 | 3,806 |
| 17 | 29,929 | 29,929 | 17 | 6,343 | 6,343 | 17 | 3,806 | 1,806 |
| 18 | 29,929 | 29,929 | 18 | 6,343 | 6,343 | 18 | 3,806 | |
| 19 | 29,929 | 29,929 | 19 | 6,343 | 6,343 | 19 | 3,806 | 3,806 |
| 20 | 29,929 | 29,929 | 20 | 6,343 | 6,343 | 20 | 3,806 | 3,806 |
| 21 | 29,929 | 29,929 | 21 | 6,343 | 6,343 | 21 | 3,806 | 3,806 |
| 22 | 29,929 | 29,929 | 22 | 6,343 | 6,343 | 22 | 3,806 | 3,806 |
| 23 | 29,929 | 29,929 | 23 | 6,343 | 6,343 | 23 | 3,806 | 3,806 |
| 24 | 29,929 | 29,929 | 24 | 6,343 | 6,343 | 24 | 3,806 | 3,806 |
| 25 | 29,929 | 29,929 | 25 | 6,343 | 6,343 | 25 | 3,806 | 3,806 |
| 26 | 29,929 | 29,929 | 26 | 6,343 | 6,343 | 26 | 3,806 | 3,806 |
| 27 | 29,929 | 29,929 | 27 | 6,343 | 6,343 | 27 | 3,806 | 3,806 |
| 28 | 29,929 | 29,929 | 28 | 6,343 | 6,343 | 28 | 3,806 | 3,806 |
| 29 | 29,929 | 29,929 | 29 | 6,343 | 6,343 | 29 | 3,806 | 3,806 |
| 30 | 29,929 | 29,929 | 30 | 6,343 | 6,343 | 30 | 3,806 | 3,806 |
| 31 | 29,929 | 29,929 | 31 | 6,343 | 6,343 | 31 | 3,806 | 3,806 |
| 32 | 29,929 | 29,929 | 32 | 6,343 | 6,343 | 32 | 3,806 | 3,806 |
| 33 | 29,929 | 29,929 | 33 | 6,343 | 6,343 | 33 | 3,806 | 3,806 |
| 34 | 29,929 | 29,929 | 34 | 6,343 | 6,343 | 34 | 3,806 | 3,806 |
| 35 | 29,929 | 29,929 | 35 | 6,343 | 6,343 | 35 | 3,806 | 3,806 |
| 36 | 29,929 | 29,929 | 36 | 6,343 | 6,343 | 36 | 3,806 | 3,806 |
| 37 | 29,929 | 29,929 | 37 | 6,343 | 6,343 | 37 | 3,806 | 100,136 |
| 38 | 29,929 | 29,929 | 38 | 6,343 | 6,343 | 38 | 3,806 | |
| 39 | 29,929 | 29,929 | 39 | 6,343 | 6,343 | 39 | 3,806 | |
| 40 | 29,929 | 29,929 | 40 | 6,343 | 6,343 | 40 | 3,806 | |
| 41 | 29,929 | 29,929 | 41 | 6,343 | 6,343 | 41 | 3,806 | |
| 42 | 29,929 | 29,929 | 42 | 6,343 | 6,343 | 42 | 3,806 | |
| 43 | 29,929 | 29,929 | 43 | 6,343 | 6,343 | 43 | 3,806 | |
| 44 | 29,929 | 29,929 | 44 | 6,343 | 6,343 | 44 | 3,806 | |
| 45 | 29,929 | 29,929 | 45 | 6,343 | 6,343 | 45 | 3,806 | |
| 46 | 29,929 | 29,929 | 46 | 6,343 | 6,343 | 46 | 3,806 | |
| 47 | 29,929 | 29,929 | 47 | 6,343 | 6,343 | 47 | 3,806 | |
| 48 | 29,929 | 29,929 | 48 | 6,343 | 6,343 | 48 | 3,806 | |
| 49 | 29,929 | 626,493 | 49 | 6,343 | 132,786 | | | |
| 50 | 29,929 | | 50 | 6,343 | | | | |
| 51 | 29,929 | | 51 | 6,343 | | | | |
| 52 | 29,929 | | 52 | 6,343 | | | | |
| 53 | 29,929 | | 53 | 6,343 | | | | |
| 54 | 29,929 | | 54 | 6,343 | | | | |
| 55 | 29,929 | | 55 | 6,343 | | | | |
| 56 | 29,929 | | 56 | 6,343 | | | | |
| 57 | 29,929 | | 57 | 6,343 | | | | |
| 58 | 29,929 | | 58 | 6,343 | | | | |
| 59 | 29,929 | | 59 | 6,343 | | | | |
| 60 | 29,929 | | 60 | 6,343 | | | | |

# SECURITY SYSTEM

**WIRELESS RETAIL, INC.**
**National Distribution Center**
**Southaven, Mississippi**
**October 1, 2004**

| Quantity | Manufacturer | Model | Description | Serial Number | Fair Value - Continued Use $ |
|---|---|---|---|---|---|
| **OFFICE FURNITURE** | | | | | |
| _Capital Lease_ | | | | | |
| | | | Office furniture consisting of desks, chairs, cubicles, cabinets, partitions, vertical files, break room furniture, lockers, and other related items | | 172,000 |
| **MACHINERY** | | | | | |
| 1 | Hoshizaki America, Inc. | DCM500 | Ice dispenser, with stand | | |
| 1 | True Manufacturing Company | T35 | 35-cubic-foot cap, solid door type refrigerator, with 2 swung doors | 1-3663664 | 3,900 |
| 1 | True Manufacturing Company | T35 | 35-cubic-foot cap, solid door type refrigerator | 1-3663661 | 2,200 |
| 1 | Raymond | 218-OPC22 | 2,200# cap, electric stand-up rider forklift truck | 218-98-01116 | 2,200 |
| | | | Total Machinery | | 11,000 |
| **SECURITY SYSTEM** | | | | | |
| 1 | Integral Technologies | | Security system consisting of interior and exterior cameras, monitors, motion detectors, door contacts, video input storage computer, cabinets, switching, wiring, and other related items | | 19,300 |

161,000

American Appraisal Associates

**WIRELESS RETAIL, INC.**
National Distribution Center
Southhaven, Mississippi
October 1, 2004

| Quantity | Manufacturer | Model | Description | Serial Number | Fair Value - Continued Use $ |
|---|---|---|---|---|---|
| 1 | | | Security metal detector | | 2,000 |
| **Total Security System** | | | | | 163,000 |
| **LICENSED VEHICLES** | | | | | |
| 1 | Dodge | Caravan | 1999 model cargo van | 2B4FP2539XR368498 | 4,800 |
| 1 | Ford | Windstar | 2002 model cargo van | 2FMZA50442BB137788 | 11,900 |
| **Total Licensed Vehicles** | | | | | 16,700 |
| **GRAND TOTAL** | | | | | 371,000 |

American Appraisal Associates

87

EXHIBIT D    EXHIBIT C

IMPROVEMENTS AND BETTERMENTS

## J. S. Held, Incorporated

1025 Rose Creek Drive
Suite 620-188
Woodstock, GA 30189

| | | | |
|---|---|---|---|
| Client: | Radio Shack | Home: | (404) 479-4057 |
| | | Business: | (404) 479-4057 |
| Property: | 481 Airport Industrial Blvd | | |
| | Memphis, TN | | |
| Operator Info: | | | |
| Operator: | CHRISTYB | | |
| Estimator: | Christy Ball | Business: | (770) 928-7446 |
| Business: | 1025 Rose Creek Drive, Ste. 620-188 | | |
| | Woodstock, GA  30189 | | |
| Company: | Mr. Bill Adams | Business: | (972) 628-5060 |
| Business: | McLaurens Young | | |
| | Dallas, TX  75243 | | |
| Type of Estimate: | Tornado | | |
| Dates: | | | |
| Date Entered: | 05/06/08 | | |
| Price List: | TNME2S8B | | |
| | Restoration/Service/Remodel with Service Charges Factored In | | |
| Estimate: | IDI-RADIOSH080908 | | |
| File Number: | 16004205 | | |

This estimate is preliminary, subject to review and revision, and for discussion purposes only.

This estimate is based on performing necessary repairs to the remaining structure, and does not consider replacement of undamaged items.

## J. S. Held, Incorporated

1025 Rose Creek Drive
Suite 620-188
Woodstock, GA 30189

**IDI-RADIOSH080908**

**Main Office**

**Room: Reception 101**      LxWxH  26'3" x 15'0" x 9'0"

**Subroom 1: Offset**      LxWxH  12'0" x 5'0" x 9'0"

**Missing Wall:**      1 - 5'0" X 9'0"      Opens into 0      Goes to Floor/Ceiling

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| R&R Suspended ceiling system - 2' x 4' | 453.75 SF@ | 1.90= | 862.13 |
| R&R 5/8" drywall - hung, taped, with smooth wall finish | 958.50 SF@ | 1.82= | 1,744.47 |
| Seal/prime the walls - one coat | 958.50 SF@ | 0.29= | 277.97 |
| R&R Batt insulation - 6" - R19 | 453.75 SF@ | 0.99= | 449.21 |
| R&R Cove base molding - rubber or vinyl, 4" high | 106.50 LF@ | 1.92= | 204.49 |
| R&R Glue down carpet - Commercial grade | 453.75 SF@ | 4.76= | 2,159.85 |
| R&R Storefront door - bronze anod. frame, 3'x 7' - Double gl. | 2.00 EA@ | 669.37= | 1,338.74 |
| R&R Fluorescent - acoustic grid fixture - four tube, 2'x 4' | 7.00 EA@ | 168.73= | 1,181.11 |
| R&R Steel door frame - 3' opening | 1.00 EA@ | 151.48= | 151.48 |
| R&R Wood door - birch face, solid core, 7'0 | 1.00 EA@ | 168.57= | 168.57 |
| Paint door slab only - 2 coats (per side) | 2.00 EA@ | 15.99= | 31.98 |
| R&R Door hinge, 4" ball bearing (set of 3) | 1.00 EA@ | 59.26= | 59.26 |
| R&R Lockset - keyed - Medium duty - Commercial grade | 1.00 EA@ | 120.59= | 120.59 |
| R&R Door stop - Wall or floor mounted | 1.00 EA@ | 12.62= | 12.62 |
| Paint door frame - 2 coats (per side) | 2.00 EA@ | 15.93= | 31.86 |

**Room: Conference**      LxWxH  31'10" x 15'0" x 8'0"

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| R&R Suspended ceiling system - 2' x 4' | 477.50 SF@ | 1.90= | 907.26 |
| R&R 5/8" drywall - hung, taped, with smooth wall finish | 749.33 SF@ | 1.82= | 1,363.79 |
| Seal/prime the walls - one coat | 749.33 SF@ | 0.29= | 217.31 |
| R&R Batt insulation - 6" - R19 | 477.50 SF@ | 0.99= | 472.73 |
| R&R Cove base molding - rubber or vinyl, 4" high | 93.67 LF@ | 1.92= | 179.84 |

## J. S. Held, Incorporated

1025 Rose Creek Drive
Suite 620-188
Woodstock, GA 30189

### CONTINUED - Conference

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| R&R Glue down carpet - Commercial grade | 477.50 SF@ | 4.76= | 2,272.91 |
| R&R Steel frame glazed openings | 10.25 SF@ | 25.68= | 263.22 |
| R&R Steel door frame - 3' opening | 1.00 EA@ | 151.48= | 151.48 |
| Paint door/sidelight window frame - 2 coats (per side) | 2.00 EA@ | 31.86= | 63.72 |
| R&R Wood door - birch face, solid core, 7'0 | 1.00 EA@ | 168.57= | 168.57 |
| Paint door slab only - 2 coats (per side) | 2.00 EA@ | 15.99= | 31.98 |
| R&R Door hinge, 4" ball bearing (set of 3) | 1.00 EA@ | 59.26= | 59.26 |
| R&R Lockset - keyed - Medium duty - Commercial grade | 1.00 EA@ | 120.59= | 120.59 |
| R&R Door stop - Wall or floor mounted | 1.00 EA@ | 12.62= | 12.62 |
| R&R Fluorescent - acoustic grid fixture - four tube, 2'x 4' | 8.00 EA@ | 168.73= | 1,349.84 |

**Room: Corridor 102, 103, 106**                                    LxWxH  14'0" x 5'6" x 9'0"

**Subroom 1: Offset 1**                                             LxWxH  9'0" x 6'0" x 9'0"

Missing Wall:          1 - 8'6" X 9'0"          Opens into 0          Goes to Floor/Ceiling
**Subroom 2: Corridor 103**                                         LxWxH  41'0" x 5'6" x 9'0"

Missing Wall:          1 - 5'6" X 9'0"          Opens into 1          Goes to Floor/Ceiling
**Subroom 3: Offset 107**                                           LxWxH  13'0" x 6'0" x 9'0"

Missing Wall:          1 - 13'0" X 9'0"         Opens into 2          Goes to Floor/Ceiling
**Subroom 4: Offset 104**                                           LxWxH  6'0" x 4'0" x 9'0"

Missing Wall:          1 - 6'0" X 9'0"          Opens into 2          Goes to Floor/Ceiling
**Subroom 5: Corridor 106**                                         LxWxH  53'3" x 10'0" x 9'0"

Missing Wall:          1 - 9'0" X 9'0"          Opens into 2          Goes to Floor/Ceiling

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| R&R Suspended ceiling system - 2' x 4' | 991.00 SF@ | 1.90= | 1,882.90 |

IDI-RADIOSH080908                                            08/13/2008   Page: 3