**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

| | | |
|---|---|---|
| ------------------------------------------------------------------------ x | : | **Case No. 08-03423-EE** |
| In re: | : | |
| | : | **Chapter 11** |
| WAREHOUSE 86, LLC, | : | |
| | : | |
| Debtor. | : | |
| | : | |
| ------------------------------------------------------------------------ x | : | |
| | : | |
| SCK, INC. and RADIOSHACK CORPORATION, | : | **Adv. Pro. No. 09-00139-EE** |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| WAREHOUSE 86, LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| ------------------------------------------------------------------------ x | | |

**MOTION TO EXTEND DISCOVERY AND OTHER RELIEF**

Plaintiffs, SCK, Inc., f/k/a SC Kiosks, Inc. ("SCK"), and RadioShack Corporation ("RadioShack"), file this Motion to Extend Discovery and Other Relief (the "Motion"), as follows:

**Preliminary Statement**

Due to circumstances beyond the control of Plaintiffs, discovery cannot be completed on or before the discovery deadline, presently set for June 10. Plaintiffs have diligently worked to complete discovery which remains ongoing. For example, Plaintiffs will take the deposition of Eric Eilertsen ("Eilertsen"), former CEO of Warehouse 86 LLC, on June 21, 2010, which is beyond the present discovery deadline but with the consent of the Debtor. However, the Debtor

has not agreed to allow the depositions of other witnesses to be taken after the June 10 deadline, although Plaintiffs disclosed several weeks ago their intentions to conduct these depositions and have been working diligently toward that end. In effect, the Debtor's position is akin to saying, "Sorry, Plaintiffs, but you ran out of time". As set forth herein, "running out of time" is not the fault of Plaintiffs and is a position which does not promote judicial economy.

On May 28, 2010, the Debtor filed its Motion for Status Conference (Dkt. 50). The Court has set the status conference for June 22, 2010 (Dkt. 51). Plaintiffs request this Motion be heard in conjunction with the June 22, 2010 status conference. As indicated to the Court by counsel for Plaintiffs in the preliminary telephonic status conference on June 1, 2010, Plaintiffs request an initial extension of the discovery deadline from June 10, 2010 until June 22, 2010 at which time the Court will conduct the status conference. The extension will allow Plaintiffs to conduct the previously agreed upon deposition of Eilertsen, and possibly the deposition of Richard Booker, if the Debtor will reconsider its position.

Plaintiffs further request an extension of the discovery deadline for an additional forty-five (45) days from and after June 22, 2010, to complete discovery as set forth below.

1. **Discovery is permissible into areas relating to the parties' claims and defenses.**

Rule 26(b)(1) allows discovery into "any nonprivileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26. Plaintiffs initiated this cause of action seeking a declaratory judgment that Plaintiffs are entitled[1] to all of the Insurance Proceeds[2] paid by Employers Mutual Casualty Insurance Company's ("EMC"). The February 5, 2008 tornado loss

---

[1] Under the Sublease between SCK and the Debtor, the Debtor was obligated to insure against "all risks" and assure that SCK was named as an "additional insured" in the Debtor's property and casualty policy. See, generally, Plaintiffs' Response and Memorandum in Opposition to Amended Motion for Partial Summary Judgment (Dkt. 36) and Plaintiffs' Amended Response to Amended Motion for Partial Summary Judgment (Dkt. 40).

[2] EMC paid $2,099,882.35 (the "Insurance Proceeds") under an EMC policy for the February 5, 2008 tornado loss and the February 11, 2008 fire loss. EMC paid jointly to the Debtor and SCK $2,089,882.35 of the Insurance Proceeds. The Insurance Proceeds were deposited with the registry of the Court.

- 2 -

and the February 11, 2008 tornado loss[3] resulted in Plaintiffs suffering approximately $2,800,000.00 in damages,[4] an amount clearly in excess of the Insurance Proceeds.

The Debtor asserted a Counterclaim against Plaintiffs seeking recovery of an unspecified portion of the Insurance Proceeds. (Dkt. 6). The Debtor filed its Amended Motion for Partial Summary Judgment (Dkt. 30), alleging that it is entitled to the immediate release of $851,825.75 of the Insurance Proceeds, pursuant to EMC's statements of loss.  Debtor apparently believes that the categories negotiated and adjusted by the Debtor with EMC are not only persuasive, but also controlling, in this Court's determination of the equitable distribution of the Insurance Proceeds. Plaintiffs have set forth multiple reasons why the negotiated, adjusted categories by EMC and the Debtor are neither binding upon Plaintiffs nor controlling for the Court, or persuasive for that matter, in their Response and Memorandum in Opposition to Amended Motion for Partial Summary Judgment (Dkt. 36) (see also Plaintiffs' Amended Response to Amended Motion for Partial Summary Judgment at Dkt. 40).

Plaintiffs submit that discovery into **both** the claims of Plaintiffs **and** the claims of the Debtor are allowed under Rule 26(b)(1). Any attempt by the Debtor to limit discovery only to matters which are consistent with its allegations is wrong and should not be permitted.

2. **Additional time is needed to complete discovery.**

Plaintiffs have been diligent to conduct or participate in the following discovery:

- Obtained documents via subpoena to EMC;

---

[3] The property damaged by these losses was subleased industrial warehouse space known as Suite 110 in the Airways Distribution Center located at 481 Airport Industrial Drive, Southaven, Mississippi.

[4] Pursuant to the statement of loss by McLarens Young International, the adjuster under RadioShack's property insurance policy with Liberty Mutual Insurance Company ("Liberty Mutual"), which covers the leasehold improvements and the Subleased Equipment, Plaintiffs incurred a loss of $2,765,024.26 -- $1,417,756.48 for improvements and betterments; $163,000 for the security system; and $1,184,267.78 for the conveyor /racking system.  RadioShack also paid $59,953 in certain repair costs.  See Plaintiffs' Proof of Claim (Dkt.16).  In addition, RadioShack has paid the landlord, Industrial Developments International, Inc. ("IDI") $500,000 -- $250,000 per loss -- for the deductibles under its insurance policy.  Liberty Mutual has paid $940,993.48 to IDI for certain damage to the leasehold improvements.

- Obtained over 13,000 pages of documents via subpoena to IDI;

- Obtained documents via subpoena to Marchetti, Robertson & Brickell Insurance & Bonding Agency, Inc. (EMC's agent);

- Obtained 2026 pages[5] of documents from the Debtor via Requests for Production;

- Responded to the Debtor's first and second written discovery requests, including the production of 542 pages of documents;

- Began the deposition of Ernest K. Strahan, III ("Strahan")[6], the Debtor's corporate representative, on May 5, 2010 (to be resumed at a date to be determined);

- Permitted the deposition of the Rule 30(b)(6) representative for Plaintiffs on May 26, 2010;

- Took the deposition of John Marchetti on June 2, 2010;[7]

- Arranged for the deposition of Richard Booker, the claims adjuster who negotiated the fire and tornado losses, for June 17 or 18, 2010[8] (which the Debtor has refused to allow without Court order);

- Scheduled the deposition of Eilertsen for June 21, 2010 (by agreement with Debtor);

- Investigation into the whereabouts of Paul St. James and Joy St. James[9] who are/were:

---

[5] See *infra* at 7.

[6] According to Debtor's schedules, Strahan is not only an "insider" but also a creditor of the Debtor, which the Debtor has listed as an uncontested nonpriority claim in the amount of $62,938.22 and an uncontested priority claim in the amount of $9,000.00.

[7] Marchetti's deposition was recessed, as opposed to concluded, in view of the fact newly discovered documents were revealed in his testimony. Marchetti agreed to locate and provide the documents to the parties. Plaintiffs reasonably believe the production of those documents will not require further deposition testimony from Marchetti, but the deposition was recessed in the event additional testimony may be required.

[8] June 17 and 18, 2010 were the earliest dates available for Booker's deposition. Several later dates available to Booker have not been discussed with Debtor due to its refusal to allow the deposition at an earlier date.

- 4 -

- o majority owners of Warehouse 86 LLC, the Debtor herein, whose bankruptcy schedules repeatedly reflect as residing at 3241 Kinney Drive, Germantown, Tennessee,
- o twenty per cent (20%) owners[10] of Warehouse 86 Ventures LLC ("Ventures") which purchased[11] the assets of the Debtor, and
- o majority owners of Sellertech LLC ("Sellertech") which acquired[12] the computer system and records of Ventures.

Plaintiffs need additional time to complete the following discovery items:

- Deposition of Eilertsen on June 21, 2010 (agreed upon by the Debtor),
- Deposition of Richard Booker on a date mutually agreeable to the parties and Booker (see, *supra* at n.8),
- Depositions of Paul St. James and Joy St. James (once the correct address is provided by the Debtor),
- Receive and review vital information relative to the Debtor's inventory valuation via either voluntary (or court-ordered) supplemental disclosure by the Debtor or subpoena *duces tecum* to Sellertech,
- Resume and complete the deposition of the Debtor's representative, Strahan, who is currently employed with and an officer and the registered agent of Sellertech,
- Other discovery which may be necessary but is unforeseen at this time.

---

[9] According to Debtor's schedules, the St. Jameses are not only "insiders" but also creditors of the Debtor, which the Debtor has listed as an uncontested nonpriority claim in the amount of $518,799.53 and uncontested priority claims in the amounts of $10,000.00 (Paul St. James) and $9,000.00 (Joy St. James).

[10] Strahan owns ten per cent (10%) of Ventures.

[11] On December 10, 2008, pursuant to this Court's Order Granting Debtor's Motion for Authority to Sell Assets Free and Clear of All Liens, Claims, Interests and Encumbrances Outside of the Ordinary Course of Business and Assuming and Assigning Certain Unexpired Leases and Executory Contracts Pursuant to 11 USC §§105,363, and 365 (Dkt. 70) (the "December 10, 2008 Order"), the Debtor transferred its assets, including its computer system, to Warehouse 86 Ventures LLC.

[12] See *infra* at 6.

3. **The Debtor possesses, or has access to, discoverable information and documents and should be required to disclose the same.**

A primary dispute between Plaintiffs and the Debtor is the Debtor's refusal to disclose inventory documents which are supposedly contained within the computer system formerly owned by the Debtor, but then sold to Ventures, which was again sold to Sellertech. See May 5, 2010 Debtor deposition excerpts, together with referenced documents produced by Debtor, attached collectively hereto as Exhibit A, at 168-70. Strahan, the corporate representative of the Debtor, testified in his May 5, 2010 deposition that he could not answer questions about the Debtor's inventory, because he would need to review documents within the computer system now owned by Sellertech, a company owned by Strahan and the St. Jameses. Ex. A at 182-90, 245. Remarkably, Strahan would not agree that the computer records are (or could be made) available to the Debtor for production to Plaintiffs, although Strahan is the Debtor's representative and an owner of Sellertech. Ex. A at 244-46.

Nevertheless, after the Debtor's deposition, Debtor indicated its willingness to search for, or at least determine the existence of, the Sellertech computer documents. However, as the June 10 discovery deadline drew close, Debtor had a change of heart and informed Plaintiffs they would need to subpoena the documents from Sellertech. In fact, Debtor informed Plaintiffs on May 28, 2010:

- that the Sellertech documents were expensive to maintain;
- that Sellertech had no obligation to maintain the information on the computers;
- that Sellertech's financial position was precarious;
- that Sellertech may become unable to maintain the documents;

- that the "continued existence" of the Sellertech documents may be limited to "a matter of days rather than weeks or months";
- that Plaintiffs needed to take their own action to assure retrieval of the Sellertech documents; and
- that Plaintiffs should negotiate with Sellertech on these points.

The Debtor has no basis for its position. In fact, the Debtor had an ongoing obligation to preserve and maintain a copy of its software and internal, electronic documents especially with the Debtor's knowledge that SCK, as a loss payee under the EMC policy, is entitled to the Insurance Proceeds. See *Kronisch v. United States,* 150 F.3d 112, 130 (2nd Cir. 1998) for the proposition that parties owe an "uncompromising duty to preserve" relevant evidence in a pending lawsuit or one in the offing despite there being no discovery request.

But, in this case, Plaintiffs have made formal discovery requests, including the production of documents relating to the Debtor's Counterclaim, damages, and the Insurance Proceeds, all of which would encompass inventory-related documents. In response thereto (and other requests) Debtor provided 2026 pages of documents. The vast majority of those pages are incomprehensible documents relating to the Debtor's inventory. At the Debtor's deposition, Strahan testified that he was incapable of explaining the inventory-related documents due to Strahan not having interpretative documents now in the possession of Sellertech (which were not produced to Plaintiffs). Ex. A at 182-91.

The Debtor should not be allowed to hide behind the fact that it does not possess the Sellertech documents. A responding party is bound to produce documents within the party's "possession, custody or control". Fed. R. Civ. P. 34(a)(1). The federal courts considering this language have held that actual possession is not necessary inasmuch as the requirement is in the

injunctive, i.e., "possession, custody *or* control". See, e.g., *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995). Moreover, it is sufficient to establish the "control" prong of Rule 34(a)(1) if the responding party has a legal right to obtain the requested documents. 61 F.3d at 469. Debtor's failure to preserve and maintain those documents is inexcusable and the fact that Debtor must now engage in extra effort to retrieve those documents is a problem created solely by Debtor and is no fault of Plaintiffs whatsoever.

As mentioned, Sellertech is owned by Strahan and the St. Jameses. The Sellertech documents were acquired from Ventures which is owned in part by Strahan and the St. Jameses. Ventures acquired these same documents (and related computers) from the Debtor pursuant to authority granted by this Court's December 10, 2008 Order. Therefore, the Debtor, via its representative Strahan, can obtain the Sellertech documents.

As stated above, Debtor apparently wants to limit discovery of matters which do not fit into Debtor's view of this case. Of course, Plaintiffs disagree with that position. But, for Debtor to refuse to provide documents explaining its own inventory, which was negotiated and adjusted by the Debtor and Richard Booker, EMC's claims adjuster, and serves as the fundamental basis for Debtor's claim to the Insurance Proceeds, makes no sense. In effect, Debtor not only controls most, if not all, of the discoverable documents, but also refuses to disclose documents over which it erroneously relinquished control and refuses to obtain now from its own representative's (Strahan) company (Sellertech).

**4. <u>Debtor should amend its schedules to reflect the current address of the St. Jameses.</u>**

As stated above, all of Debtor's schedules reflect the address of Paul St. James and Joy St. James to be 3241 Kinney Drive, Germantown, Tennessee. Plaintiffs informed the Debtor about one month ago that they desired to travel to Memphis, TN to take the depositions of not

only Eilertsen but also the St. Jameses, since they all lived in the Memphis area. About ten days thereafter, the Debtor advised Plaintiffs that the Debtor would not be assisting in the arrangements for Eilertsen and the St. Jameses. Plaintiffs were unsuccessful in finding the St. Jameses anywhere in the Memphis area and received information indicating the residential address reflected in Debtor's schedules was an unoccupied home. Plaintiffs informed the Debtor of the difficulty in locating the St. Jameses and were told the St. Jameses live "somewhere in the northeast" and later that the St. Jameses live "somewhere in New Jersey". Plaintiffs have asked the Debtor for the St. Jameses' current contact information but have only received cell phone numbers. Numerous attempts to reach the St. Jameses have been unsuccessful and messages left on their recorders have not been returned. Strahan is a business partner of the St. Jameses and should provide the Court and the Plaintiffs with the correct contact information for the St. Jameses. Strahan testified that he spoke with Paul St. James on May 4, 2010 about his deposition the following day in this adversary proceeding[13]. Ex. A at 145. It is clear that Strahan knows or has easy access to the current contact information for the St. Jameses. That information should be provided immediately so that discovery may continue without further interruption. *Cf. Van Denburgh v. Goodfellow*, 120 P.2d 20 (Cal. 1941) (finding that a bankrupt is under duty to use reasonable diligence to ascertain creditor's residence and if he acquires knowledge of such residence he must state it correctly, and if he fails to ascertain knowledge of such residence, he must state that the residence is unknown); *Matter of Robertson*, 13 B.R. 726 (Bankr. Va. 1981) (finding that bankrupt must exercise reasonable diligence to accurately schedule debts and creditors' addresses).

---

[13] On June 2, 2010, the day before this Motion was filed, Strahan inexplicably changed course and informed Plaintiffs that the only address for the St. Jameses is the Germantown, TN address previously disclaimed as the correct address.

5. **<u>The deposition of Richard Booker, the claims adjuster, is clearly permissible.</u>**

Richard Booker, employed by GAB Robins North America, Inc., adjusted the fire and tornado losses for EMC. As stated, the Debtor apparently believes that the final, negotiated claims between the Debtor and EMC (Booker) are not only persuasive, but also binding upon the Court's determination of how to distribute the Insurance Proceeds. Accordingly, the Debtor is staking its Counterclaim on Booker's adjusted, negotiated claims. Therefore, the deposition of the claims adjuster who inspected and investigated the losses is clearly relevant and should be allowed.

Plaintiffs have worked with in-house counsel for GAB Robins to arrange a suitable date for Booker's deposition. The earliest available dates provided are June 17 and 18, both of which precede the deposition of Eilertsen which was agreed upon by the Debtor. However, the Debtor has refused to allow the deposition of Booker without the Court ordering the same. Plaintiffs submit the Debtor's position on Booker's deposition is inconsistent with its agreement to allow the Eilertsen deposition after the present June 10 deadline and does not promote judicial economy.

This Motion is not filed for the purpose of delay but that judicial economy and justice may be served. There will be no prejudice to the Debtor by granting the relief herein requested. Moreover, prior to filing this Motion Plaintiffs attempted to resolve the dispute with the Debtor.

WHEREFORE, Plaintiffs respectfully request that the Court extend the discovery deadline from June 10, 2010 until June 22, 2010 at which time the Court will conduct a status

conference and, thereafter, for an additional forty-five (45) days. The Plaintiffs pray for such other and further relief this Court deems proper and just.

Dated: June 3, 2010

Respectfully submitted,

SCK INC. and RADIOSHACK CORPORATION

*/s/ W. Lee Watt*
Marcus M. Wilson (MS Bar #7308)
W. Lee Watt (MS Bar #6998)
Andrew R. Wilson (MS Bar #102862)
BENNETT LOTTERHOS SULSER
& WILSON, P.A.
One Jackson Place
188 East Capitol Street
Suite 1400
Jackson, Mississippi 39201
Telephone: (601) 944-0466
Facsimile: (601) 944-0467
mwilson@blswlaw.com
lwatt@blswlaw.com
awilson@blswlaw.com

ATTORNEYS FOR SCK INC. AND RADIOSHACK
CORPORATION

- 12 -

## CERTIFICATE OF SERVICE

I hereby certify that I have this day forwarded a true and correct copy of the above Motion to Extend Discovery and Other Relief to all counsel of record via the CM/ECF system.

Dated: June 3, 2010

/s/ W. Lee Watt