**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

| | | |
|---|---|---|
| **In re:** | : | |
| **WAREHOUSE 86, LLC** | : | **Case No. 08-03423-EE** |
| | : | **Chapter 11** |
| **Debtor** | : | |
| | : | |
| **SCK, INC. and** | : | |
| **RADIOSHACK CORPORATION** | : | **Adv. Pro. No. 09-00139-EE** |
| **Plaintiffs** | : | |
| **v.** | : | |
| **WAREHOUSE 86, LLC** | : | |
| **Defendant** | : | |

### WAREHOUSE 86, LLC'S MOTION TO QUASH SUBPOENA

Warehouse 86, LLC, acting pursuant to Fed. R. Civ. 45(b)(3) and Bankruptcy Rule 7045, moves this Court to quash the subpoena *duces tecum* served by SCK, Inc. ("SCK") and RadioShack Corporation ("Radioshack") (collectively, "Plaintiffs") on SellerTech, a non-party (a copy of which is attached hereto as Exhibit A), and in support thereof would respectfully show the following:

1.  The subpoena, issued by Plaintiffs, demands production of:

The "computer system" that helps to decipher the "G numbers" contained in the inventory lists of Warehouse 86, LLC. The same computer system mentioned by Ernest K. Strahan, III in his May 5, 2010 deposition in the above-referenced matter. Copies of the deposition transcript pages mentioning the "Computer system" are attached.

2.	The "computer system" of SellerTech is the computer system (data, software and hardware) purchased by Warehouse 86 Ventures, LLC from the Debtor in December 2008 (See Docket Nos. 070 and 076), but it also includes data added by Warehouse Ventures and by SellerTech.  When Warehouse 86 Ventures, LLC made a business decision to cease operations, SellerTech purchased the software and hardware for the business enterprise, and also the data from both Warehouse 86 and Warehouse 86 Ventures, LLC in a foreclosure sale conducted by the secured lender of Warehouse 86 Ventures. (The principals of SellerTech were the principals of the Debtor and were employees and minority interest owners of Warehouse 86 Ventures, LLC.)

3.	The "computer system" of SellerTech consists of *four racks* of computers—approximately two dozen servers.  *All* of the data on that computer system clearly are not relevant to whether SCK and Radio Shack have a right to any of the proceeds of Warehouse 86's insurance policy for the tornado loss or the fire loss.[1]   Some of that data are data that were created by Warehouse 86

---

[1] "Relevance" is required. Prior to the year 2000, the scope of discovery under the Federal Rules was exceedingly broad.  After many complaints about the expense of needless discovery, Rule 26 was amended.  The scope of discovery was deliberately restricted:

> **(b) Discovery Scope and Limits.**
> **(1) Scope in General.**
> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is **relevant to any party's claim or defense** — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant

2

Ventures or by SellerTech after the sale of the business assets by the Debtor in December 2008.  Even with regard to the Warehouse 86 data, clearly only a very limited portion can possibly pertain to the conflicting claims of the parties to the Insurance Proceeds from the tornado loss and the fire loss.

Under Rule 45(c)(1) itself (incorporated by reference by Bankruptcy Rule 9016), SCK and Radioshack had an affirmative duty to narrow the scope of the request of the subpoena to avoid an undue burden on or expense to the party to whom the subpoena is served.  That portion of Rule 45 provides as follows:

**(c) Protecting a Person Subject to a Subpoena.**

> **(1) *Avoiding Undue Burden or Expense; Sanctions.***  A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.  The issuing court must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply.

A subpoena that asks for, in effect, "everything" is, on its face and as a matter of law, clearly overbroad, and conceivably abusive.  For example, in *Theofel v. Farey-Jones,* 359 F.3d 1066, 1074 (9th Cir. 2004),[2] in quashing a

---

> information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).
> F.R. Civ. P. 26(b)(1)(emphasis supplied).

The old "reasonably calculated" standard has been supplanted; <u>relevance</u> is now required.  Matters that are not "relevant" are not discoverable.

[2] In *Theofel v. Farey-Jones,* 359 F.3d 1066 (9th Cir. 2004) a party to a civil suit served a subpoena duces tecum on a non-party.  The Court wrote,

> One might have thought that the subpoena would request only e-mail related to the subject matter of the litigation, or maybe messages sent during some relevant time period, or at the very least those sent to or

3

subpoena which sought production of "[a]ll copies of e-mails sent or received by anyone" at ICA "with no limitation as to time or scope," the court characterized the subpoena as "a piece of paper masquerading as legal process." The *Theofel* court noted the responsibility owed by the party issuing a subpoena:

> The subpoena power is a substantial delegation of authority to private parties, and those who invoke it have a grave responsibility to ensure it is not abused. Informing the person served of his right to object is a good start, *see* Fed.R.Civ.P. 45(a)(1)(D), but it is no substitute for the exercise of independent judgment about the subpoena's reasonableness. Fighting a subpoena in court is not cheap, and many may be cowed into compliance with even overbroad subpoenas, especially if they are not represented by counsel or have no personal interest at stake.

*Id.*, at 1074-75.

Because the subpoena served by the Plaintiffs on SellerTech is vague, overly broad and burdensome, and since it seeks irrelevant documents and information, the subpoena should be quashed.

4.     Beyond that, the whole excuse for demanding the "computer system" is at best a misunderstanding, or at worst a red herring. Plaintiffs suggest that without the "computer system" they can not obtain answers to

---

> from employees in some way connected to the litigation. But Kwasny ordered production of "[a]ll copies of e-mails sent or received by anyone" at ICA, with no limitation as to time or scope. . . . The Magistrate Judge found that the subpoena was "massively overbroad" and "patently unlawful," that it "transparently and egregiously" violated the Federal Rules, and that defendants "acted in bad faith" and showed "at least gross negligence in the crafting of the subpoena."

Id. at 1071. The Court granted the motion to quash and assessed attorneys' fees as sanctions.

4

questions that they put to Warehouse 86 in its 30(b)(6) deposition. This, however, is entirely incorrect.

The truth is that there was only <u>one</u> question that the Warehouse 86 witness said might be answered by referring to the Sellertech data: from which Warehouse 86 location was the items on a certain computer report (Bates no. WH1098, copy attached hereto as Exhibit B) shipped?

The witness responded that this question might be answered in one of two ways: He likely could answer it on the spot if he knew the context of the document—who sent it, who received it, whether there was a cover letter with it. Or, he said, he might be able to answer the question by looking up an inventory number (also known as a "G-number") on what is now the Sellertech computer system. *See Transcript of Warehouse 86 Depo.,* pp. 181-191 (copy attached hereto as Exhibit C).

The question was answered, soon after the deposition, in the first way suggested by the witness: Counsel for Warehouse 86 found the document in its original context, found the cover letter, and learned from the cover letter that the document in question is a list of sales from the Memphis (not Southaven) warehouse, made during the month of May, 2008 (some three months after the tornado and fire). It was submitted to the forensic accountants retained by Employer's Mutual, and it relates to Warehouse 86's claim for loss of business income — a claim, by the way, in which Plaintiffs have no conceivable interest, save, perhaps, as general, unsecured creditors.

5

Warehouse 86 explained all of this to Plaintiffs by email dated May 28, 2010 (4:07 p.m.), a copy of which is attached hereto as Exhibit D. The email closed with an invitation:

> Now that I know where it [Bates no. WH1098] came from I'll bet we can answer any legitimate, relevant questions. Let me know, please, what they are.

Plaintiffs, however, never accepted this invitation. Instead they issued the subpoena to SellerTech, invalid on its face,[3] for the entire "computer system."

5. Nevertheless, Warehouse 86, in an effort to resolve this matter, has offered its 30(b)(6) representative again to Plaintiffs for additional follow-up questions on this document or other related topics, and has offered, at the continued deposition, to have its representative have access to the data on the SellerTech computer system so that these questions may be answered.

6. Plaintiffs may suggest that Warehouse 86 ought not be concerned about a subpoena of documents issued to a non-party, but whatever Plaintiffs subpoena, Warehouse 86 attorneys will have to inspect, and Warehouse 86 will bear that expense. Furthermore, the principal in SellerTech is the Debtor's corporate representative, so Plaintiffs' effort to burden SellerTech through the subpoena has a direct impact on the Debtor's ability to continue to prosecute

---

[3] Not only because it is, in the words of the *Theofel* Court, "a piece of paper masquerading as legal process," but also because (a) the "computer system" is in Arizona, far beyond the power of the subpoena; and (b) the subpoena, calling, as it does, for production on a date after the close of discovery, is untimely. *See, e.g., Neal v. Dana Corp.,* 2002 WL 32144315 *1 (N.D. Ind. 2002) (a pre-trial subpoena is a discovery device, and therefore, is subject to a scheduling order's general discovery deadline. . . . Thus, because the discovery period has closed, we will not enforce the Plaintiff's subpoenas and must deny his motion to compel").

6

this action by utilizing the services of its (heretofore) uncompensated corporate representative.

WHEREFORE, PREMISES CONSIDERED, Warehouse 86 prays that this Court will enter an order quashing the subpoena, and granting Warehouse 86 such other or further relief, in law or equity, as to which it may be justly entitled.

> Respectfully submitted,
>
> WAREHOUSE 86, LLC
>
>
> By: *s/ Robert M. Frey*
> ROBERT M. FREY (MB No. 5531)
> STEPHEN W. ROSENBLATT (MB No. 5676)
>
> Its Attorneys

OF COUNSEL:

BUTLER, SNOW, O'MARA, STEVENS & CANNADA, PLLC
1020 Highland Colony Parkway, Suite 1400
Ridgeland, Mississippi  39158-6010
601-948-5711
601-985-4500 (fax)

**CERTIFICATE OF SERVICE**

I, Robert M. Frey, one of the attorneys for Warehouse 86, LLC, certify that I have this day caused a true and correct copy of the foregoing pleading send by electronic mail to the following persons:

>W. Lee Watt, Esq.
>Marcus M. Wilson, Esq.
>Andrew R. Wilson, Esq.
>BENNETT LOTTERHOS SULSER & WILSON, P.A.
>One Jackson Place
>188 East Capitol Street, Suite 1400
>Jackson, Mississippi  39201
>mwilson@blswlaw.com
>
>ATTORNEYS FOR SCK, INC. and RADIOSHACK CORPORATION
>
>Ronald H. McAlpin, Esq.
>OFFICE OF THE UNITED STATES TRUSTEE
>Suite 706, A. H. McCoy Federal Building
>100 West Capitol Street
>Jackson, Mississippi  39269
>Ronald.McAlpin@USDOJ.gov

June 10, A. D. 2010.

>*s/ Robert M. Frey*
>ROBERT M. FREY

Jackson 5233760v1

8