UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

------------------------------------------------------------------- x
In re:                                                              :   Case No. 08-03423-EE
                                                                    :
WAREHOUSE 86, LLC,                                                  :   Chapter 11
                                                                    :
            Debtor.                                                 :
                                                                    :
------------------------------------------------------------------- x
                                                                    :
SCK, INC. and RADIOSHACK CORPORATION,                               :   Adv. Pro. No. 09-00139-EE
                                                                    :
            Plaintiffs                                              :
                                                                    :
v.                                                                  :
                                                                    :
WAREHOUSE 86, LLC,                                                  :
                                                                    :
            Defendant.                                              :
                                                                    :
------------------------------------------------------------------- x

## RESPONSE TO MOTION TO QUASH SUBPOENA

Plaintiffs, SCK, Inc., f/k/a SC Kiosks, Inc. ("SCK"), and RadioShack Corporation ("RadioShack"), file this Response to Warehouse 86, LLC's (the "Debtor") Motion to Quash Subpoena (Dkt. 58) and Objections of Sellertech, LLC to Inspection or Copying of Designated Material (Dkt. 61), as follows:

### Preliminary Statement

At the core of this and other discovery disputes in this adversary proceeding lies the Plaintiffs' attempt to discover the actual value of the Debtor's inventory, a covered loss of the

February 5, 2008 tornado and the February 11, 2008 fire.[1] The Debtor argues that the actual value of the inventory is irrelevant based upon the fact the Debtor and its insurer, Employers Mutual Casualty Insurance Company's ("EMC"), agreed upon a negotiated amount for the inventory losses. The Plaintiffs' position is that the actual value of the inventory should control and not the amount(s) negotiated by the Debtor and EMC, to the exclusion of the Plaintiffs. The Debtor has thwarted the Plaintiffs' attempts to discover this basic, essential information. See Plaintiffs' Motion to Extend Discovery and Other Relief (Dkt. 53).

The Debtor seeks to quash a subpoena *duces tecum* issued to a non-party, Sellertech, LLC ("Sellertech"), as being an undue burden when in fact the subpoena was required to be issued as a result of the Debtor failing to preserve its internal bookkeeping records (reflecting, among other things, inventory values) and the Debtor's subsequent refusal to abide by discovery rules. The purpose of the subpoena is to obtain the Debtor's basic bookkeeping records which are maintained electronically and sometimes referred to as "data" (collectively, "Documents") which were sold to Warehouse 86 Ventures, LLC ("Ventures")[2] and then later sold by Ventures to Sellertech. Inexplicably, the Debtor failed to preserve and maintain a copy of the Documents prior to selling its assets, including computers and software, to Ventures despite the Documents containing integral information about the value of the Debtor's assets (in particular, inventory) damaged in the February 5, 2008 tornado loss and the February 11, 2008 fire loss. To compound the problem, the Debtor has refused to obtain the Documents from Sellertech and supplement its discovery responses.

---

[1] Debtor's Progressive Statement of Loss reflects a total loss of "Inventory" after the two losses, i.e., the tornado loss of $461,093.00 less salvage of 15%, or $69,163.95 for a net loss of $391,929.05 and the fire loss of the balance of $69,163.95. Therefore, all of Debtor's Inventory was deemed destroyed.

[2] On December 10, 2008, pursuant to this Court's Order Granting Debtor's Motion for Authority to Sell Assets Free and Clear of All Liens, Claims, Interests and Encumbrances Outside of the Ordinary Course of Business and Assuming and Assigning Certain Unexpired Leases and Executory Contracts Pursuant to 11 USC §§105,363, and 365 (Dkt. 70) (the "December 10, 2008 Order"), the Debtor transferred its assets, including its computer system, to Warehouse 86 Ventures, LLC.

The majority owners of the Debtor were owners of Ventures and are also the majority owners of Sellertech, namely Paul St. James and his wife, Joy St. St. James. The Debtor claims not to know the St. Jameses' residence and/or whereabouts, despite the fact that the Debtor's representative, Ernest K. Strahan, III ("Strahan"), is an owner and partner of the St. Jameses in Sellertech (and each of them was an employee of and 10% owner (cumulative 30%) in Ventures). Further, the St. Jameses have failed to return any of the numerous telephone messages left for them by the undersigned counsel for Plaintiffs. Accordingly, the Plaintiffs have been unable to speak with the St. Jameses about the Sellertech Documents, much less issue a subpoena to them for their depositions.[3]

Although the St. Jameses are insiders to the Debtor, the Debtor has disavowed its ability and responsibility to obtain the Documents and insisted that the Plaintiffs seek disclosure of the Documents directly from Sellertech. Indeed, the Debtor warned the Plaintiffs that the Documents may not be preserved much longer and may be destroyed in a matter of days.[4] Hence, the Plaintiffs sent a preservation letter to Strahan and issued a subpoena to Sellertech, via Strahan, for the production of the Documents.

Moreover, at the May 5, 2010 deposition of the Debtor, Strahan disclaimed permission to electronically access the Documents despite Strahan having the only password to the computer system wherein the documents are maintained. However, when the Debtor's deposition was resumed on June 11, 2010, Strahan demonstrated his capability of remotely accessing the Documents, which are stored in computers in Phoenix, AR.

---

[3] Debtor has known for many weeks that Plaintiffs want to depose the St. Jameses. See Plaintiff's Motion to Extend Discovery and Other Relief at 8-9 ("Motion to Extend Discovery")(Dkt. 53).
[4] See Plaintiff's Motion to Extend Discovery at 6-8 (Dkt. 53).

To resolve this dispute the Plaintiffs have attempted to limit the scope of the subpoenaed Documents so as to avoid any unnecessary burden to Sellertech and the Debtor and their mutual comptroller, Ernest K. Strahan, III. However, the Debtor steadfastly refuses to withdraw its Motion to Quash a non-party subpoena which it suggested in the first place. Therefore, the Debtor's Motion is not well taken and should be denied.

1. **The Debtor asserts no privilege as to the Documents and, therefore, lacks standing to complain about the subpoena. Moreover, the Debtor's motion is untimely.**

Rule 45, which governs subpoenas, provides 4 reasons for quashing or modifying a subpoena. See Fed.R.Civ.P. 45(c)(3), namely:

(i)     failing to allow a reasonable time to comply with the subpoena (not applicable);

(ii)    requiring a non-party to travel more than 100 miles (not applicable);

(iii)   requiring disclosure of a privileged or protected matter (not applicable); or

(iv)    subjecting a person to undue burden.

The subpoena is clearly directed to a non-party, i.e., Sellertech, yet no privilege is asserted by the Debtor. Therefore, the Debtor has no standing to challenge the non-party subpoena. *Estate of Ungar v. Palestinian Authority*, 400 F. Supp.2d 541, 554 (S.D.N.Y. 2005).

Other than the Debtor complaining about the relevance of the subpoenaed Documents, the Debtor's only objection is that the review of the Documents to be produced would cause an undue burden on the Debtor. To support its position the Debtor claims that everything within Sellertech's computer system is subject to the subpoena. However, the Plaintiffs have repeatedly explained the subpoena should be limited to records which relate to the value of assets during the time the computer was used by the Debtor alone.[5] The Plaintiffs have no desire to discover

---

[5] Debtor's production of documents in this adversary proceeding has yielded over 2000 pages, the bulk of which (approx. 1500 pages) relate to itemized inventory records having no values associated therewith. The documents are

information about Ventures or Sellertech, except to the extent those entities possess information about the Debtor's operations.

The Debtor's motion is also untimely in that the subpoena requires a response thereto on Friday, June 18, 2010 at 9:00 a.m. However, the Debtor's motion is set for hearing on Tuesday, June 22, 2010 at 10:00, or 4 days after Sellertech is required to respond to the subpoena.

### 2. The Debtor has caused the problem about which it now complains.

The Debtor had a responsibility to preserve and maintain its bookkeeping records and failed to do so. Faced with its failure, the Debtor has resorted to finger-pointing, misrepresentations and even disavowing any control over or access to the Documents. Although the Debtor initially expressed interest in searching for the Documents, the Debtor decided otherwise. The Plaintiffs submit that the Debtor simply may not want to reveal its bookkeeping documents, because the asset values stated therein are substantially lower than the losses claimed by the Debtor when seeking insurance coverage on the tornado loss and the fire loss. Whatever the reason may be, the Debtor is obstructing access to its bookkeeping records and financial statements. This should not be tolerated.

### 3. The Plaintiffs have limited the scope of their subpoena *duces tecum* as an ongoing effort to cooperate and resolve discovery disputes with the Debtor.

The Plaintiffs have repeatedly informed the Debtor that they seek information about asset values reflected in the Debtor's records which are now owned and possessed by Sellertech. The Debtor's suggestion that the subpoena is so broad as to require production of documents created

---

incapable of comprehension not only to the Plaintiffs but also to Strahan, the Debtor's representative and Chief Operating Officer. The Plaintiffs sought without success an explanation of the documents in Strahan's May 5, 2010 deposition. When his deposition resumed on June 11, 2010, Strahan testified that he was able to explain each entry on the document one at a time but only after remotely accessing the Sellertech computer system to search for the particular item. Even with the remote computer access, Strahan admitted he still could not provide any information about value of the inventory items reflected on the documents.

after the Debtor sold its assets to Ventures (and then by Ventures to Sellertech) has no basis in light of the repeated efforts by the Plaintiffs to explain the scope of the subpoena.

The Plaintiffs have reduced the scope of the subpoena to a bare minimum. In fact, most, if not all, of what the Plaintiffs now seek is readily available to Strahan. Indeed, in his June 11, 2010 deposition, Strahan readily agreed to locate the Income Statements and Balance Sheets of the Debtor for FYE 2007 & 2008, together with whatever monthly or periodical statements may exist, and email those documents to the Debtor's counsel for production to the Plaintiffs.

The remaining documents still needed by the Plaintiffs are those which relate to the value of only 2 categories of recovery sought by the Debtor, namely, documents supporting the Debtor's claimed values of "Conveyor and Racking System" ($374,555.32) and "Business Supplies" ($154,114.89). The Plaintiffs agreed not to seek documents for "Business Personal Property" ($10,142.70) and those expenses which arguably relate to post-loss clean-up, repairs, etc. The Plaintiffs submit that seeking supporting bookkeeping data for 2 major asset groups with a combined purported value in excess of $500,000 is a reasonable request. Moreover, to limit the subpoena to these items is clearly a demonstration of good faith.

### 4. The Debtor possesses, or has access to, discoverable information and documents and should be required to disclose the same.

The Debtor's refusal to disclose inventory documents which are supposedly contained within the computer system formerly owned by the Debtor, but then sold to Ventures, and again sold by Ventures to Sellertech is unwarranted and an abuse of discovery rules.[6]

The Debtor has no basis to deny Plaintiffs the discoverable Documents or to impede the Plaintiffs' efforts to subpoena the Documents from Sellertech. In fact, the Debtor had an ongoing

---

[6] See Debtor deposition excerpts at pages 168-70, attached as Exhibit A to Plaintiff's Motion to Extend Discovery (Dkt. 53).

obligation to preserve and maintain a copy of its software and internal, electronic documents especially with the Debtor's knowledge that SCK, as a loss payee under the EMC policy, is entitled to the Insurance Proceeds. See *Kronisch v. United States,* 150 F.3d 112, 130 (2nd Cir. 1998) for the proposition that parties owe an "uncompromising duty to preserve" relevant evidence in a pending lawsuit or one in the offing despite there being no discovery request.

As addressed in the Plaintiffs' Motion to Extend Discovery,[7] the Debtor is attempting to hide behind the fact that it does not currently possess the Sellertech documents when it is bound to produce documents within the party's "possession, custody **or** control". Fed. R. Civ. P. 34(a)(1)(emphasis added). Now, when the Plaintiffs attempt to secure the Documents from the non-party in possession of the Documents, the Debtor wants to have the subpoena quashed, yet states no privilege to support that request.

As stated above, Debtor apparently wants to limit discovery of matters which do not fit into Debtor's view of this case. Of course, Plaintiffs disagree with that position. The Debtor's attempt to shield the Documents explaining, in part, its own inventory, and other assets which serve as major components of Debtor's claim in this adversary proceeding, defies logic and is contrary to the spirit of the discovery rules.

WHEREFORE, Plaintiffs respectfully request that the Court deny the Debtor's Motion to Quash Subpoena. The Plaintiffs pray for such other and further relief this Court deems proper and just.

Dated: June 17, 2010

---

[7] See Motion to Extend Discovery at 7-8 (Dkt. 53).


Respectfully submitted,

SCK INC. and RADIOSHACK CORPORATION

/s/ W. Lee Watt
W. Lee Watt

Marcus M. Wilson (MS Bar #7308)
W. Lee Watt (MS Bar #6998)
Andrew R. Wilson (MS Bar #102862)
BENNETT LOTTERHOS SULSER
& WILSON, P.A.
One Jackson Place
188 East Capitol Street
Suite 1400
Jackson, Mississippi 39201
Telephone: (601) 944-0466
Facsimile: (601) 944-0467
mwilson@blswlaw.com
lwatt@blswlaw.com
awilson@blswlaw.com

ATTORNEYS FOR SCK INC. AND RADIOSHACK
CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that I have this day forwarded a true and correct copy of the above paper to all
R. Michael Bolen
USTPRegion05.JA.ECF@usdoj.gov

Robert M. Frey on behalf of Counter-Claimant Warehouse 86, LLC
bob.frey@butlersnow.com, tammy.brun@butlersnow.com;ecf.notices@butlersnow.com

Michael Scott Jones on behalf of Respondent Industrial Developments International, Inc.
scott.jones@arlaw.com, wendy.hood@arlaw.com;lorna.richardson@arlaw.com

William E. Manhein on behalf of Interested Party Tokio Marine and Nichido Fire Ins. Co., Ltd.
wemanhein@yahoo.com

Ronald H. McAlpin on behalf of U.S. Trustee R. Bolen
ronald.mcalpin@usdoj.gov

Stephen W. Rosenblatt on behalf of Counter-Claimant Warehouse 86, LLC
Steve.Rosenblatt@butlersnow.com, onida.huhn@butlersnow.com;ecf.notices@butlersnow.com

- 9 -

Dated: June 17, 2010

                                             */s/ W. Lee Watt*
                                             W. Lee Watt